# EXHIBIT 1

**CONFIDENTIAL DOCUMENT FORM**

**APPELLATE/TRIAL COURT CASE RECORDS**

*Public Access Policy of the Unified Judicial System of Pennsylvania:*
*Case Records of the Appellate and Trial Courts*
*204 Pa. Code § 213.81*
www.pacourts.us/public-records

**BENSON VS AMERIHOME MORTGAGE COMPA**
Case Caption

**240100380**
Docket/Case No.

Philadelphia
Court

**This form is associated with the pleading titled Amended Joinder Complaint, dated June 18, 2024.**

Pursuant to the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts*. The Confidential Document Form shall accompany a filing where a confidential document is required by law, ordered by the courts, or is otherwise necessary to effect the disposition of a matter. This form shall be accessible to the public, however the documents attached will not be publicly accessible, except as ordered by a court. The documents attached will be available to the parties, counsel of record, the courts and the custodian. **Please only attach documents necessary for the purpose of this case**. Complete the entire form and check all that apply. This form and any additional pages must be served on all unrepresented parties and counsel of record.

| Type of Confidential Document | Paragraph, page, etc. where the confidential document is reference in the filing: |
|---|---|
| [x] Financial Source Documents<br>[ ] Tax Returns and schedules | |
| [ ] W-2 forms and schedules including 1099 forms or sumilar documents | |
| [ ] Wage stubs, earning statements, or other similar documents | |
| [ ] Credit card statements | |
| [ ] Financial institution statements (e.g., investment/bank statements) | |
| [ ] Check Registers | |
| [ ] Checks or equivalent | |
| [x] Loan application documents | |
| [ ] Minors' educational records | |
| [ ] Medical/Psychological records | |
| [ ] Children and Youth Services' records | |
| [ ] Marital Property Inventory and Pre-Trial Statement as provided in Pa.R.C.P.No.1920.33 | |
| [ ] Income and Expense Statement as provided in Pa.R.C.P. No. 1910.27(c) | |
| [ ] Agreements between the parties as used in 23 Pa.C.S. §3105 | |

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Signature of Attorney or Unrepresented Party

18-JUN-2024
Date

Name: Paul N. Benson

Address: 1388 Madison Avenue Pocono Summit Pa 18346

Attorney Number (if applicable):

Telephone: (267)228-4723

Email: pnb100@me.com

**Rev. 12/2017**

**CONFIDENTIAL
DOCUMENT FORM**



**APPELLATE/TRIAL COURT
CASE RECORDS**

## Instructions for Completing the Confidential Document Form

The following documents are confidential and shall be filed with a court or custodian with the "Confidential Document Form":

1. Financial Source Documents as listed on the form

2. Minors' educational records

3. Medical/Psychological records are defined as "records relating to the past, present, or future physical or mental health or condition of an individual"

4. Children and Youth Services' records

5. Marital Property Inventory and Pre-Trial Statement as provided in Pa.R.C.P. No. 1920.33

6. Income and Expense Statement as provided in Pa.R.C.P. No. 1910.27(c)

7. Agreements between the parties as used in 23 Pa.C.S. §3105

For each confidential document, list the paragraph, page, etc. where the document is referenced in the filing. Please note, this form does not need to be filed in types of cases that are sealed or exempted from public access pursuant to applicable authority (e.g. juvenile, adoption, etc.)

- **Please only attach documents necessary for the purposes of this case.**
- Complete the entire form and check all that apply.
- This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

A court or custodian is not required to review or redact any filed document for co1npliance with the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts*. A party's or attorney's failure to comply shall not affect access to case records that are otherwise accessible.

If a filed document fails to comply with the above referenced policy, a court may, upon motion or its own initiative, with or without a hearing, order the filed document sealed, redacted, amended or any combination thereof. A court may impose sanctions, including costs necessary to prepare a compliant document for filing in accordance with applicable authority.

**Rev. 12/2017**



Filed and Attested by the
Office of Judicial Records
17 JUN 2024 11:55 pm
S. RICE

| | |
|---|---|
| PAUL BENSON,<br>KRISTY BENSON<br>Plaintiff,<br>v.<br>AMERIHOME MORTGAGE COMPANY, LLC,<br>CENLAR FSB,<br>KATHY AMATO<br>MERSCORP,<br>ALLIED MORTGAGE GROUP,<br>FEDERAL HOME LOAN MORTGAGE CORP.<br>WELLS FARGO BANK NA,<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CASE NO.: 240100380<br><br>CIVIL ACTION<br>JURY DEMAND<br><br>BREACH OF CONTRACT, UNJUST ENRICHMENT, BREACH OF FIDUCIARY, CIVIL CONSPIRACY, FRAUD BY CONCEALMENT, QUIET TITLE, INJUNCTIVE RELIEF, DECLARATORY JUDGEMENT, FRAUDULENT CONVEYENCE, VIOLATION OF CONSUMER PROTECTION LAWS |

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION Lawyer Referral and Information Service 1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107 (215) 238-6333

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificatión. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA Servicio De Referencia E Información Legal 1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6333

| PAUL BENSON,<br>KRISTY BENSON<br>Plaintiff,<br>v.<br>AMERIHOME MORTGAGE COMPANY, LLC,<br>CENLAR FSB,<br>KATHY AMATO<br>MERSCORP,<br>ALLIED MORTGAGE GROUP,<br>FEDERAL HOME LOAN MORTGAGE CORP.<br>WELLS FARGO BANK NA,<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CASE NO.: 240100380<br><br>CIVIL ACTION<br>JURY DEMAND<br><br>BREACH OF CONTRACT, UNJUST ENRICHMENT, BREACH OF FIDUCIARY, CIVIL CONSPIRACY, FRAUD BY CONCEALMENT, QUIET TITLE, INJUNCTIVE RELIEF, DECLARATORY JUDGEMENT, FRAUDULENT CONVEYENCE, VIOLATION OF CONSUMER PROTECTION LAWS |
|---|---|

**PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs PAUL and KRISTY BENSON, husband and wife, bring this action pro se, against the above named defendants, demand a trial by jury on all claims so triable, and allege on information and belief as follows:

**PARTIES**

1. We, Paul Benson and Kristy Benson (Plaintiffs), are now, and at all times relevant to this complaint, the owners of land, improved with a house commonly known as 1233 Wharton

Street, Philadelphia, PA 19147 (Property). The legal description of the subject property is attached as **Exhibit A** and incorporated here by reference.

2. Defendant, Allied Mortgage Group (Allied), is and at all times relevant in this complaint, a corporation organized, operating and existing under the laws of the State of Pennsylvania and of the United States, the principal place of its business is 225 E. City Avenue, Suite 102, Bala Cynwyd, PA 19004.

3. Defendant, Cenlar FSB (Cenlar) is, and all times relevant in this complaint, a corporation organized and existing under the laws of the State of New Jersey, but operating under the laws of The State of Pennsylvania and of the United States, the principal place of its business is 425 Phillips Blvd., Ewing, NJ 08618.

4. Defendant, Wells Fargo Home Mortgage (Wells Fargo) is, and at all times relevant in this complaint, a corporation organized and existing under laws of the State of California, but operating under the laws of the State of Pennsylvania and of the United States, the principal place of business is 420 Montgomery Street, San Francisco, CA 94104.

5. Defendant, AmeriHome Mortgage Company, LLC. (AmeriHome) is, and all times relevant in this complaint, a corporation organized and existing under laws of the State of Delaware, but operating under the laws of the State of Pennsylvania and of the United States, the principal place of business 1 Baxter Way, Suite 300, Thousand Oaks, CA 91362.

6. Defendant, Federal Home Loan Mortgage Corp (Freddie Mac) is, and at all times relevant in this complaint, a corporation organized and existing under the laws of the State of Virginia,

Case ID: 240100380

but operating under the laws of The State of Pennsylvania and of the United States, the principal place of its business is 8200 Jones Branch Drive, Mc Lean, VA 22102.

7. Defendant, Mortgage Electronic Registration Systems, Inc. (MERSCORP) is, and at all times relevant in this complaint, a corporation organized and existing under the laws of the State of Virginia, but operating under the laws of The State of Pennsylvania and of the United States, the principal place of its business is 8200 Jones Branch Drive, Mc Lean, VA 22102.

8. Defendant, Kathy Amato (Kathy) is, and at all times relevant to this complaint, an employee of MERSCORP. Address unknown but will continue efforts to find, amend and serve.

Plaintiffs are informed and believe and thereon allege that at all times when ALL Defendants are herein mentioned, each of the Defendants was the agent of the remaining Defendants, acting within the scope of such agency. When specific allegations are alleged, Defendants were acting independently. Plaintiffs allege as follows,

**FACTUAL BACKGROUND**

9. Plaintiffs purchased the Property as a residential investment on January 6th, 2018.

10. The Property, when purchased, had a legally registered use classification with the Philadelphia Department of License and Inspection of Single Family Residential. (See Exhibit B)

11. However, the previous owner had converted the first floor into office space for herself so the building did not reflect its “Residential Use Classification”. This decision was in line with

zoning but was not in alignment with the Plaintiffs needs and legal use classification. (Also Exhibit B)

12. Plaintiffs were forced to acquire a commercial loan for financing the purchase. A document that left no doubt as to the exclusion of consumer protections. Plaintiffs had to explicitly deny those consumer protections within the document itself and also with addendums and attachments. (See Exhibit C)

13. Plaintiffs were not comfortable with their commercial mortgage as it did not extend to them the consumer protections they were used to when they purchased other investment properties for residential rental purposes. (See Exhibit D)

14. Plaintiffs took advantage of the year they had to wait for their mortgage prepayment penalty to expire to do the needed work to get the property back to a conforming residential property.

15. Plaintiffs were determined to get back under the consumer protection laws. (See Exhibit E)

16. On February 22, 2019, Plaintiff executed a Uniform Residential Loan covered by all consumer protection laws as evidenced by the Real Estate Settlement Procedures Act (RESPA) covenants referred to and adhered to throughout. This was used to refinance the commercial loan on the Property from a commercial lender. (See Exhibit F)

17. Along with the loan, Plaintiffs unknowingly created a “negotiable security instrument” (Instrument); capable of being pooled with other mortgages, sold to a trust where certificates of ownership(COD’s) can be distributed (hypothecated) over and over sometimes for the life of the loan. The attachment of the Alongge some time after the Plaintiffs signatures was the catalyst for this event.

18. Defendant, Allied represented itself as a “lender” on the mortgage documents and note. A mortgage lender is a financial institution or organization that loans out money for real estate purchases.

19. As a “lender” Plaintiffs had the expectation of a table funded loan with funds being wired directly the Plaintiffs previous servicer. **Exhibit D** clearly demonstrates the strong desire and determination of Plaintiffs to pay off the previous mortgage.

20. Allied did not pay the old servicer on the day of settlement February 22, 2019 or even several days after.

21. The Plaintiff’s previous servicer did not receive payoff funding until March 5, 2019, two weeks later. (See Exhibit G)

22. The Plaintiff’s previous servicer used $2,269.95 of Plaintiff’s escrow account surplus to satisfy the March 1, 2019 mortgage interest payment. Plaintiff’s total escrow surplus amounted to $3,145.77 according to Plaintiff’s records. The remaining $875.82 is unaccounted for. (Exhibit G)

23. $3,145.77 represents a portion of Plaintiffs actual, quantifiable monetary losses.

24. On February 26, 2019, Allied registered and effectively conveyed the Plaintiff’s mortgage and note to the Mortgage Electronic Registration Systems platform, where it could be seen and purchased by actual lenders and services. This was done without proper payment consideration given to the Plaintiffs for their previous loan payoff. (Exhibit H)

25. During the time period of February 26th to March 5th, Allied used the Plaintiff's mortgage and note as a negotiable security instrument secure an actual lender after failing to provide consideration.

26. Also, during this time period, Plaintiffs spent countless hours pursuing their old servicer, emailing calling, setting up exhibits that even a child could understand so there would be no question or doubt, convincing them to return my escrow funds but to no avail.

27. Once on the MERS platform, Defendant AmeriHome Mortgage Company, LLC (AmeriHome), gained controlling interest as a "New Investor" by presumably purchasing controlling interest in the Instrument on March 9, 2019. AmeriHome would be considered the initial investor/lender and the first entity to allegedly provide consideration. However, this is four days after payoff funding was received by the Plaintiff's old servicer. A verified accounting is needed to understand where this consideration actually came from. (Exhibit I)

28. On the same day, March 9, 2019, a transfer of servicing rights (TOS) occurred by which AmeriHome, obtained mortgage servicing rights (MSR) and commenced servicing the Plaintiff's mortgage. (See Exhibit J)

29. AmeriHome did not have a license to service mortgages in the State of Pennsylvania it did not originate according to the PA Mortgage Licensing Act (MLA) and therefore illegally obtained MSR to the Plaintiff's mortgage. (See Exhibit K)

30. This scheme was input, and thus facilitated, onto the MERS platform by an employee of MERSCORP, Ms. Amato. Using MERSCORP protocols for administrative employees, she allowed AmeriHome the access it needed to circumvent PA State Regulation.

31. MERSCORP has security measures in place to effectively know the status of any licensing violations of a potential subscriber on their platform. The documentation needed to be submitted upon application includes a screenshot from Nationwide Mortgage Licensing System & Registry (NMLS) verifying "Good Standing" for every organization's Lending License. MERSCORP also does a monthly verification on existing subscribers according to its website. (See Exhibit L)

32. On March 11th, 2019, AmeriHome, while illegally representing itself as Plaintiffs mortgage servicer attempting to maintain MSR, attempts to securitize the Instrument through Defendant, Wells Fargo Bank NA - Mortgage Banker Finance Group. (Referenced on Exhibit H)

33. Wells Fargo discovered that AmeriHome had illegal licensing for maintaining MSR, at which time Cenlar FSB was added as subservicer in name only for documentation purposes on March 12, 2019. (See Exhibit H)

34. On May 7th, 2019, Freddie Mac becomes the new investor for the Plaintiffs Mortgage, failing to do any due diligence required to be perform by a Government Sponsored Enterprise (GSE). (See Exhibit H)

35. On or about April, 14th 2020, Plaintiffs enter forbearance.

36. Upon exiting forbearance, the Plaintiffs made an inquiry as to the ownership of their mortgage and note. To their surprise, Freddie Mac was named as the owner. Plaintiffs had not received required notifications of this fact and were confused. Furthermore, Plaintiffs received their MIN Summary from the MERS Registry which showed a number of transfers

of ownership and servicing rights that they had not been notified of. Confusion led to worry and the Plaintiffs paused their mortgage payments in order to figure out what happened so as not to unjustly enrich some undeserving bad actor. The MIN Summary also revealed that Allied had failed to provide consideration for the “table refinance” thus voiding the contract and invalidating the Instruments.

37. Plaintiffs sent several more letters after the original request, in which AmeriHome in violation of the Real Estate Settlement Procedures Act (RESPA), failed to produce all necessary requested information the Plaintiffs needed for verification. Again AmeriHome failing to produce the requested documents on every request. The total number of requests was between eight and ten. (See Exhibit M)

38. Plaintiff’s kept receiving changing responses throughout their requests and even received a letter from a law firm saying that Cenlar was the servicer bringing foreclosure with Freddie Mac as the investor. (See Exhibit N) Then Cenlar suddenly appears as the deactivating agent on the MERS documents. MERSCORP then records the assignment as going to AmeriHome but uses the February 15th, 2023 date even though AmeriHome was servicing the Plaintiffs mortgage the entire time from refinance until now. This deceptive recording places the assignment outside the window of illegal activity as far as the Plaintiffs are concerned. (See Exhibit O)

39. An instant action to Quiet Title was originally filed on January 3, 2024 in this, the Court of Common Pleas of Philadelphia. That complaint has been attached for reference as **Exhibit P**.

40. Service of the Complaint on Defendants was complete as of April 5, 2024. Entries of
Appearance have been submitted for all Defendants except for Federal Home Loan
Mortgage Corporation.

41. Plaintiffs, on June 4th, 2024 were granted leave to Amend The Complaint, in which the
Honorable Judge Padova specifically states, "Plaintiff shall file an amended complaint within
ten days of the **entry of this order on the docket**." The docket entry was June 5th so this
created a filing deadline of 11:59PM EST. on June 17th due to the fact that the ten day
deadline fell on a Saturday.

## GENERAL ALLEGATIONS

42. Plaintiffs allege that Defendants by way of MERSCORP's  platform, defrauded Plaintiffs by
concealing through obfuscation the true identity of the entities that possess ownership rights
to the security instruments, along with servicing rights, and the right to foreclose. This
platform also provides restricted access to paying, mortgage industry verified members only.
Offering a hiding place for lenders and servicers to flagrantly violate state law while other
members turn a blind eye or actively participate in a scheme to defrauded consumers and
enrich themselves outside of regulatory view. As with the Plaintiffs in this situation, servicer
AmeriHome, unjustly enriched itself while it also coordinated a civil conspiracy with all
other Defendants at the same time   at the expense of borrowers.  It is for these reasons that
Plaintiffs allege that all the Defendants engaged in a civil conspiracy in order to breach of
fiduciary duty with impunity. The components of civil conspiracy are the following:

- A group of individuals or entities (co-conspirators) work together to commit an unlawful act. In our case all the Defendants engaged in a quasi-contractual relationship by way of agreements they committed to over the MERS platform uniting them for a common goal. The common goal is Fraud by Concealment, concealing by way of the MERS platform ultimately obfuscating the exact dates that events may have occurred. MERSCORP by way of the MERS platform is trying to convince any prying eyes that AmeriHome didn't receive mortgage assignment for servicing and foreclosing until February 15th, 2023, going by the recorded documents. (Exhibit O) The recorded documents are all borrowers are usually able to verify. But our true and correct documents conflict with MERSCORP's falsified documents. AmeriHome started servicing Plaintiffs mortgage officially on March 7th, 2019 in violation of PA's Mortgage Licensing Act (MLA), the confidential platform MERS has the transfer of service and subsequent deactivation as February 15th, 2023 with it recorded the same day. All defendants knew or should have known about AmeriHome's MLA violation because MERSCORP has detailed descriptions of each member entity and their role in the mortgage industry (servicer, lender, investor, etc.) which is verified upon application and then monthly thereafter for all to see. Each member also had a fiduciary duty of care to do the proper due diligence when selecting prospective servicers in order to give borrowers the proper consumer protections required by law.

- The act has an unlawful purpose. The purpose of this civil conspiracy and fraud by concealment was and is to allow unjust enrichment of all member entities. MERS

platform allows for circumventing regulation and disciplinary action while still receiving unjust compensation and all member engaged in each conspiracy stand to benefit from fees and other compensatory action. Regulatory action is meant to hold entities accountable but also is used to guarantee servicers have the proper information and understanding to perform the required duties that protect the consumer. AmeriHome was willfully negligent in obtaining proper licensing under the MLA. This lead to them not having proper knowledge, information and understanding of PA mortgage servicer responsibilities, requirements and prohibitions found in regulatory compliance.

- The act leads to harm or damages to another party. This ignorance led to negligence and Breach of Fiduciary Duty under the MLA and RESPA ultimately damaging the Plaintiffs over the past several years, both actual and punitive. There has been illegal collection of servicing fees, improperly analyzing or failing to analyze escrow accounts leading to missing consumer funds, illegally issuing notices of default, illegal or improper reporting of adverse information to credit agencies, illegal or improper initiation of foreclosure processes for lack of standing, which is now leading to wrongful foreclosure.

There is also a great financial incentive to concealing servicer violations. For the year that AmeriHome did not comply with PA regulations, it was a top performer in terms of servicing

income and loan generation. AmeriHome received more income from servicing in 2018 then it had ever previously received and ended the year as a top performing mortgage servicer.

At this point Plaintiffs would like to reserve the right to potentially proceed with a class action lawsuit certification. Plaintiffs believe that these same actions have been perpetrated for well over a hundred (100) Pennsylvania's just like the Plaintiffs between the dates of April 27th, 2018 until it was licensed on or about April 9th, 2019. And just like the Plaintiffs, they have experienced the same or similar damages.

## SPECIFIC ALLEGATIONS

43. Plaintiffs further allege that Allied caused a material breach of contract for failing to provide consideration at settlement, fraud in the concealment for representing itself as a lender (1st Element) capable of table funding the refinance as evidenced by the material fact (2nd Element) that the loan documents clearly state Allied as the "Lender". This false (3rd Element) representation is clearly known to be false to the Defendant (4th Element) because they registered the Negotiable on MERS as a Servicer. This representation was made to the Plaintiffs inducing them to rely upon it (5th Element) through verbal communication and loan documents. The Plaintiffs rightfully did so rely (6th Element) upon this fact because Plaintiffs were aware of the old services poor reputation and absolutely needed the funds to show up on time. Plaintiffs were ignorant of this falsity (7th Element) as they pursued their old servicer for the injury (8th Element) they sustained in actual damages of the vanishing surplus of escrow funds in the amount of $3,145.77 and $9,658.80 in origination costs that

may have been avoided with an all-in-one lender. Total actual damages of $12,804.57 for which relief is sought and punitive damages as this court deem necessary. In order to sustain an action for actual fraud the plaintiff must prove: (1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury (24 N.Y.Jur., Fraud and Deceit, s 14; 37 C.J.S. Fraud s 3)." Brown v. Lockwood, 76 AD2d 721, 730 [2d Dept 1980].

44. On February 26, 2019, before any consideration (payoff funding) had been delivered thus voiding the contractual agreement, Allied as a registered "**Mortgage Servicer"**, fraudulently assigned (conveyed) the title or controlling interest therein by registering the fraudulent negotiable security instrument with Defendant MERSCORP (MERS). (See Exhibit H)

45. Plaintiffs unknowingly created a "**negotiable"** security instrument (Instrument); capable of being pooled with other mortgages, sold to a trust where certificates of ownership can be distributed (hypothecated) over and over for the life of the loan, thus creating immense wealth for a select few investors. This process was the greatest contributor to the Housing and Financial collapse of 2008. Something that most people, including the Plaintiffs, thought was illegal now but apparently is not. However, this process also clouds or slanders the title by breaking the chain of custody in the title, and all of this was done without the knowledge or consent of the Plaintiffs. There is no mention in the Note or Mortgage documents that

these items are "negotiable". (See Exhibit F)  The UCC helps to define a negotiable

instrument. Under UCC Article 3-104 it's an unconditional promise or order to pay a fixed

amount of money, with or without interest or other charges, that meets specific criteria (see

UCC 3-104, a 1-3). One specific and important criteria is that an instrument is payable on

demand. It needs to be payable immediately upon demand by the holder (see UCC 3-104, a 2

and 3). Notes on real property are not payable immediately upon demand, as we can attest to

presently. Plaintiffs allege that Allied Mortgage Group (Allied) acted fraudulently by

concealing the material fact of negotiability. To prove Fraud in the Concealment one must

show that a material fact was suppressed and that Plaintiffs incurred damages. In Exhibit F

there is a definitions section describing simple everyday terms, surprisingly "negotiable

security instrument" it not defined there. These instruments nearly toppled our economy,

failing to clearly define them for people who are less financial savvy is clearly a method of

suppression. The damage that Plaintiffs incurred from Allied negotiating the instrument is

Slander/Clouding the Title. This is what initiated the Quiet Title action leading to this court

with fees and time wasted.

46. During the time period of February 26th to March 5th, Allied used the Plaintiff's mortgage

and note as a negotiable security instrument to **unjustly enrich** itself by way of an actual

lender after failing to provide consideration. Allied did not have permission from the

Plaintiffs to do so, as they relied on the "fact" presented to them that Allied was their

"lender" who would table funded their refinance.

47. On or about May 1, 2024, Plaintiff through investigation and due diligence, discovered a

consent agreement by AmeriHome that addressed its illegal mortgage servicing activities in

Pennsylvania. This time period covered the acquisition of MSR and in part servicing of Plaintiff's mortgage. (See Exhibit K) Plaintiffs allege AmeriHome breached its fiduciary duty of care over the Plaintiffs. AmeriHome acquired both the ownership and the MSR to the Plaintiff loan because Allied acted as merely an originator. In this context AmeriHome acquired responsibility for all aspects of Plaintiffs mortgage covenants. Amerihome violated the MLA, the TILA and the RESPA, all laws that reinforce that fiduciary duty. AmeriHome also failed to provided timely consideration through the affiliate responsibility under RESPA, which constitutes a breach of contract.

48. On March 11, 2019, New Defendant Wells Fargo, quietly, without notification and in violation of, 12 CFR Part 1026 (Regulation Z), became an interim Funder, funding the purchase and the securitization of AmeriHome's Trust (Trust), where the process of hypothecation began. Plaintiffs allege failure to properly notify Plaintiff of a loan ownership transfer and breach of fiduciary duty for their part in allowing and partnering through agreement with AmeriHome as they illegally remained unlicensed in PA while servicing mortgages. Wells Fargo Knew or should have known of the violation.

49. On March 12, 2019, Cenlar, was quietly, without notification and in violation of, 12 CFR Part 1024 (Regulation X), added to the roster of controlling interest in the Instrument. They acted as servicer in name only without the Plaintiff's knowledge as they did not assert themselves for any servicing activity. This was done because AmeriHome was being investigated by the COMMONWEALTH OF PENNSYLVANIA: DEPARTMENT OF BANKING AND SECURITIES COMPLIANCE OFFICE ultimately leading to AmeriHome consenting to pay a fine of eighty thousand dollars ($80,000) and admitting to their illegal

and fraudulent activity. AmeriHome and Cenlar conspired by agreement in that their "strategy with an outsourced subservicing approach" was "designed to minimize risk" including the risk of legal action. (These are direct quotes from AmeriHome's SEC filling for securities. Planitiff cannot attach this exhibit due to the way SEC filing are laid out on extremely long documents. Website included for reference https://www.sec.gov/Archives/edgar/data/1820807/000110465920093896/filename1.htm) Plaintiffs bring an action for failure to properly notify Plaintiff of a mortgage servicing transfer, and action of breach of fiduciary duty for their part in allowing and partnering through tacit agreement with AmeriHome as they illegally remained unlicensed in PA while servicing mortgages.

50. On May 7, 2019, Defendant Federal Home Loan Mortgage Corporation (Freddie Mac), obtained beneficial rights to the Instrument without notification and in violation of, 12 CFR Part 1026 (Regulation Z). This was to once again hypothecate the Instrument over and over for the foreseeable future. Plaintiffs bring an action for failure to properly notify Plaintiff of a loan ownership transfer, breach of fiduciary duty and of civil conspiracy for their part in allowing and partnering through tacit agreement with all Defendants and AmeriHome as they illegally remained unlicensed in PA while servicing mortgages.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray judgement against defendants as set forth below. Plaintiffs requests, in relation to property title, Declaratory Judgement and Specific Performance allowing them the right to take full and unencumbered ownership over the property, 1233 Wharton Street,

through Quiet Title. Thus voiding the mortgage and note and any subsequent secured interest due to Allied and AmeriHome failing to provide timely consideration. Plaintiffs have no other adequate and speedy remedy to resolve this aspect of the parties' dispute. Declaratory Judgement from this court and a Quieting of Title are necessary because of the urgency and importance of the issue presented by the parties' dispute, it is necessary and appropriate for the court to resolve this aspect by issuing a judicial declaration determining the respective rights and obligations of the parties with respect to the fraudulent mortgage and note.

Alternatively, Plaintiffs seek injunctive relief as it appears that there is a reasonable likelihood of AmeriHome initiating a mortgage foreclosure in the near future. And the Plaintiffs could possibly suffer the irreparable harm of a wrongful foreclosure if not granted. This hardship far outweighs any possible hardship that AmeriHome has calculated for and insured against.

Plaintiffs also demand, for remaining allegations, a trial by jury to seek additional relief including but not limited to the following:

- Plaintiff seeks compensatory damages in the amount of $12,804.57 for Allied's Breach of Contract and punitive damages to the degree that a jury and this Court sees fit to award for its Fraudulent Acts against the Plaintiffs which include but are certainly not limited to Fraudulent Conveyance of Title

- Plaintiff also seeks punitive damages to the degree that a jury and this Court sees fit to award for Fraud by Concealment by all Defendants.

- Plaintiff also seeks punitive damages to the degree that a jury and this Court sees fit to award for Unjust Enrichment by all Defendants.
- Plaintiff also seeks punitive damages to the degree that a jury and this Court sees fit to award for violations of consumer protection laws demonstrated by several “notification” non-compliance issues along with other violation. Violation pertain but are not limited to the Mortgage Licensing Act (MLA), the Truth-in-Lending Act (TILA), Real Estate Settlement Procedures Act (RESPA), Home Mortgage Disclosure Act (HMDA), and Fair Housing Act (FHA)
- Plaintiff also seeks punitive damages to the degree that a jury and this Court sees fit to award for violations of consumer protection laws under the Fair Credit Reporting Act (FCRA) due to the improper reporting to credit agencies without proper standing and destroying Plaintiff credit.
- Plaintiff also seeks punitive damages to the degree that a jury and this Court sees fit to award for breach of fiduciary duty and the corresponding civil conspiracy by AmeriHome and all other Defendants listed above, which coinciding with all those listed on the MIN Summary included as Exhibit.

Dated: June 17, 2024

Respectfully Submitted,

Paul & Kristy Benson, *Pro Se*
Plaintiffs

| PAUL BENSON,<br>KRISTY BENSON<br>Plaintiff,<br>v.<br>AMERIHOME MORTGAGE COMPANY, LLC.<br>CENLAR FSB,<br>KATHY AMATO<br>MERSCORP,<br>ALLIED MORTGAGE GROUP,<br>FEDERAL HOME LOAN MORTGAGE CORP.<br>WELLS FARGO BANK NA,<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CASE NO.: 240100380<br><br>CIVIL ACTION<br>JURY DEMAND<br><br>BREACH OF CONTRACT, UNJUST ENRICHMENT, BREACH OF FIDUCIARY, CIVIL CONSPIRACY, FRAUD BY CONCEALMENT, QUIET TITLE, INJUNCTIVE RELIEF, DECLARATORY JUDGEMENT, FRAUDULENT CONVEYENCE, VIOLATION OF CONSUMER PROTECTION LAWS |
|---|---|

**AFFIDAVIT OF PLAINTIFFS**

Paul Benson

I, Paul Benson (Plaintiff), being duly sworn according to law, depose and say that the facts stated herein are true and correct. Dated: June 17, 2024

Plaintiff

Kristy Benson

I, Kristy Benson (Plaintiff), being duly sworn according to law, depose and say that the facts stated herein are true and correct. Dated: June 17, 2024

Plaintiff

# VERIFICATION

Plaintiffs Paul Benson and Kristy Benson hereby verify that the statements set forth in the foregoing Complaint are true and correct to the best of our knowledge, information, and belief; We understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

Signature of Plaintiff, Kristy Benson

Signature of Plaintiff, Paul Benson

Dated: June 17, 2024



Filed and Attested by the
Office of Judicial Records
17 JUN 2024 11:55 pm
S. RICE

# Exhibit A

File No. **18-2961**

Parcel ID No. 02-1-3551-00

# This Indenture, made the ______ day of ____________________, ______,

Between

**KRISTY BENSON**

(hereinafter called the Grantor), of the one part, and

**PAUL N. BENSON AND KRISTY BENSON**

(hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of **One And 00/100 Dollars (\$1.00)** lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as tenants by the entirety

Street Address: **1233 Wharton Street, Philadelphia, PA 19147**

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

Being the same premises which Victoria Reganata by Deed dated 01/26/2018 and recorded 02/20/2018 in Philadelphia County as Document No. 53329803 conveyed unto Kristy Benson, in fee.

Together with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of him, the said grantor, as well at law as in equity, of, in and to the same.

To have and to hold the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

And the said Grantor, for herself and her heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and her heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against him, the said Grantor, and her heirs, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will

Warrant and Forever Defend.

In Witness Whereof, the party of the first part has hereunto set her hand and seal. Dated the day and year first above written.

Sealed and Delivered
IN THE PRESENCE OF US:

________________________ ________________________{SEAL}
Kristy Benson

Commonwealth of Pennsylvania } ss
County of Philadelphia

On this the ________ day of ____________________, ________, before me, the undersigned Notary Public, personally appeared Kristy Benson, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

________________________
Notary Public
My commission expires ____________________

Case ID: 240100380

# Exhibit B

Case ID: 240100380




CITY OF PHILADELPHIA
DEPARTMENT OF LICENSES AND INSPECTIONS

# CERTIFICATION STATEMENT

**Date: 06/14/17**

**Certification Number: 788993**

**Property Address:**
**01233 00000 WHARTON ST 0000000**

**Zoning Classification: CMX-1**

ReMax Millennium
2600 Philmont Ave
Suite 322
Huntingdon V PA 19006

REGANATA DANIEL VICTORIA
01233 WHARTON ST

PHILADELPHIA PA 19147-4502

**Department records indicate this property is legally registered for use as follows:**

**SINGLE FAMILY DWELLING**

IF THIS PROPERTY IS NOT BEING USED AS INDICATED ABOVE, IT IS THE OWNER'S RESPONSIBILITY TO FILE FOR A NEW USE REGISTRATION PERMIT WITH THE DEPARTMENT'S ZONING UNIT.

**Department records indicate the following uncorrected violations:**

**N O N E**

A REPORT OF NO VIOLATIONS MAY BE THE RESULT OF NO INSPECTION OF THE PROPERTY.
NO WARRANTY OR GUARANTEE IS IMPLIED OR GRANTED BY THE CITY THAT THIS PROPERTY IS FREE OF CODE VIOLATIONS.

IMPORTANT INFORMATION RELATED TO THIS CERTIFICATION AND ANY TRANSFER OF OWNERSHIP

- Information on code violations is taken from the latest inspection reports on file, and may not accurately reflect conditions as they currently exist at this property.
- This Certification Statement does not generate an inspection by the Department of Licenses & Inspections. Undocumented or unreported violations may exist on the property.
- Construction Permits require final inspections. This document is not a Certificate of Occupancy.
- Condominiums: This document pertains to the specific address and unit and does not include records that may exist elsewhere in the building or development.
- Sellers of two-family dwellings shall certify in writing to the buyer that required smoke detectors have been installed and are in operating condition in accordance with the Fire Code.
- Properties registered HISTORICAL require approval from the Historical Commission prior to any alteration.
- Sellers of two-family dwellings and residential care facilities for up to 16 persons shall certify in writing to the buyer that required carbon monoxide alarms have been installed and are in operating condition in accordance with the Fire Code.

# Exhibit C

Case ID: 240100380

Doc Id: 53329804 M
02/20/2018 09:38 AM Page 1 of 17

This Document Recorded 02/20/2018 09:38 AM Doc Id: 53329804 Receipt #:18-16715 Doc Code: M
Rec Fee: $226.75
Records Department, City of Philadelphia MB

PREPARED BY:
VELOCITY COMMERCIAL CAPITAL, LLC
RETURN TO:
VELOCITY COMMERCIAL CAPITAL, LLC
PO BOX 7089

Attention: Servicing Department
Westlake Village, CA 91359-7089
ATTN: Nationstar Servicing

PARCEL ID#: 021355100

**OPEN-END MORTGAGE**

**COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

**THIS INSTRUMENT SECURES FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF $300,000.00 PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN PENNSYLVANIA ACT NO. 42 PA. C.S.A. SECTION 8143**

**This OPEN-END COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Mortgage") is entered into as of January 26, 2018, between Kristy Benson,** an individual, with an address of **1221 Titan Street, Philadelphia, Pennsylvania 19147** (the "Mortgagor") and VELOCITY COMMERCIAL CAPITAL, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Rd., Suite 295, Westlake Village, CA 91362 (the "Lender").

The real property which is the subject matter of this Mortgage has the following address(es): **1233 Wharton Street, Philadelphia, Pennsylvania 19147-4544** (the "Address(es)").

**1. MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES**

1.1 Mortgage. For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Lender and all obligations respecting that certain **Semi-Annual Adjustable Term Note**, dated **January 26, 2018**, by **Kristy Benson** in favor of the Lender in the original principal amount of **$300,000.00** (the "Note"; and

Case ID: 240100380

collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Mortgage total **$300,000.00** as of the date of this Mortgage but this Mortgage shall nevertheless secure payment and performance of all Obligations.

1.2 Security Interest in Property. As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of Pennsylvania (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

1.3 Collateral Assignment of Leases and Rents. The Mortgagor hereby irrevocably and unconditionally assigns to the Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by the Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Lender exercises its rights and remedies to collect such rents as set forth herein.

1.4 Conditions to Grant. The Lender shall have and hold the above granted Property unto and to the use and benefit of the Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

1.5 Property. The term "Property," as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the Uniform Commercial Code, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the

Case ID: 240100380

Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

1.6 Obligations. The term "Obligation(s)," as used in this Mortgage, shall mean without limitation all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to the Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Lender; or are due indirectly by the Mortgagor to the Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

1.7 Cross-Collateral and Future Advances. It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

1.8 Open-End Mortgage. The Lender and the Mortgagor agree that:

(a) This Mortgage is an open-end mortgage pursuant to 42 PA. C.S.A. § 8143, and secures, inter alia, present and future advances made by the Lender pursuant to the Loan Documents, including, without limitation, advances for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Property or the lien of this Mortgage, or expenses incurred by the Lender by reason of default by the Mortgagor, and to enable any completion of the improvements comprising the Property as may be contemplated by the Loan Documents. Nothing contained herein shall impose any obligation on the part of the Lender to make any such additional loan(s) to Mortgagor.

(b) Without limiting any other provisions of this Mortgage, this Mortgage secures present and future loans, advances and extensions of credit made by the Lender to or for the benefit of Mortgagor, and the lien of such future advances shall relate back to the date of this Mortgage. This Mortgage shall also secure additional loans hereafter made by the Lender to or for the benefit of Mortgagor. Nothing contained herein shall impose any obligation on the part of the Lender to make any such additional loans, advances and extensions of credit to or for the benefit of Mortgagor.

(c) If the Mortgagor sends a written notice to the Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of the Lender to make any additional advances to Mortgagor, such notice shall be ineffective as to any future advances made to pay: (i) taxes, assessments, maintenance charges and insurance premiums; (ii) costs incurred for the protection of the Property or the lien of this Mortgage, (iii) expenses incurred by the

Case ID: 240100380

Lender by reason of the default of Mortgagor, (iv) any other costs incurred by Mortgagor to protect and preserve the Property and (v) for all or part of the cost of completing any erection, construction, alteration or repair of any part of the Property. It is the intention of the parties hereto that any such advance made by the Lender after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Property.

**2. REPRESENTATIONS, WARRANTIES, COVENANTS**

2.1 Representations and Warranties. The Mortgagor represents and warrants that:

(a) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(b) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances");

(c) The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Lender; and

(e) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

2.2 Recording; Further Assurances. The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of the Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Lender in the Property and the rights of the Lender under this Mortgage. Mortgagor will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other or further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes the Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes the Lender to file financing statements describing any agricultural liens or other statutory liens held by the Lender. Mortgagor agrees to furnish any such information to the Lender promptly upon request. In addition, Mortgagor shall at any time and from time

Case ID: 240100380

to time, take such steps as the Lender may reasonably request for the Lender (i) to obtain an acknowledgment, in form and substance satisfactory to the Lender, of any bailee having possession of any of the Property that the bailee holds such Property for the Lender, and (ii) otherwise to insure the continued perfection and priority of the Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes the Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

2.3 Restrictions on the Mortgagor. The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Lender in each instance:

(a) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(b) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

(c) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give the Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and the Lender's interest therein against the claims of all persons and, unless the Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or the Lender's interest hereunder.

2.4 Operation of Property. The Mortgagor covenants and agrees as follows:

(a) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(b) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the

Case ID: 240100380

Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Lender, provide deductible amounts acceptable to the Lender, name the Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Thirty (30) days prior written notice to the Lender. Such policies shall include (i) a mortgage endorsement determined by the Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Lender may request. The Mortgagor will furnish to the Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(c) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of the Lender, execute any assignment of the Leases except in favor of the Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(d) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Lender and the Lender's agents, employees and representatives, at such reasonable times as the Lender may request, to enter and inspect the Property and such books and records; and

(e) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

(f) Mortgagor shall not enter into or modify the Lease or subleases with any lessor that engages in any use or occupancy of the property that would be a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. Every Lease or sublease of the property shall expressly prohibit tenants or other occupants from engaging or permitting others to engage in such use or occupancy. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the activity, including lease termination. Violation of this paragraph is a material breach of this agreement and constitutes an Event of Default.

2.5 Payments. The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by the Lender, the Mortgagor shall deposit from time to time with the Lender sums

Case ID: 240100380

53329504 Page 7 of 17 02/20/2018 09:38 AM

determined by the Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Lender's request, provides the Lender with adequate cash security, in the Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to the Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to the Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Lender. If Mortgagor shall fail to pay such sums, the Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by the Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.6 Notices; Notice of Default. The Mortgagor will deliver to the Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to the Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7 Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Lender, describing the nature and extent thereof. The Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without the Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Lender and immediately pay the same to the Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Lender in amounts not exceeding the Obligations. The Lender may apply such amounts to the Obligations in such order as the Lender may determine.

2.8 Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Lender and, at the option of the Lender, be applied to the Obligations in such order as the Lender may determine; provided, however, that if the Lender shall require repair of the Property, the Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Lender and promptly paid to it.

## 3. CERTAIN RIGHTS OF THE LENDER

3.1 Legal Proceedings. The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. The Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

3.2 Appraisals/Assessments. The Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the

Case ID: 240100380

Property that are real estate at such times as the Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

3.3 Financial Statements. The Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Lender.

3.4 Leases and Rent Roll. The Mortgagor shall deliver to the Lender (i) during each calendar year and at such other times as the Lender shall request a rent roll for the Property, in form acceptable to the Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Lender shall request executed copies of all the Leases.

## 4. DEFAULTS AND REMEDIES

4.1 Events of Default. "Event of Default" shall mean the occurrence of any one or more of the following events:

(a) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

(b) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(c) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d) receipt by the Lender of notice from the Mortgagor or any holder of any subordinate lien on the Property intended to terminate, limit or affect in any manner the indebtedness secured by this Mortgage or the lien priority hereof;

(e) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(f) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(g) if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(h) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or

Case ID: 240100380

the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(i) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(j) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(k) the service upon the Lender of a writ in which the Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(l) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(m) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(n) the termination or revocation of any guaranty of the Obligations; or

(o) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Lender has been or may be impaired.

4.2 Remedies. On the occurrence of any Event of Default the Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Lender upon the Property for any reason shall not cause the Lender to be a mortgagee in possession, except upon the express written declaration of the Lender;

Case ID: 240100380

(c) With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints the Lender as its true and lawful attorney with the power for the Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. The Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Lender shall be liable to account only for such Rents actually received by the Lender. Lessees under the Leases are hereby authorized and directed, following notice from the Lender, to pay all amounts due the Mortgagor under the Leases to the Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as the Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as the Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Lender shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter. In addition, the Lender may in its sole and exclusive discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide the Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Lender "control" over the Property or cause the Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f) Take such other actions or proceedings as the Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

Case ID: 240100380

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

4.3    ACTION IN EJECTMENT.  FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PROPERTY IN THE EVENT OF ANY EVENT OF DEFAULT HEREUNDER, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN EJECTMENT FOR POSSESSION OF THE PROPERTY, IN FAVOR OF THE LENDER, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION OR APPEAL.  IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, THE LENDER SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. THE LENDER MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE ANY OF THE LOAN DOCUMENTS, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON ANY OF THE LOAN DOCUMENTS, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PROPERTY IN WHICH THE LENDER IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, AND SHALL SURVIVE ANY EXECUTION SALE TO THE LENDER.

MORTGAGOR HEREBY RELEASES AND AGREES TO RELEASE LENDER AND SAID ATTORNEYS FROM ALL PROCEDURAL ERRORS AND DEFECTS WHATSOEVER IN ENTERING SUCH JUDGMENT OR JUDGMENTS OR IN CAUSING SUCH WRITS OR PROCESS TO BE ISSUED OR IN ANY PROCEEDING THEREON OR CONCERNING THE SAME, PROVIDED THAT LENDER SHALL HAVE FILED IN SUCH ACTION OR ACTIONS AN AFFIDAVIT OR AFFIDAVITS MADE BY SOMEONE ON LENDER'S BEHALF SETTING FORTH THE FACTS NECESSARY TO AUTHORIZE THE ENTRY OF SUCH JUDGMENT OR JUDGMENTS ACCORDING TO THE TERMS OF THIS INSTRUMENT, OF WHICH FACTS SUCH AFFIDAVIT OR AFFIDAVITS SHALL BE PRIMA FACIE EVIDENCE.

MORTGAGOR CONFIRMS TO THE LENDER THAT (I)  MORTGAGOR IS A BUSINESS ENTITY AND THAT ITS PRINCIPALS ARE KNOWLEDGEABLE IN BUSINESS MATTERS; (II) THE TERMS OF THIS MORTGAGE, INCLUDING THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT, HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT; AND (III) MORTGAGOR HAS FULLY REVIEWED THE AFORESAID WARRANT OF

Case ID: 240100380

**ATTORNEY TO CONFESS JUDGMENT WITH ITS OWN COUNSEL AND IS KNOWINGLY AND VOLUNTARILY WAIVING CERTAIN RIGHTS IT WOULD OTHERWISE POSSESS, INCLUDING BUT NOT LIMITED TO, THE RIGHT TO ANY NOTICE OF A HEARING PRIOR TO THE ENTRY OF JUDGMENT BY THE LENDER PURSUANT TO THE FOREGOING WARRANT.**

4.4 Advances. If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.5 Cumulative Rights and Remedies. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that the Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

4.6 Mortgagor's Waiver of Certain Rights. To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5. MISCELLANEOUS

5.1 Costs and Expenses. To the extent permitted by applicable law, the Mortgagor shall pay to the Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with the Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

5.2 Indemnification Regarding Leases. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold the Lender and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

Case ID: 240100380

5.3 Indemnification Regarding Hazardous Substances. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to the Lender including repayment of all Obligations.

5.4 Indemnitee's Expenses. If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

5.5 Waivers. The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of the Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Lender's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under any such other agreement or transaction) but all the Lender's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

5.6 Waiver of Homestead. To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Title 42, Section 8123, of the Pennsylvania Consolidated Statutes Annotated.

5.7 Joint and Several. If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

5.8 Severability. If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

Case ID: 240100380

53329504 Page 14 of 17 02/20/2018 08:38 AM

5.9 Complete Agreement. This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

5.10 Binding Effect of Agreement. This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Lender; and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

5.11 Notices. Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

5.12 Governing Law. This Mortgage shall be governed by the laws of the Commonwealth of Pennsylvania.

5.13 Reproductions. This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.14 Jurisdiction and Venue. The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Pennsylvania, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to the Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

5.15 JURY WAIVER. THE MORTGAGOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE MORTGAGOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Case ID: 240100380

5.16 Purchase Money Mortgage. To the extent all or any part of the Obligations secured by this Mortgage were used in whole or in part to fund the acquisition of all or any part of the Property, this Mortgage shall be a "purchase money mortgage" within the meaning of 42 Pa. C.S.A. Sec. 8141 and shall be accorded the lien priority provided for therein.

EXECUTED under seal as of the date first above written.

Witness: Mortgagor:

______________________ ______________________
Kristy Benson, individually

The address of the within named Lender is:

30699 Russell Ranch Rd., Suite 295
Westlake Village, CA 91362

VELOCITY COMMERCIAL CAPITAL, LLC

By: ______________________
Name: Dimitrios Louis
Title: manager

Case ID: 240100380

COMMONWEALTH OF PENNSYLVANIA :
SS.
COUNTY OF Philadelphia :

On this, the 26 day of January 2018, 20__, before me, a Notary Public, personally appeared Kristy Benson, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he/she acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DIMITRIOS LOURIS, Notary Public
Bensalem Township, Bucks County
My Commission Expires July 8, 2020

NOTARY PUBLIC
MY COMMISSION EXPIRES:

© 2018 Medici, a division of Wolters Kluwer Financial Services

Case ID: 240100380

53329504 Page 17 of 17 02/26/2018 03:38 AM

**Fidelity National Title Insurance Company**

## SCHEDULE A
*(continued)*

File No. **17-2742**

LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

BEING part of the same premises which Salvatore Franzini and Phyllis Franzini, his wife by Deed dated 4/12/1978 and recorded 4/17/1978 in Philadelphia County in Deed Book DCC 1632 page 447 conveyed unto Daniel Reganata and Victoria Reganata, his wife, in fee.

AND BEING the same premises which Daniel Reganata and Victoria Reganata, his wife by Deed dated 9/9/1998 and recorded 9/22/1998 in Philadelphia County in Deed Book JTD 800 page 506 conveyed unto Daniel Reganata and Victoria Reganata, his wife, in fee. (Subdivided) ($1 deed consideration)

And the Daniel Reganata departed this life on __/__/___, whereby the said title is now solely vested in Victoria Reganata, his wife.

Parcel #02-1-3551-00

Case ID: 240100380

# Exhibit D

Case ID: 240100380

**From:** **Paul Benson** pnb100@me.com
**Subject:** Need a refinance
**Date:** January 2, 2019 at 7:41 AM
**To:** Jack Meyers amcfunding@yahoo.com

Hey Jack,

Hope you had great holidays. I want to start the refinance on my most recent property at 1233 Wharton Street. The prepay penalty expires on 2/1/19 and I want to pull as much out of the property as possible. The whole building is residential now. I am hoping to use the cash out to pay off the soft money loan I got with Eric. I preferably would like to handle everything through a conforming 30 year fixed residential. And I prefer to work with you!

Get in touch with me. My commercial note says I need to give the current lender, "30 days written notice" before refinancing. I am sending certified letters out on Thursday. Can you make the refinance 30 days from Thursday?

My credit looks amazing, last years taxes look great and I can probably get a great tax year in for 2018 so I have back to back good years.

Graciously,
Paul Benson

# Exhibit E

Case ID: 240100380

Kristy Benson
1221 Titan Street
Philadelphia, PA 19147
Kristy Benson: 917-721-1421
Paul Benson: 267-228-4723
pnb100@me.com

January 1, 2019

Correspondence Department
Velocity Mortgage Capital
550 Pinetown Rd, Ste. 170
Fort Washington, PA 19034
818.338.9306 Direct Fax
pguensch@velocitymortgage.com

To Whom it May Concern:

This letter serves as your official written notification stating my plans to refinance my mortgage you currently hold on my property at 1233 Wharton Street, Philadelphia, PA 19147. This notice is being issued to conform to the requirements set forth in the original note which state, "This note may be prepaid in whole or in part upon thirty (30) days prior written notice to the Lender". There is a one year prepayment penalty in effect that will expire on February 1st, 2019, the ("Prepayment Charge Expiration Date"). I plan on my mortgage refinance to occur on the day following the PPP expiration day.

My loan is being serviced by Nationstar (dba Mr. Cooper) loan servicing and my loan number with them is: **639776905.** I do not possess a loan number for Velocity mortgage.

Should you find that this written request does not suit your requirements for written notification, I will be faxing this letter to both you (Velocity) and Nationstar (Mr. Cooper), I will be emailing both institutions and I will be sending this letter via certified mail to both institutions also. I will be do so to guarantee that there is no confusion as to receipt of the notification or possibly disappearance altogether. You have understand.

Should you have any questions concerning this matter please contact myself or my husband, Paul Benson. His direct contact number is 267-228-4723. He is authorized to handle any and all communication concerning this matter and any other matter associated with the property: 1233 Wharton Street.

Graciously yours

Kristy Benson

# Exhibit F

Case ID: 240100380

Allied Mortgage Group

225 E. City Ave. Suite 102 · Bala Cynwyd, PA 19004

*Save this Loan Estimate to compare with your Closing Disclosure.*

# Loan Estimate

| | |
|---|---|
| **DATE ISSUED** | 1/14/2019 |
| **APPLICANTS** | PAUL N BENSON<br>1221 TITAN STREET<br>Philadelphia, PA 19147 |
| **PROPERTY** | 1233 WHARTON STREET<br>Philadelphia, PA 19147 |
| **PROP. VALUE** | $575,000 |

| | |
|---|---|
| **LOAN TERM** | 30 years |
| **PURPOSE** | Refinance |
| **PRODUCT** | Fixed Rate |
| **LOAN TYPE** | ☒ Conventional ☐ FHA ☐ VA ☐ ____ |
| **LOAN ID #** | 200219015145 |
| **RATE LOCK** | ☒ NO ☐ YES, until<br>*Before closing, your interest rate, points, and lender credits can change unless you lock the interest rate. All other estimated closing costs expire on* **1/29/2019** *at 5:00 PM EST* |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $395,000 | **NO** |
| **Interest Rate** | 5.25 % | **NO** |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $2,181.20 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| **Payment Calculation** | | **Years 1-30** |
|---|---|---|
| Principal & Interest | | $2,181.20 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow<br>*Amount can increase over time* | + | 533 |
| **Estimated Total Monthly Payment** | | **$2,714** |

| | | | |
|---|---|---|---|
| **Estimated Taxes, Insurance & Assessments**<br>*Amount can increase over time* | $533<br>Monthly | **This estimate includes**<br>☒ Property Taxes<br>☒ Homeowner's Insurance<br>☐ Other:<br>*See Section G on page 2 for escrowed property costs. You must pay for other property costs separately.* | **In escrow?**<br><br>**YES**<br>**YES** |

## Costs at Closing

| | | |
|---|---|---|
| **Estimated Closing Costs** | $14,037 | Includes $14,162 in Loan Costs + $3,825 in Other Costs - $3,950 in Lender Credits. *See page 2 for details.* |
| **Estimated Cash to Close** | $80,963 | Includes Closing Costs. *See Calculating Cash to Close on page 2 for details.*<br>☐ From ☒ To Borrower |

Case ID: 240100380

Visit **www.consumerfinance.gov/mortgage-estimate** for general information and tools.

# Closing Cost Details

## Loan Costs

| A. Origination Charges | $10,863 |
|---|---|
| % of Loan Amount (Points) | |
| Origination Fee | $10,863 |

| B. Services You Cannot Shop For | $850 |
|---|---|
| Appraisal Fee | $750 |
| Credit Report | $100 |

| C. Services You Can Shop For | $2,449 |
|---|---|
| Title - Abstract Or Title Search Fee | $10 |
| Title - Courier Fee | $62 |
| Title - Lender's Title Insurance | $2,327 |
| Title - Notary Fee | $35 |
| Title - Wire Transfer Fee | $15 |

| D. TOTAL LOAN COSTS (A + B + C) | $14,162 |
|---|---|

## Other Costs

| E. Taxes and Other Government Fees | $227 |
|---|---|
| Recording Fees and Other Taxes | $227 |
| Transfer Taxes | |

| F. Prepaids | $398 |
|---|---|
| Homeowner's Insurance Premium ( months) | |
| Mortgage Insurance Premium ( months) | |
| Prepaid Interest ($56.82 per day for 7 days @5.25 %) | $398 |
| Property Taxes ( months) | |

| G. Initial Escrow Payment at Closing | | $3,200 |
|---|---|---|
| Homeowner's Insurance | $82.00 per month for 6 mo. | $492 |
| Mortgage Insurance | per month for mo. | |
| Property Taxes | $451.31 per month for 6 mo. | $2,708 |

| H. Other | $0 |
|---|---|

| I. TOTAL OTHER COSTS (E + F + G + H) | $3,825 |
|---|---|

| J. TOTAL CLOSING COSTS | $14,037 |
|---|---|
| D + I | $17,987 |
| Lender Credits | -$3,950 |

## Calculating Cash to Close

| Loan Amount | $395,000 |
|---|---|
| Total Closing Costs (J) | -$14,037 |
| Estimated Total Payoffs and Payments | -$300,000 |
| **Estimated Cash to Close** ☐ From ☒ To Borrower | $80,963 |
| Estimated Closing Costs Financed (Paid from your Loan Amount) | $0 |

Case ID: 240100380

## Additional Information About This Loan

| | |
|---|---|
| LENDER | Allied Mortgage Group |
| NMLS/___ LICENSE ID | 1067 |
| LOAN OFFICER | |
| NMLS/___ LICENSE ID | |
| EMAIL | |
| PHONE | 610-668-2745 |

| | |
|---|---|
| MORTGAGE BROKER | AMC Funding Corporation |
| NMLS/___ LICENSE ID | 17843 |
| LOAN OFFICER | Jack Meyers |
| NMLS/___ LICENSE ID | 137726 |
| EMAIL | amcfunding@yahoo.com |
| PHONE | 215-633-9836 |

| Comparisons | Use these measures to compare this loan with other loans. |
|---|---|
| In 5 Years | $145,431 Total you will have paid in principal, interest, mortgage insurance, and loan costs.<br>$31,009 Principal you will have paid off. |
| Annual Percentage Rate (APR) | 5.513 % Your costs over the loan term expressed as a rate. This is not your interest rate. |
| Total Interest Percentage (TIP) | 98.895 % The total amount of interest that you will pay over the loan term as a percentage of your loan amount. |

### Other Considerations

| | |
|---|---|
| Appraisal | We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if your loan does not close. You can pay for an additional appraisal for your own use at your own cost. |
| Assumption | If you sell or transfer this property to another person, we<br>☐ will allow, under certain conditions, this person to assume this loan on the original terms.<br>☒ will not allow assumption of this loan on the original terms. |
| Homeowner's Insurance | This loan requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. |
| Late Payment | If your payment is more than *15* days late, we will charge a late fee of *5% of the principal and interest overdue.* |
| Liability after Foreclosure | Taking this loan could end any state law protection you may currently have against liability for unpaid debt if your lender forecloses on your home. If you lose this protection, you may have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information. |
| Refinance | Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan. |
| Servicing | We intend<br>☐ to service your loan. If so, you will make your payments to us.<br>☒ to transfer servicing of your loan. |

### Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

PAUL N BENSON Date

Case ID: 240100380

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☑ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property ..e, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

..is is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

..rower ____________________ Co-Borrower ____________________

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| ..rtgage ..plied for: | ☐ VA ☐ FHA | ☑ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number: Unassigned |
|---|---|---|---|---|---|
| ..nount 336,000 | Interest Rate 5.375 % | No. of Months 360/360 | Amortization Type: | ☑ Fixed Rate ☐ GPM | ☐ Other (explain): ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

..bject Property Address (street, city, state, & ZIP): ..33 WHARTON STREET, Philadelphia, PA 19147 County: Philadelphia — No. of Units: 3

..gal Description of Subject Property (attach description if necessary): ..RIPLEX — Year Built:

..rpose of Loan ☐ Purchase ☐ Construction ☐ Other (explain): ☑ Refinance ☐ Construction-Permanent

Property will be: ☐ Primary Residence ☐ Secondary Residence ☑ Investment

*..mplete this line if construction or construction-permanent loan.*

| ..ar Lot ..quired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

*..mplete this line if this is a refinance loan.*

| ..ar ..quired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| ..18 | $ 425,000 | $ 300,000 | Cash-Out/Other | Cost: $ |

..le will be held in what Name(s): ..UL N BENSON, ..RISTY BENSON — Manner in which Title will be held: TWROS — Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date)

..urce of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| ..rrower's Name (include Jr. or Sr. if applicable): ..UL N BENSON | Co-Borrower's Name (include Jr. or Sr. if applicable): KRISTY L BENSON |
| ..cial Security Number: ..0-62-8084; Home Phone (incl. area code): 267-228-4723; DOB (mm/dd/yyyy): 08/03/1977; Yrs. School: 16 | Social Security Number: 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; Home Phone (incl. area code): 267-228-4723; DOB (mm/dd/yyyy): 09/29/1978; Yrs. School: 16 |
| Married (includes registered domestic partners) / Unmarried (includes single, divorced, widowed) / Separated; Dependents (not listed by Co-Borrower) No. 2, Ages | ☑ Married (includes registered domestic partners) ☐ Unmarried (includes single, divorced, widowed) ☐ Separated; Dependents (not listed by Borrower) No. 2, Ages |
| ..esent Address (street, city, state, ZIP/ country) ☑ Own ☐ Rent 5 No. Yrs.: ..21 TITAN STREET ..iladelphia, PA 19147 / United States | Present Address (street, city, state, ZIP/ country) ☑ Own ☐ Rent 5 No. Yrs.: 1221 TITAN STREET PHILADELPHIA, PA 19147 / United States |
| ..iling Address, if different from Present Address | Mailing Address, if different from Present Address |

*..esiding at present address for less than two years, complete the following:*

| Borrower | Co-Borrower |
|---|---|
| ..rmer Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
| ..rmer Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |

## IV. EMPLOYMENT INFORMATION

| Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|
| Name & Address of Employer<br>BENSON PROPERTY MANAGMENT<br>1221 TITAN ST<br>Philadelphia, PA 19147 | ☑ Self Employed | Yrs. on this job<br>20 yr(s)<br>Yrs. employed in this line of work/profession | | Name & Address of Employer<br>AIR BNB | ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession | |
| Position/Title/Type of Business<br>WNER | | Business Phone (incl. area code)<br>267-228-4723 | | Position/Title/Type of Business | | Business Phone (incl. area code) | |

*employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ 125.00 | $ 125.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,949.40 | $ 1,881.50 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 113.47 |
| Dividends/Interest | | | | Real Estate Taxes | | 451.31 |
| Net Rental Income | 7,294.00 | | 7,294.00 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 3,324.00 | | 3,324.00 | Homeowner Assn. Dues | | |
| | 1,668.71 | | 1,668.71 | Other: | | |
| Total | $ 12,286.71 | $ 125.00 | $ 12,411.71 | Total | $ 2,949.40 | $ 2,446.28 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | VA Benefits (Non-education) | $ 1,668.71 |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [X] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: | $ |
| *...t checking and savings accounts below* | |
| ...me and address of Bank, S&L, or Credit Union: ...ELLS FARGO | |
| ...ct. no. 7817 | $ 15,736.24 |
| ...me and address of Bank, S&L, or Credit Union: ...UMARK | |
| ...ct. no. 8070-S0001 | $ 2,673.79 |
| ...me and address of Bank, S&L, or Credit Union: ...UMARK | |
| ...ct. no. 8070-S0004 | $ 4,083.06 |
| ...ocks & Bonds (Company ...ne/number description) | $ |
| ...e insurance net cash value | $ |
| ...ce amount: $ | |
| **...btotal Liquid Assets** | $ 34,137.29 |
| ...al estate owned (enter market value ...n schedule of real estate owned) | $ 2,306,000.00 |
| ...sted interest in retirement fund | $ |
| ...t worth of business(es) owned ...ach financial statement) | $ |
| ...omobiles owned (make and year) | $ |
| ...er Assets (itemize) | $ |
| **Total Assets a.** | $ 2,340,137.29 |

**Liabilities and Pledged Assets.** List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company: SELENE FINANCE LP; Acct. no. 30249742 | $ Payment/Months (1,763.00) /348 | $ 323,951 |
| Name and address of Company: FREEDOM MORTGAGE CORP, 10500 KINCAID DR, FISHERS, IN 46037; Acct. no. 52987294 | $ Payment/Months (1,908.00) /280 | $ 264,939 |
| Name and address of Company: WELLS FARGO HM MORTGAG, 7495 NEW HORIZON WAY, FREDERICK, MD 21703; Acct. no. 9360361408669 | $ Payment/Months (629.00) /294 | $ 86,587 |
| Name and address of Company: OCWEN, 12650 INGENUITY DR, ORLANDO, FL 32826; Acct. no. 7131438405 | $ Payment/Months (524.00) /199 | $ 55,743 |
| Name and address of Company: DISCOVER FIN SVCS LLC, PO BOX 15316, WILMINGTON, DE 19850; Acct. no. 601100****** | $ Payment/Months 280.00 | $ 13,955 |
| Name and address of Company: USAA SAVINGS BANK, PO BOX 47504, SAN ANTONIO, TX 78265; Acct. no. 427082******5551 | $ Payment/Months 305.00 | $ 10,489 |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job-Related Expense (child care, union dues, etc.) | $ | |
| **Total Monthly Payments** | $ 1,163.00 | |
| Net Worth (a minus b) => $ 1,546,023.29 | **Total Liabilities b.** | $ 794,114.00 |

...edule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| ...perty Address (enter S if sold, PS if pending ...e or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| ...33 WHARTON STREET ...iladelphia, PA 19147 | R | SFR | $ 550,000 | $ 390,000 | $ 3,200 | $ 1,245 | $ | $ 1,155 |
| ...33-3335 FRANKFOR AVENUE ...ILADELPHIA, PA 19134 | R | MULTI | 175,000 | 55,924 | 2,295 | 524 | 267 | 931 |
| ...06 EAST ONTARIO STREET ...ILADELPHIA, PA 19134 | R | SFR | 55,000 | | 1,200 | | | 900 |
| ...ee page 5 for the additional properties | | Totals | $2,306,000.00 | $ 1,122,651.00 | $ 17,945.00 | $ 6,069.30 | $ 704.07 | $ 8,449.00 |

...t any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| ...lternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Borrower ________

Co-Borrower ________

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 298,000.00 |
| e. Estimated prepaid items | 778.91 |
| f. Estimated closing costs | 12,987.55 |
| g. PMI, MIP, Funding Fee | |
| Discount (if Borrower will pay) | |
| Total costs (add items a through h) | 311,766.46 |
| Subordinate financing | |
| Borrower's closing costs paid by Seller | |
| Other Credits (explain) ender Credit | 5,460.00 |
| Loan amount (exclude PMI, MIP, Funding Fee financed) | 336,000.00 |
| PMI, MIP, Funding Fee financed | |
| Loan amount (add m & n) | 336,000.00 |
| Cash from/to Borrower (subtract j, k, l & o from i) | -29,693.54 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☑ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☑ |
| l. **Do you intend to occupy the property as your primary residence?** If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☑ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

1 of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and es and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent mis-esentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any epresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States e, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the erty will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the erty will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether ot the loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the 1; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors, or assigns may, in addition to any other rights and remedies that it may relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan unt may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representa-or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application aining a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

nowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information ained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application consumer reporting agency.

**it to Receive Copy of Appraisal** I/We have the right to a copy of the appraisal report used in connection with this application for credit. To obtain a copy, I/we must send litor a written request at the mailing address Creditor has provided.Creditor must hear from us no later than 90 days after Creditor notifies me/us about the action taken is application, or I/we withdraw this application.
u would like a copy of the appraisal report, contact: AMC FUNDING CORPORATION 3070 BRISTOL PIKE SUITE 228 Bensalem, PA 19020

| rrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit ortunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may liscriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual ervation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above erial to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| RROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| nicity: | ☐ Hispanic or Latino ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino ☑ Not Hispanic or Latino |
| ce: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☑ White | Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| c: | ☐ Female ☑ Male | Sex: | ☑ Female ☐ Male |

**be Completed by Loan Originator:**
information was provided:
In a face-to-face interview ☐ By the applicant and submitted by fax or mail
In a telephone interview ☐ By the applicant and submitted via e-mail or the internet

| | | |
|---|---|---|
| 1 Originator's Signature | | Date 02/08/2019 |
| 1 Originator's Name (print or type) :K MEYERS | Loan Originator Identifier 137726 | Loan Originator's Phone Number (including area code) 215-633-9836/AMCFUNDING@YAHOO.COM |
| 1 Origination Company's Name : FUNDING CORPORATION 215-633-9836 (F) 215-633-9775 | Loan Origination Company Identifier 17843 | Loan Origination Company's Address 3070 BRISTOL PIKE SUITE 228 Bensalem, PA 19020 |

# Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: PAUL N BENSON | Agency Case Number: |
|---|---|---|
| | Co-Borrower: KRISTY L BENSON | Lender Case Number: Unassigned |

## VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| ne and address of Bank, S&L, or Credit Union<br>TIZENS BANK | | Name and address of Company<br>AMEX<br>TAPE - P O BOX 7871<br>FORT LAUDERDALE, FL 33329 | $ Payt./Mos. | $ |
| t. no. 2970 | $ 1,573.06 | Acct. No. -34999******06353 | (254) | (10,193) |
| ne and address of Bank, S&L, or Credit Union<br>AY PAL | | Name and address of Company<br>SEARS/CBNA<br>13200 SMITH RD<br>CLEVELAND, OH 44130 | $ Payt./Mos. | $ |
| t. no. | $ 5,977.74 | Acct. No. 512107****** | 153 | 10,149 |
| ne and address of Bank, S&L, or Credit Union<br>TIZENS BANK BUSINESS CKG | | Name and address of Company<br>BARCLAYS BANK DELAWARE<br>1007 N ORANGE ST<br>WILMINGTON, DE 19801 | $ Payt./Mos. | $ |
| t. no. 2682 | $ 4,093.40 | Acct. No. 000321***** | 90 | 9,078 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>DISCOVER FIN SVCS LLC<br>PO BOX 15316<br>WILMINGTON, DE 19850 | $ Payt./Mos. | $ |
| t. no. | $ | Acct. No. 601129****** | 122 | 6,074 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>NAVY FEDERAL CR UNION<br>PO BOX 3700<br>MERRIFIELD, VA 22119 | $ Payt./Mos. | $ |
| t. no. | $ | Acct. No. 403216******2141 | 60 | 3,000 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CAPITAL ONE BANK USA N<br>PO BOX 85520<br>RICHMOND, VA 23285 | $ Payt./Mos. | $ |
| . no. | $ | Acct. No. 480213****** | (72) | (2,541) |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>SEARS/CBNA | $ Payt./Mos. | $ |
| . no. | $ | Acct. No. 512107****** | 153/67 | 10,149 |

: fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the /e facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| ower's Signature: | Date | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

# Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: PAUL N BENSON | Agency Case Number: |
|---|---|---|
| | Co-Borrower: KRISTY L BENSON | Lender Case Number: Unassigned |

## VI. ASSETS AND LIABILITIES

chedule of Real Estate Owned

| operty Address (enter S if sold, PS if pending sale R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 30 ELLSWORTH STREET HILADELPHIA, PA 19147 | R | SFR | 625,000 | 265,458 | 3,500 | 1,908 | | 717 |
| DOUGHERTY BLVD. UNIT N4 LEN MILLS, PA 19342 | R | SFR | 105,000 | 86,760 | 2,000 | 629 | | 871 |
| 27 FRANKFORD AVENUE HILADELPHIA, PA 19134 | R | MULTI | 90,000 | 0 | 1,850 | | 222 | 1,166 |
| 29 FRANKFORD AVENUE HILADELPHIA, PA 19134 | R | SFR | 95,000 | 0 | 1,850 | | 117 | 1,270 |
| 23 FRANKFOR AVENUE HILADELPHIA, PA 19134 | R | SFR | 81,000 | 0 | 750 | | 20 | 542 |
| 25 FRANKFORD AVE HILADELPHIA, PA 19134 | R | MULTI | 80,000 | 0 | 1,300 | | 78 | 897 |
| 21 TITAN STREET HILADELPHIA, PA 19147 | | SFR | 450,000 | 324,509 | | 1,763 | | |

e fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the ve facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| rower's Signature: | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Case ID: 240100380

704102 000010851 09SP25 00064047

I HEREBY CERTIFY THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL

When recorded, return to:
Allied Mortgage Group, Inc.
ATTN: Recorded Documents
225 E. City Ave. Suite 102
Bala Cynwyd, PA 19004
877-448-2745

Certified Copy
True and Correct

This document was prepared by:
Allied Mortgage Group, Inc.
225 E. City Ave. Suite 102
Bala Cynwyd, PA 19004
610-668-2745

APN #: 02-1-3551-00

Title Order No.: 18-2961

LOAN #: 200219015145

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 1000907-1409521184-8
MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **February 22, 2019,** together with all Riders to this document.

(B) "Borrower" is **PAUL N. BENSON AND KRISTY BENSON.**

Borrower is the mortgagor under this Security Instrument.

Case ID: 240100380

LOAN #: 200219015145

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) **"Lender"** is **Allied Mortgage Group, Inc..**

Lender is **a Pennsylvania Corporation,** organized and existing under the laws of **Pennsylvania.** Lender's address is **225 E. City Ave. Suite 102, Bala Cynwyd, PA 19004.**

(E) **"Note"** means the promissory note signed by Borrower and dated **February 22, 2019.** The Note states that Borrower owes Lender **THREE HUNDRED THIRTY SIX THOUSAND AND NO/100*** ********************************************************* Dollars (U.S. **$336,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2049.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☒ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 2 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 3 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

assigns of MERS the following described property located in the County [Type of Recording Jurisdiction] of Philadelphia [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 02-1-3551-00**

which currently has the address of **1233 WHARTON STREET, PHILADELPHIA,** [Street] [City]
Pennsylvania **19147** [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Case ID: 240100380

704102 000010851 09SP25 00064047

**LOAN #: 200219015145**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 6 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing

Case ID: 240100380

LOAN #: 200219015145

such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 8 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



LOAN #: 200219015145

clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 9 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 10 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer

Case ID: 240100380

LOAN #: 200219015145

selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

Case ID: 240100380

LOAN #: 200219015145

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this

LOAN #: 200219015145

Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this

Case ID: 240100380

LOAN #: 200219015145

Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case ID: 240100380

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions

Case ID: 240100380

are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that

LOAN #: 200219015145

time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 18 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

Case ID: 240100380

LOAN #: 200219015145

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 20 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

PAUL N BENSON 2/22/19 DATE (Seal)

KRISTY BENSON 2/22/19 DATE (Seal)

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 21 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

State of Pennsylvania
County of Philadelphia

This record was acknowledged before me on this, the 22 day of February 2019, by PAUL N BENSON AND KRISTY BENSON.

Signature of Notarial Officer
(STAMP)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DIMITRIOS LOURIS, Notary Public
Bensalem Township, Bucks County
My Commission Expires July 8, 2020

Title of Officer notary

My commission expires ____________

Lender: Allied Mortgage Group, Inc.
NMLS ID: 1067
Broker: AMC Funding Corporation
NMLS ID: 17843
Loan Originator: Jack Meyers
NMLS ID: 137726

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 22 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

Certificate of Residence

I, Dimitrios Louris, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this 22 day of February 2019

Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 23 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



Certified Copy
True and Correct

LOAN #: 200219015145
MIN: 1000907-1409521184-8

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 22nd day of February, 2019 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Allied Mortgage Group, Inc., a Pennsylvania Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1233 WHARTON STREET
PHILADELPHIA, PA 19147

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

LOAN #: 200219015145

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Case ID: 240100380

LOAN #: 200219015145

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

PAUL N BENSON — 2/22/19 DATE (Seal)

KRISTY BENSON — 2/22/19 DATE (Seal)

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3170 1/01
Ellie Mae, Inc. Page 3 of 3 F3170RLU 0307
F3170RLU (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

I HEREBY CERTIFY THIS TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

LOAN #: 200219015145
MIN: 1000907-1409521184-8

# NOTE

February 22, 2019 [Date] | Bala Cynwyd, [City] | Pennsylvania [State]

1233 WHARTON STREET, PHILADELPHIA, PA 19147
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$336,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Allied Mortgage Group, Inc., a Pennsylvania Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2049,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **225 E. City Ave. Suite 102 Bala Cynwyd, PA 19004**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$1,881.50.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 1 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 2 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAUL N BENSON (Seal)

KRISTY BENSON (Seal)

**Lender: Allied Mortgage Group, Inc.**
**NMLS ID: 1067**
**Broker: AMC Funding Corporation**
**NMLS ID: 17843**
**Loan Originator: Jack Meyers**
**NMLS ID: 137726**

*[Sign Original Only]*

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 3 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



225 E. City Avenue
Suite 102
Bala Cynwyd, PA 19004
Phone: 610-668-2745
Fax: 610-668-8142

**LOAN # 200219015145**

**ALLONGE**

**ALLONGE TO THAT CERTAIN NOTE DATED:** 02/22/2019

**IN THE AMOUNT OF:** 336,000.00

**FROM:** PAUL N BENSON , KRISTY BENSON

**TO:** Allied Mortgage Group Inc. A Pennsylvania Corporation

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:** Allied Mortgage Group Inc. A Pennsylvania Corporation

**BY:**

*Jennifer McClain, Closing/Post-Closing Manager*

**PROPERTY ADDRESS:** 1233 WHARTON STREET, PHILADELPHIA, PA 19147

Case ID: 240100380

# Exhibit G

Case ID: 240100380



CUSTOMER KRISTY BENSON
LOAN NUMBER 639776905
PROPERTY ADDRESS 1233 WHARTON STREET, PHILADELPHIA, PA 19147
PAYMENT ACTIVITY 03/04/2018 to 03/04/2020

## POSTED PAYMENTS

| | DATE | AMOUNT | PRINCIPAL | INTEREST | ESCROW | OTHER | REMAINING BALANCE |
|---|---|---|---|---|---|---|---|
| **Principal Payoff** | 03/05/2019 | $298,286.61 | $298,286.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Escrow Deposit** | 03/05/2019 | $2,269.95 | $0.00 | $0.00 | $2,269.95 | $0.00 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $964.80 | $0.00 | $0.00 | $0.00 | $964.80 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $964.80 | $0.00 | $0.00 | $0.00 | $964.80 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Monthly Payment** | 02/01/2019 | $2,936.09 | $149.30 | $2,454.64 | $332.15 | $0.00 | $298,286.61 |
| **Monthly Payment** | 01/02/2019 | $2,936.09 | $148.09 | $2,455.85 | $332.15 | $0.00 | $298,435.91 |
| **Monthly Payment** | 12/03/2018 | $2,936.09 | $146.88 | $2,457.06 | $332.15 | $0.00 | $298,584.00 |
| **Monthly Payment** | 11/01/2018 | $2,936.09 | $145.68 | $2,458.26 | $332.15 | $0.00 | $298,730.88 |
| **Monthly Payment** | 10/02/2018 | $2,936.09 | $144.49 | $2,459.45 | $332.15 | $0.00 | $298,876.56 |
| **Monthly Payment** | 09/04/2018 | $2,936.09 | $143.31 | $2,460.63 | $332.15 | $0.00 | $299,021.05 |
| **Monthly Payment** | 08/09/2018 | $2,936.09 | $142.14 | $2,461.80 | $332.15 | $0.00 | $299,164.36 |
| **Monthly Payment** | 06/29/2018 | $2,936.09 | $140.98 | $2,462.96 | $332.15 | $0.00 | $299,306.50 |
| **Monthly Payment** | 06/01/2018 | $2,936.09 | $139.83 | $2,464.11 | $332.15 | $0.00 | $299,447.48 |
| **Escrow Adjustment** | 05/21/2018 | ($368.19) | $0.00 | $0.00 | ($368.19) | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 05/21/2018 | ($368.19) | $0.00 | $0.00 | ($368.19) | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 05/16/2018 | $368.19 | $0.00 | $0.00 | $368.19 | $0.00 | $299,587.31 |
| **Monthly Payment** | 05/01/2018 | $2,936.09 | $138.69 | $2,465.25 | $332.15 | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 04/13/2018 | $1,554.06 | $0.00 | $0.00 | $1,554.06 | $0.00 | $299,726.00 |
| **Escrow Adjustment** | 04/13/2018 | ($1,554.06) | $0.00 | $0.00 | ($1,554.06) | $0.00 | $299,726.00 |
| **Monthly Payment** | 03/30/2018 | $2,936.09 | $137.56 | $2,466.38 | $332.15 | $0.00 | $299,726.00 |
| **Monthly Payment** | 03/20/2018 | $2,936.09 | $136.44 | $2,467.50 | $332.15 | $0.00 | $299,863.56 |
| **Escrow Adjustment** | 03/09/2018 | $889.76 | $0.00 | $0.00 | $889.76 | $0.00 | $300,000.00 |
| **Escrow Adjustment** | 03/09/2018 | ($889.76) | $0.00 | $0.00 | ($889.76) | $0.00 | $300,000.00 |

© 2020. Nationstar Mortgage LLC d/b/a Mr. Cooper.

# Exhibit H

Case ID: 240100380



MERS System

ENVIRONMENT www.mersonline.org

ORG ID 1000383

MIN Summary

Summary

| | | | |
|---|---|---|---|
| MIN | 1000907-1409521184-8 | MIN Status | Deactivation-Assigned from MERS for Default or Bankruptcy |
| Address | 1233 WHARTON STREET<br>PHILADELPHIA, PA 19147 | | |
| MOM Indicator | MOM | Lien Type | First Lien |
| Reg Date | 02/26/2019 | | |
| County/Place | Philadelphia County | Owner Occupied | No |
| Primary Borrower | BENSON, PAUL | SSN | XXX-XX-XXXX |
| Co-Borrower | BENSON, KRISTY | SSN | XXX-XX-XXXX |
| Note Amount | $336,000.00 | Note Date | 02/22/2019 |
| Pool Number | 34083510 | Investor Loan Number | 713615303 |
| Securitization | N/A | | |
| Servicer | 1009836 - AmeriHome Mortgage Company, LLC | Subservicer | 1000383 - Cenlar FSB |



MERS System

ENVIRONMENT www.mersonline.org | ORG ID 1000383

## Milestones For 1000907-1409521184-8

| Description | Date | Initiating Organization / User | | Milestone Information |
|---|---|---|---|---|
| Deactivate-Assigned from MERS for Default or Bankruptcy | 02/16/2023 | 1000383<br>Batch | Cenlar FSB | MIN Status: Deactivation-Assigned from MERS for Default or Bankruptcy |
| Transfer Beneficial Rights - Option 1 | 05/07/2019 | 1000106<br>Batch User ID | Federal Home Loan Mortgage Corporation | MIN Status: Active (Registered)<br>New Investor: 1000106 Federal Home Loan Mortgage Corporation<br>OldInvestor: 1009836 AmeriHome Mortgage Company, LLC<br>Batch Number: 19311248<br>Transfer Date: 05/06/2019 |
| Release Interim Funder Interests | 05/02/2019 | 1006404<br>Batch | Wells Fargo Bank NA-Mortgage Banker Finance Group | MIN Status: Active (Registered)<br>OldInterim Funder: 1006404 Wells Fargo Bank NA-Mortgage Banker Finance Group |
| MIN Information Update | 03/12/2019 | 1009836<br>Batch | AmeriHome Mortgage Company, LLC | MIN Status: Active (Registered)<br>New Subservicer: 1000383 Cenlar FSB<br>Old Subservicer: None |
| MIN Information Update | 03/11/2019 | 1009836<br>Batch | AmeriHome Mortgage Company, LLC | MIN Status: Active (Registered)<br>New Interim Funder: 1006404 Wells Fargo Bank NA-Mortgage Banker Finance Group |
| Transfer of Flow TOS/TOB Servicing Rights | 03/09/2019 | 1000907<br>Kathy Amato | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>New Investor: 1009836 AmeriHome Mortgage Company, LLC<br>OldInvestor: 1000907 Allied Mortgage Group, Inc. |

Case ID: 240100380



7-836-BXB48-0000001-001-1-22-0-000-000-000-CP001

| | | | | Batch Number: 19053728<br>Transfer Date: 03/08/2019 |
|---|---|---|---|---|
| Transfer of Flow TOS/TOB Servicing Rights | 03/09/2019 | 1000907<br>Kathy Amato | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>New Servicer: 1009836 AmeriHome Mortgage Company, LLC<br>OldServicer: 1000907 Allied Mortgage Group, Inc.<br>Batch Number: 19053728<br>Sale Date: 03/08/2019<br>Transfer Date: 03/08/2019 |
| Registration | 02/26/2019 | 1000907<br>XML | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>Servicer: 1000907 Allied Mortgage Group, Inc. |

© 2023 MERSCORP Holdings, Inc. All rights reserved.

# Exhibit I

Case ID: 240100380

AmeriHome mortgage

March 27, 2019

PAUL N BENSON
KRISTY BENSON
1221 TITAN STREET
PHILADELPHIA PA 19147

Loan Number: 0116852146

## Notification of Assignment, Sale or Transfer of Your Mortgage Loan

The ownership of your first lien mortgage loan on 1233 WHARTON STREET, PHILADELPHIA, PA 19147 with an original principal balance $336,000.00 was transferred to AmeriHome Mortgage Co. LLC effective 03/07/2019.

The assignment, sale or transfer of the mortgage loan noted above does not affect any term or condition of your Mortgage, Deed of Trust or Note.

Additionally, the transfer(s) of ownership of your mortgage loan has not publicly recorded in the office of public land records or the recorder of deeds office for the county or local jurisdiction where the property is located. Please retain a copy of this notice for your records.

You should also know that if you send payments to ALLIED MORTGAGE GROUP, INC. after 04/01/2019 they may be returned to you. All correspondence and inquiries concerning your mortgage loan should continue to be addressed to AmeriHome Mortgage Company, LLC.

**AmeriHome Mortgage Company, LLC**
Customer Service (Loan Administration): Phone 1.855.501.3035 Hours: 8:30 am - 10:00 pm, Monday through Friday and 8:30 am - 5:00 pm Saturdays, ET.

| Correspondence Address: | Payment Address: |
|---|---|
| AmeriHome Mortgage Company, LLC<br>P. O. Box 77404 Ewing, NJ 08628 | AmeriHome Mortgage Company, LLC<br>P. O. Box 11733 Newark, NJ 07101-4733 |

We are required by law to provide you this notice, however should you have any questions regarding this notice, please contact AmeriHome at: **1.855.501.3035.**

**Disclosure Regarding Partial Payments**
If you make a payment that is less than the full amount due for your regularly scheduled monthly payment ("partial payment"), you may be in default under your loan documents. Do not send partial payments as they may be held in a separate account until you pay the rest of the payment, and then apply the full payment to your loan. If your loan is sold again, the new lender may have a different policy. If you have specific questions regarding partial payments, please contact AmeriHome at the contact information above.

CB404

AmeriHome Mortgage Company, LLC
1 Baxter Way, Suite 300
Thousand Oaks, CA 91362-3888
747.800.4220, Toll Free 888.469.0810
NMLS ID 135776

975055 000002603 09SP02 00064001

Case ID: 240100380

# Exhibit J

Case ID: 240100380

**From:** amerihome@loanadministration.com
**Subject:** Welcome to AmeriHome
**Date:** March 27, 2019 at 10:01 AM
**To:** pnb100@me.com

# We'd like to welcome you to AmeriHome Mortgage Company.

AmeriHome is the new servicer of your mortgage loan. That means that AmeriHome is now collecting your monthly mortgage loan payments. Nothing else about your mortgage loan has changed. You'll also find this information in the welcome letter we have mailed to you.

WHAT THIS MEANS FOR YOU:

If you have set up electronic payments with your original lender, you will need to change it. Please call us at the toll-free number below to find out more.

We would also appreciate the opportunity to introduce ourselves and take a brief moment to share our various offerings available to you, including online account management, automatic bill pay, and customer service.

The convenience of receiving your monthly statements electronically is also available to you with our e-Docs feature. Simply contact us and let us know that you would prefer this option instead of paper bills, and we will be glad to implement this service for you. You can also visit our website at www.amerihome.loanadministration.com to sign up.

If you have any questions or thoughts about how we can better assist you, please give us a call at your convenience toll free at 855-501-3035.

We appreciate your business and are grateful for the opportunity to serve all of your mortgage needs.

AmeriHome
Customer Care
Phone: 855-501-3035
Hours: Monday- Friday 8:30 am - 10:00 pm (ET)
Saturday 8:30 am - 5:00 pm (ET)

**Please do not respond to this email. This mailbox is used for outgoing communications only.**
**Questions? Comments? Please email us at**
**amerihome@loanadministration.com**
**All inquiries will be responded to within 5 business days**

Or by mail to:

PO Box 77404 Ewing, NJ 08628

If you do not wish to receive further email notifications from us please click here to opt out

# Exhibit K

Case ID: 240100380

FILED
2019 APR -4 AM 10: 54
PA DEPARTMENT OF BANKING AND SECURITIES

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF BANKING AND SECURITIES**

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE**

**v.**

**AMERIHOME MORTGAGE COMPANY, LLC**

**DOCKET NO. 19 0044 (BNK-CAO)**

**CONSENT AGREEMENT AND ORDER**

The Commonwealth of Pennsylvania, acting through the Department of Banking and Securities ("Department"), Compliance Office ("Office"), has reviewed the business practices of AmeriHome Mortgage Company, LLC ("AmeriHome Mortgage"). Based on the results of its review, together with certain disclosures AmeriHome Mortgage has made to the Department, the Office believes that AmeriHome Mortgage operated in violation of the Mortgage Licensing Act (the "MLA"), 7 Pa.C.S. § 6101 *et seq*. The parties to the above captioned matter, in lieu of litigation, hereby stipulate that the following statements are true and correct in the settlement of the above-captioned matter, and intending to be legally bound, hereby agree to the terms of this Consent Agreement and Order ("Order").

**BACKGROUND**

1. The Department is the Commonwealth of Pennsylvania's administrative agency authorized and empowered to administer and enforce the MLA.

2. The Office is primarily responsible for administering and enforcing the MLA for the Department.

3. AmeriHome Mortgage's principal place of business is located at 1 Baxter Way, Suite 300, Thousand Oaks, CA 91362.

4. AmeriHome Mortgage is licensed as a mortgage lender, license #59125, under the MLA but is not licensed as a Mortgage Servicer.

5. AmeriHome Mortgage has applied for licensure as a Mortgage Servicer.

Case ID: 240100380

Unlicensed Period

6. Section 6111(a) of the MLA requires a person engaged in the mortgage loan business as a mortgage servicer to be licensed as a mortgage servicer. 7 Pa C S § 6111(a)

7. Act 81 of 2018, which included the requirement that a mortgage servicer be licensed, was signed into law on December 22, 2017

8. The Department began accepting applications for licensure for existing mortgage servicers beginning on April 1, 2018 and continued to accept applications through June 30, 2018

9. The mortgage servicer licensing requirement found in Section 6111(a) of the MLA became effective April 27, 2018.

10. The Department provided an administrative grace period allowing unlicensed persons until June 30, 2018 to apply for a license without penalty for unlicensed activity.

11. AmeriHome Mortgage filed its application for licensure as a mortgage servicer on February 5, 2019

12. The MLA defines a "Mortgage Servicer" as "A person who engages in the mortgage loan business by directly or indirectly servicing a mortgage loan." 7 Pa C.S § 6102.

13. AmeriHome Mortgage contracted servicing rights to third party servicers

14. By using third party servicers, AmeriHome Mortgage is indirectly conducting mortgage servicing.

15. AmeriHome Mortgage has been providing mortgage servicing to Pennsylvania consumers while not licensed to do so

16. AmeriHome Mortgage cooperated with the Department regarding the matters addressed in this Order.

Authority of the Department

17. The Department has the authority to issue orders as may be necessary for the proper conduct of the mortgage loan business by licensees and the enforcement of the MLA. 7 Pa. C.S. § 6138(a)(4).

18. The Department may fine a person that commits any action which would subject the licensee to suspension, revocation or nonrenewal under Section 6139 up to $10,000 per offense 7 Pa C S. § 6140(b).

**VIOLATION**

19. AmeriHome Mortgage violated the MLA when it engaged in the business of a mortgage servicer while not licensed as a mortgage servicer. 7 Pa. C.S. § 6111(a).

**RELIEF**

20. Fine. AmeriHome Mortgage agrees to pay a fine of eighty thousand dollars ($80,000) with the payment due within thirty (30) days of the Effective Date of the Order. The fine payment shall be made by ACH or wire transfer, or if ACH or wire transfer is unavailable by certified check, cashier's check, teller's check or money order made payable to the "Department of Banking and Securities" and shall be mailed, or delivered in person to the attention of: Department of Banking and Securities, Compliance Office, 17 N. Second Street, Suite 1300, Harrisburg, PA 17101-2290

21. Licensure. Within five (5) days of the Effective Date of this order, the Department will issue a Mortgage Servicer license to AmeriHome Mortgage

**FURTHER PROVISIONS**

22. Consent AmeriHome Mortgage hereby knowingly, willingly, voluntarily and irrevocably consents to the entry of this Order pursuant to the Department's order authority under the MLA and agrees that it understands all of the terms and conditions contained herein AmeriHome Mortgage, by voluntarily entering into this Order, waives any right to a hearing or appeal concerning the terms, conditions and/or penalties set forth in this Order.

23. Consumer's Rights. The Order shall not limit or impair a consumer's rights under the MLA.

24. Publication. The Department will publish this Order pursuant to its authority in Section 302.A.(5) of the Department of Banking and Securities Code. 71 P.S § 733-302.A.(5).

25 Entire Agreement. This Order contains the whole agreement between the parties. There are no

other terms, obligations, covenants, representations, statements, conditions, or otherwise, of any kinds whatsoever concerning this Order. This Order may be amended in writing by mutual agreement by the Office and AmeriHome Mortgage.

26. Binding Nature. The Department, AmeriHome Mortgage, and all officers, owners, directors, employees, heirs and assigns of AmeriHome Mortgage intend to be and are legally bound by the terms of this Order.

27. Counsel. This Order is subject to review by the Department's Legal Division This Order is entered into by the parties upon full opportunity for legal advice from legal counsel

28 Effectiveness AmeriHome Mortgage hereby stipulates and agrees that the Order shall become effective on the date that the Department's Legal Division dockets this Order ("Effective Date").

29 Other Enforcement Action.

a. The Department reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against AmeriHome Mortgage in the future regarding all matters not resolved by this Order.

b. AmeriHome Mortgage acknowledges and agrees that this Order is only binding upon the Department and not any other local, state or federal agency, department or office regarding matters within this Order.

30 Authorization. The parties below are authorized to execute this Order and legally bind their respective parties

31 Counterparts This Order may be executed in separate counterparts and by facsimile or electronic mail in portable document format "PDF."

32. Titles. The titles used to identify the paragraphs of this document are for the convenience of reference only and do not control the interpretation of this document.

**WHEREFORE**, in consideration of the foregoing, including the recital paragraphs, the Department

of Banking and Securities, Compliance Office, and AmeriHome Mortgage Company, LLC intending to be legally bound do hereby execute this Consent Agreement and Order.

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE**

Redacted

John Talalai, Administrator
Compliance Office
Department of Banking and Securities

Date: 4-1-2019

**FOR AMERIHOME MORTGAGE COMPANY, LLC**

Redacted

(Officer Signature)

Jerry Hagan
(Print Officer Name)

EVP - Legal
(Title)

Date: 1 April 2019



# Exhibit L

Case ID: 240100380

# Required Documentation Checklist

In support of the MERS® System Membershp Application of your organization, you are required to submit supplemental documents, which vary primarily based upon your organization type.

Use this checklist to ensure you have the appropriate documentation available prior to completing your application. Examples of acceptable documents for each requirement are indicated by a green check. Only one document per category is required.

To ensure documents are able to be uploaded to the MERS® eApplication website, save each document individually as a PDF, DOC, or DOCX file.

## PRIVATE COMPANY

☐ **Verification of organization's legal name**
- ✓ Articles of Incorporation/Organization Name
- ✓ Certificate of Formation
- ✓ Certificate of Good standing from the state
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

☐ **Evidence of Insurance**
- ✓ Declaration Page from your organization's Errors and Omissions (E&O) Policy
- ✓ Fully bound Errors & Omissions Insurance Policy
- ✓ Copy of the Surety Bond
- ✗ An Insurance Binder is not acceptable

☐ **Verification of Good Standing for organization's Lending License**
- ✓ Screenshot from Nationwide Mortgage Licensing System & Registry (NMLS)

☐ **Primary Lending License for the Principal**

*The principal is an individual who has an ownership stake in the company (e.g., Managing Partner, President, CEO, Owner, etc.)*
- ✓ Copy of lending license for the principal of your organization.

## PUBLICLY TRADED ORGANIZATION (INCLUDES GOVERNMENT ENTITIES)

☐ **Verification of organization's legal name**
- ✓ Articles of Incorporation / Organization Name
- ✓ Company Charter / Bylaws / Operating Agreement
- ✓ Lender's license
- ✓ Certificate of Formation
- ✓ 10-K

## BANK OR CREDIT UNION

☐ **Verification of organization's legal name**
- ✓ Articles of Incorporation / Organization Name
- ✓ Certificate of Formation
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

☐ **Certification from**
- ✓ Federal Deposit Insurance Corporation (FDIC)
- ✓ State Banking Authority
- ✓ National Credit Union Administration (NCUA)

## VENDOR

*For purposes of MERS® System membership, a Vendor is any organization that intends to perform MERS® System transactions on MERS-related services on behalf of another Member.*

☐ **Verification of organization's legal name**
- ✓ Articles of Incorporation / Organization Name
- ✓ Certificate of Formation
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

## ADDITIONAL DOCUMENTS, IF APPLICABLE

☐ **Warehouse Lender Approval - Required for organizations using a warehouse line to fund the MERS Loans they originate**
- ✓ Warehouse line approval
- ✓ Conditional approval

☐ **Official Documentation of Trade, Assumed, or Fictitious Name or DBA**
- ✓ Certificate of Assumed Name
- ✓ Fictitious Business Name Statement

## Are You Ready to Apply?

Once you've gathered the documents required for your organization go to https://www.mersinc.org/products-services/mers-system and click *Apply for Membership*!

Case ID: 240100380

# Exhibit M

Case ID: 240100380

A living soul

# Kristy Lee Benson

November 23, 2022

AmeriHome Mortgage Company, LLC
P. O. Box 77423
Ewing, NJ 08628

Dear AmeriHome Mortgage Company, LLC and/or Affiliates,

I am under the impression that you posses a debt obligation attributed to the PERSON with the title KRISTY LEE BENSON in the amount of $318,190.14.

I, Kristy Lee Benson (sui juris), agree to pay any financial obligation that I might lawfully owe, ON THE CONDITION that you provide me with:

1. Validation of the debt (the actual accounting of the debt including the origination of the currency/funds)

2. Verification of your claim against me in the form of a signed Invoice (not a statement)

3. A copy of the Contract binding both parties (you and I) with both of our wet ink signatures. (A loan application does not constitute a contract)

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

I await your timely response.

Sincerely yours,

Kristy Lee Benson, sui juris
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

January 12, 2023

AmeriHome Mortgage Company, LLC
ATTN: Rafael Cruz, Executive Resolution Specialist
P. O. Box 77423
Ewing, NJ 08628

Dear Mr. Cruz, AmeriHome Mortgage Company, LLC and/or Affiliates,

Thank you so much for sending me the packet dated December 8, 2022. Although it was not anything I requested as far as loan verification documents, it was extremely informative.

Your cover letter points out that a copy of the note and deed of trust (mortgage/lien?) are included. Neither of which is considered a binding contract because only my signatures are on those documents. Those items are the security instruments that result from the execution of a binding contract. One that is signed by both me and an authorized signer from Amerihome and one that describes that both sides have put up something of equal worth. I can't remember that ever happening but I also want to make it clear that I am not disputing the amount or existence of this debt. Please forward the contract so that I may have it for my records.

The other item you included, the MERS ledger, was an eye opener I must say. I'm doing my due diligence and rereading all the docs you sent; and over and over they state "the Lender is Allied Mortgage Group". That's who I remember being named on those documents and authorizing me to take possession of property in question. But then the MERS !!! On the MERS summary, to my surprise, next to the word "investor" it shows someone other than Allied Mortgage. Its states that Federal Home Loan Mortgage Corporation is the "investor" or in other words they are the source of the funds. That really confuses me and raises some suspicions/questions on my end.

1. If Allied didn't supply the funds, then wouldn't all these documents they forced me to sign be considered no-interest or unconscionable contracts? Some (not me though) may even consider what Allied did as fraudulent and a misrepresentation (and now Amerihome has delivered those documents again and made themselves a party to whatever this is). But I'm not disputing it.
2. If the Federal Home Loan Mortgage Corporation did deliver the funds, then shouldn't they be on the note and mortgage? And shouldn't they be the one's sending demand letters and requesting payment? But then I didn't contract at all with Federal Home Loan Mortgage Corporation. Some (not me though) may even construe their "investment" as a gift since there is no contract between myself and Federal Home Loan Mortgage Corporation. Those

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

people may also request that this debt be discharged with prejudice, the note satisfied and the mortgage removed. Or legal action could follow. But I'm not disputing it remember.

I find that very interesting don't you?

But back to my documents request. I feel as though I have given you ample time to produce the documents I have requested. You have not provided them. If you cannot produce the documents in the next 14 days, I will consider the debt to be fully discharged with the removal of all liens and encumbrances upon my property or me.

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

I await your timely response.

Sincerely yours,

Paul Nathan Benson
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

November 17, 2023

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
Mt. Laurel, NJ 08054

**Reference: 23-156424-AnH**

Dear Robertson, Anschutz, Schneid, Crane & Partners and/or Affiliates,

Thank you so much for sending your letter to inform me that you are attempting to collect a debt. The information you have provided is puzzling, however. In your letter you say that your are contacting me on behalf of Federal Home Loan Mortgage Corporation. Thus implying that I must have entered into a mortgage agreement/contract with Federal Home Loan Mortgage Corporation at some point in the past. Upon hearing that you believe I owe Federal Home Loan Mortgage Corporation $375,395.77, I immediately did a deep dive into my vast trove of financial documents to see if I could find one shred of evidence confirming that I have some sort of contract or agreement with Federal Home Loan Mortgage Corporation. After quite a few diligent minutes looking, guess what I found? Nothing. There doesn't exist any such document. Nothing with my signature, obligating me to pay Federal Home Loan Mortgage Corporation anything.

Now, Federal Home Loan Mortgage Corporation must have demonstrated with some sort of document, that I have contracted with them. It must be a rock solid piece of documentation in order for you as an attorney to claim and bring suit in a court of law where strict proof is required. If you wouldn't mind, could you send me a copy of this supposed document that has placed me in debt to Federal Home Loan Mortgage Corporation?

I am officially requesting verification of this debt. It seems you have included a statement from the mortgage servicer, AmeriHome. Now, AmeriHome has sent their own supposed verification documents showing a company named Allied Mortgage Group as the supposed Lender. How has Federal Home Loan Mortgage Corporation obtained this debt? Did they pay Allied Mortgage Group with good and valuable consideration? These are all important questions that I will absolutely need answers to.

Can you see why I am so puzzled by your letter? Looking forward to your answers and hopefully some clarity on this matter.

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

Graciously His,

Paul Nathan Benson
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

Case ID: 240100380

# Exhibit N

Case ID: 240100380

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
Mt. Laurel, NJ 08054
1-800- 933-0479 from 8:30am to 5:30pm EST, Monday to Friday
www.raslegalgroup.com

To: PAUL BENSON
1388 MADISON AVENUE
POCONO SUMMIT, PA 18346

**Reference: 23-156424 - AnH**
This form was prepared on October 26, 2023

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC is a debt collector.** We are trying to collect a debt that you owe to Federal Home Loan Mortgage Corporation. We will use any information you give us to help collect the debt.

## Our information shows:

**You have a Mortgage Loan account serviced by Cenlar FSB on behalf of Federal Home Loan Mortgage Corporation with loan number 0116852146 secured by the premises located at 1233 WHARTON STREET, PHILADELPHIA, PA 19147.**

*See the enclosed periodic statement for an itemization of the debt.*

| **Total amount of the debt now:** | **$ 375,395.77** |
|---|---|

## How can you dispute the debt?

- **Call or write to us by December 02, 2023, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by December 02, 2023**, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

## What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by December 02, 2023, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

**Notice:** **See reverse side for important information.**

---

**Mail this form to:**
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
**Mt. Laurel, NJ 08054**

PAUL BENSON
1388 MADISON AVENUE
POCONO SUMMIT, PA 18346

## How do you want to respond?

*Check all that apply:*

- ☐ **I want to dispute the debt because I think:**
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on the reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor:**

# Exhibit O

Case ID: 240100380

eRecorded in Philadelphia PA Doc Id: 54150932
02/15/2023 11:20 AM Page 1 of 3 Rec Fee: $242.75
Receipt#: 23-12705
Records Department Doc Code: A

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Cenlar FSB C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 02/22/2019, in the amount of $336,000.00 made by **PAUL N. BENSON AND KRISTY BENSON.** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS** recorded on 08/31/2020, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, in the State of **Pennsylvania**, in **Doc ID 53710398**.

SEE ATTACHED EXHIBIT A

Property is more commonly known as: 1233 WHARTON STREET, PHILADELPHIA, PA 19147.

**Dated this 15th day of February in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS**

By: ______________________
**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

CENAV 435698797 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT N1 MIN 100090714095211848 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 DOCR T152302-12:15:13 [C-3] EFRMPA1

*D0099542485*

STATE OF FLORIDA COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 15th day of February in the year 2023, by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**VICKY MCCOY**
**COMM EXPIRES: 12/18/2026**

VICKY MCCOY
Notary Public - State of Florida
Commission # HH 328470
My Comm. Expires Dec 18, 2026
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **PAUL N. BENSON AND KRISTY BENSON.**

All that certain lot or piece of ground situated in
Mortgage Premises: 1233 WHARTON STREET
PHILADELPHIA, PA 19147
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Susan Hicks**, do certify that the precise address of the within named Assignee is:
**AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*435698797* CENAV 435698797 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT N1 MIN 100090714095211848 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 DOCR T152302-12:15:13 [C-3] EFRMPA1

*D0099542485*

# Exhibit A

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

# Exhibit P

Case ID: 240100380

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

Filed and Attested by the
Office of Judicial Records
03 JAN 2024 12:49 pm
S. RICE

**THIS IS NOT AN ARBITRATION CASE**

Paul Benson
Plaintiff

vs.

Amerihome Mortgage Company, LLC;
Federal Home Loan Mortgage Corporation;
Mortgage Electronic Registration Systems, Inc;
Allied Mortgage Group Inc.

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION - CIVIL

__________ TERM, _____

No.__________

**ACTION TO QUIET TITLE**
**(FRAUDULENT CONVEYANCE)**

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificatión. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6333

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

**THIS IS NOT AN ARBITRATION CASE**

---

| | | |
|---|---|---|
| Paul Benson<br>Plaintiff | : | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>TRIAL DIVISION - CIVIL |
| vs. | : | _____________ TERM, _____ |
| Amerihome Mortgage Company, LLC;<br>Federal Home Loan Mortgage Corporation;<br>Mortgage Electronic Registration Systems, Inc;<br>Allied Mortgage Group Inc. | : | No.____________ |

**ACTION TO QUIET TITLE**
**(FRAUDULENT CONVEYANCE)**

Plaintiff, hereby files this Complaint against the Defendant to Quiet Title with respect to a certain parcel of real estate and in support thereof avers as follows:

**1.** Plaintiff(s) is/are:

Paul Benson

**2.** Defendant(s) is/are:

Amerihome Mortgage Company, LLC

Federal Home Loan Mortgage Corporation

Mortgage Electronic Registration Systems, Inc

Allied Mortgage Group Inc.

Case ID: 240100380

**3.** The real estate, which is the subject of this litigation is:

**1233 Wharton Street, Philadelphia, PA 19147**

**A copy of the legal description is contained within the deed conveying the property to the Plaintiff, which is attached hereto. Exhibit D**

**4.** State the cause of action in detail:

It has recently been brought to the Plaintiffs attention, that there exists several causes of action that call into question veracity of the current status of the title for subject property of this action. Plaintiff avers that a breach of contract occurred during the loan origination, a fraudulent conveyance of mortgage and note was then created, and subsequently an imperfect lien had been filed when the Plaintiff was attempting to refinance his wife's mortgage in 2019. The Plaintiff had his suspicions of fraudulent activity in 2019 when the servicer of his wife's mortgage, Mr. Cooper, stole $3,671.49 of the Plaintiff's escrow account funds. The title company, J&T Abstract Inc. assisted, turned a blind eye, and finally ignored the Plaintiff till he felt he had no other recourse. See Exhibits A, B, C and D for the details.

That brings us to the recent discovery of other fraudulent activity that occurred in 2019. The Plaintiff asked for a verification of ownership for his mortgage and received a copy of the MIN summary from the MERS System.(Exibit E) Upon reviewing the document, the Plaintiff noticed several glaring inconsistencies of which I will walk you through now.

1. Violation of Consumer Protection Laws: Full disclosure under the law was not given to the Plaintiff. Allied Mortgage Group Inc. repeatedly calls itself the lender on both the mortgage documents and the note. However, when registering the mortgage in the MERS system, Allied Mortgage Group assigns itself the designation of "Servicer". The mortgage and the note are both fraudulent documents because Allied lied about its role in the origination of the loan. See Exhibit E.

2. Breach of Contract: Equal consideration was not received by the Plaintiff. After reviewing the dates on the MERS it also appears that Allied never funded the loan or gave any type of consideration to justify the mortgage or note. The note and mortgage were executed on 2/22/2019, but as you can see from my Mr. Cooper payment activity sheet, The Plaintiff's previous mortgage was not payed off until 3/5/2019. (Exhibit A) So it is clear Allied did not pay off the Mr. Cooper mortgage. In fact, when comparing the payoff date with the MERS system summary, it appears that there was no funding source from within the MERS system. The first alleged funding source doesn't appear until 3/11/2019, well after some other source apparently gifted to the Plaintiff a mortgage payoff. These MERS users are fraudulent claiming to have provided consideration when the documented facts state otherwise.

3. Fraudulent Lien Filling: If Allied never provided consideration at the execution of the mortgage and note, then Allied fraudulently placed a lien on the Plaintiff's property. It is plainly evident that consideration was not given, and therefore a lien could not be perfected. Any lien currently encumbering the Plaintiff's property is fraudulent.

There are many other inconsistencies but the three I have mentioned void any claim to property title that the Defendants may make.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court find in his/her favor and against the Defendant(s), and enter a judgment ordering the Recorder of Deeds for Philadelphia County to convey the property located at:

**1233 Wharton Street, Philadelphia, PA 19147**

to the Plaintiff(s), upon presentment of an order stating the same; and granting such other relief as is necessary and appropriate.

Respectfully submitted:

______________________________
Plaintiff

______________________________
Plaintiff

Date: **1/3/2024**

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

**THIS IS NOT AN ARBITRATION CASE**

---

| | | |
|---|---|---|
| Paul Benson Plaintiff | : | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>TRIAL DIVISION - CIVIL |
| vs. | : | ______________ TERM, _____ |
| Amerihome Mortgage Company, LLC<br>Federal Home Loan Mortgage Corporation<br>Mortgage Electronic Registration Systems, Inc<br>Allied Mortgage Group Inc. | : | No.______________ |

**AFFIDAVIT OF PLAINTIFF**

**COMMONWEALTH OF PENNSYLVANIA :**
**: ss.**
**COUNTY OF PHILADELPHIA :**

I, Paul Benson (Plaintiff), being duly sworn according to law, depose and say that the facts stated herein are true and correct.

______________________________
Plaintiff

______________________________
Plaintiff

# VERIFICATION

Plaintiff(s) Paul Benson

hereby verify that the statements set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief; I understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

______________________________
Signature of Plaintiff

______________________________
Signature of Plaintiff

Dated: **1/3/2024**



Filed and Attested by the
Office of Judicial Records
17 JUN 2024 11:55 pm
S. RICE

# Exhibit A

Case ID: 240100380

File No. **18-2961**

Parcel ID No. 02-1-3551-00

# This Indenture, made the _____ day of ____________________, _____,

Between

**KRISTY BENSON**

(hereinafter called the Grantor), of the one part, and

**PAUL N. BENSON AND KRISTY BENSON**

(hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of **One And 00/100 Dollars** (**$1.00**) lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as tenants by the entirety

Street Address: **1233 Wharton Street, Philadelphia, PA 19147**

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

Being the same premises which Victoria Reganata by Deed dated 01/26/2018 and recorded 02/20/2018 in Philadelphia County as Document No. 53329803 conveyed unto Kristy Benson, in fee.

Case ID: 240100380

Together with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of him, the said grantor, as well at law as in equity, of, in and to the same.

To have and to hold the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

And the said Grantor, for herself and her heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and her heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against him, the said Grantor, and her heirs, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will

Warrant and Forever Defend.

In Witness Whereof, the party of the first part has hereunto set her hand and seal. Dated the day and year first above written.

Sealed and Delivered
IN THE PRESENCE OF US:

______________________________ ______________________________{SEAL}
Kristy Benson

Commonwealth of Pennsylvania } ss
County of Philadelphia

On this the ________ day of ____________________, ________, before me, the undersigned Notary Public, personally appeared Kristy Benson, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________
Notary Public
My commission expires ____________________

Case ID: 240100380

# Exhibit B

Case ID: 240100380




CITY OF PHILADELPHIA
DEPARTMENT OF LICENSES AND INSPECTIONS

# CERTIFICATION STATEMENT

**Date: 06/14/17**

**Certification Number: 788993**

**Property Address:**
**01233 00000 WHARTON ST 0000000**

**Zoning Classification: CMX-1**

ReMax Millennium
2600 Philmont Ave
Suite 322
Huntingdon V PA 19006

REGANATA DANIEL VICTORIA
01233 WHARTON ST

PHILADELPHIA PA 19147-4502

**Department records indicate this property is legally registered for use as follows:**

**SINGLE FAMILY DWELLING**

IF THIS PROPERTY IS NOT BEING USED AS INDICATED ABOVE, IT IS THE OWNER'S RESPONSIBILITY TO FILE FOR A NEW USE REGISTRATION PERMIT WITH THE DEPARTMENT'S ZONING UNIT.

**Department records indicate the following uncorrected violations:**

**N O N E**

A REPORT OF NO VIOLATIONS MAY BE THE RESULT OF NO INSPECTION OF THE PROPERTY.
NO WARRANTY OR GUARANTEE IS IMPLIED OR GRANTED BY THE CITY THAT THIS PROPERTY IS FREE OF CODE VIOLATIONS.

IMPORTANT INFORMATION RELATED TO THIS CERTIFICATION AND ANY TRANSFER OF OWNERSHIP

- Information on code violations is taken from the latest inspection reports on file, and may not accurately reflect conditions as they currently exist at this property.
- This Certification Statement does not generate an inspection by the Department of Licenses & Inspections. Undocumented or unreported violations may exist on the property.
- Construction Permits require final inspections. This document is not a Certificate of Occupancy.
- Condominiums: This document pertains to the specific address and unit and does not include records that may exist elsewhere in the building or development.
- Sellers of two-family dwellings shall certify in writing to the buyer that required smoke detectors have been installed and are in operating condition in accordance with the Fire Code.
- Properties registered HISTORICAL require approval from the Historical Commission prior to any alteration.
- Sellers of two-family dwellings and residential care facilities for up to 16 persons shall certify in writing to the buyer that required carbon monoxide alarms have been installed and are in operating condition in accordance with the Fire Code.

# Exhibit C

Case ID: 240100380

Doc Id: 53329804 M
02/20/2018 09:38 AM Page 1 of 17

This Document Recorded 02/20/2018 09:38 AM
Doc Id: 53329804 Receipt #:18-16715
Doc Code: M
Rec Fee: $226.75
Records Department, City of Philadelphia MB

PREPARED BY:

VELOCITY COMMERCIAL CAPITAL, LLC

RETURN TO:

VELOCITY COMMERCIAL CAPITAL, LLC

PO BOX 7089

Attention: Servicing Department

Westlake Village, CA 91359-7089

ATTN: Nationstar Servicing

PARCEL ID#: 021355100

**OPEN-END MORTGAGE**

**COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

**THIS INSTRUMENT SECURES FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF $300,000.00 PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN PENNSYLVANIA ACT NO. 42 PA. C.S.A. SECTION 8143**

**This OPEN-END COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Mortgage") is entered into as of January 26, 2018, between Kristy Benson**, an individual, with an address of **1221 Titan Street, Philadelphia, Pennsylvania 19147** (the "Mortgagor") and VELOCITY COMMERCIAL CAPITAL, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Rd., Suite 295, Westlake Village, CA 91362 (the "Lender").

The real property which is the subject matter of this Mortgage has the following address(es): **1233 Wharton Street, Philadelphia, Pennsylvania 19147-4544** (the "Address(es)").

**1. MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES**

1.1 Mortgage. For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Lender and all obligations respecting that certain **Semi-Annual Adjustable Term Note**, dated **January 26, 2018**, by **Kristy Benson** in favor of the Lender in the original principal amount of **$300,000.00** (the "Note"; and

Case ID: 240100380

collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Mortgage total **$300,000.00** as of the date of this Mortgage but this Mortgage shall nevertheless secure payment and performance of all Obligations.

1.2 Security Interest in Property. As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of Pennsylvania (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

1.3 Collateral Assignment of Leases and Rents. The Mortgagor hereby irrevocably and unconditionally assigns to the Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by the Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Lender exercises its rights and remedies to collect such rents as set forth herein.

1.4 Conditions to Grant. The Lender shall have and hold the above granted Property unto and to the use and benefit of the Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

1.5 Property. The term "Property," as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the Uniform Commercial Code, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the

Case ID: 240100380

Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

1.6 Obligations. The term "Obligation(s)," as used in this Mortgage, shall mean without limitation all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to the Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Lender; or are due indirectly by the Mortgagor to the Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

1.7 Cross-Collateral and Future Advances. It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

1.8 Open-End Mortgage. The Lender and the Mortgagor agree that:

(a) This Mortgage is an open-end mortgage pursuant to 42 PA. C.S.A. § 8143, and secures, inter alia, present and future advances made by the Lender pursuant to the Loan Documents, including, without limitation, advances for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Property or the lien of this Mortgage, or expenses incurred by the Lender by reason of default by the Mortgagor, and to enable any completion of the improvements comprising the Property as may be contemplated by the Loan Documents. Nothing contained herein shall impose any obligation on the part of the Lender to make any such additional loan(s) to Mortgagor.

(b) Without limiting any other provisions of this Mortgage, this Mortgage secures present and future loans, advances and extensions of credit made by the Lender to or for the benefit of Mortgagor, and the lien of such future advances shall relate back to the date of this Mortgage. This Mortgage shall also secure additional loans hereafter made by the Lender to or for the benefit of Mortgagor. Nothing contained herein shall impose any obligation on the part of the Lender to make any such additional loans, advances and extensions of credit to or for the benefit of Mortgagor.

(c) If the Mortgagor sends a written notice to the Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of the Lender to make any additional advances to Mortgagor, such notice shall be ineffective as to any future advances made to pay: (i) taxes, assessments, maintenance charges and insurance premiums; (ii) costs incurred for the protection of the Property or the lien of this Mortgage, (iii) expenses incurred by the

Case ID: 240100380

Lender by reason of the default of Mortgagor, (iv) any other costs incurred by Mortgagor to protect and preserve the Property and (v) for all or part of the cost of completing any erection, construction, alteration or repair of any part of the Property. It is the intention of the parties hereto that any such advance made by the Lender after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Property.

## 2. REPRESENTATIONS, WARRANTIES, COVENANTS

2.1 Representations and Warranties. The Mortgagor represents and warrants that:

(a) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(b) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances");

(c) The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Lender; and

(e) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

2.2 Recording; Further Assurances. The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of the Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Lender in the Property and the rights of the Lender under this Mortgage. Mortgagor will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other or further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes the Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes the Lender to file financing statements describing any agricultural liens or other statutory liens held by the Lender. Mortgagor agrees to furnish any such information to the Lender promptly upon request. In addition, Mortgagor shall at any time and from time

Case ID: 240100380

533298004 Page 5 of 17 02/20/2018 09:38 AM

to time, take such steps as the Lender may reasonably request for the Lender (i) to obtain an acknowledgment, in form and substance satisfactory to the Lender, of any bailee having possession of any of the Property that the bailee holds such Property for the Lender, and (ii) otherwise to insure the continued perfection and priority of the Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes the Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

2.3 Restrictions on the Mortgagor. The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Lender in each instance:

(a) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(b) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

(c) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give the Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and the Lender's interest therein against the claims of all persons and, unless the Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or the Lender's interest hereunder.

2.4 Operation of Property. The Mortgagor covenants and agrees as follows:

(a) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(b) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the

Case ID: 240100380

Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Lender, provide deductible amounts acceptable to the Lender, name the Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Thirty (30) days prior written notice to the Lender. Such policies shall include (i) a mortgage endorsement determined by the Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Lender may request. The Mortgagor will furnish to the Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(c) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of the Lender, execute any assignment of the Leases except in favor of the Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(d) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Lender and the Lender's agents, employees and representatives, at such reasonable times as the Lender may request, to enter and inspect the Property and such books and records; and

(e) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

(f) Mortgagor shall not enter into or modify the Lease or subleases with any lessor that engages in any use or occupancy of the property that would be a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. Every Lease or sublease of the property shall expressly prohibit tenants or other occupants from engaging or permitting others to engage in such use or occupancy. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the activity, including lease termination. Violation of this paragraph is a material breach of this agreement and constitutes an Event of Default.

2.5 <u>Payments</u>. The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by the Lender, the Mortgagor shall deposit from time to time with the Lender sums

Case ID: 240100380

determined by the Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Lender's request, provides the Lender with adequate cash security, in the Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to the Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to the Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Lender. If Mortgagor shall fail to pay such sums, the Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by the Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.6 Notices; Notice of Default. The Mortgagor will deliver to the Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to the Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7 Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Lender, describing the nature and extent thereof. The Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without the Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Lender and immediately pay the same to the Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Lender in amounts not exceeding the Obligations. The Lender may apply such amounts to the Obligations in such order as the Lender may determine.

2.8 Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Lender and, at the option of the Lender, be applied to the Obligations in such order as the Lender may determine; provided, however, that if the Lender shall require repair of the Property, the Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Lender and promptly paid to it.

## 3. CERTAIN RIGHTS OF THE LENDER

3.1 Legal Proceedings. The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. The Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

3.2 Appraisals/Assessments. The Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the

Case ID: 240100380

Property that are real estate at such times as the Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

3.3 Financial Statements. The Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Lender.

3.4 Leases and Rent Roll. The Mortgagor shall deliver to the Lender (i) during each calendar year and at such other times as the Lender shall request a rent roll for the Property, in form acceptable to the Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Lender shall request executed copies of all the Leases.

## 4. DEFAULTS AND REMEDIES

4.1 Events of Default. "Event of Default" shall mean the occurrence of any one or more of the following events:

(a) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

(b) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(c) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d) receipt by the Lender of notice from the Mortgagor or any holder of any subordinate lien on the Property intended to terminate, limit or affect in any manner the indebtedness secured by this Mortgage or the lien priority hereof;

(e) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(f) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(g) if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(h) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or

Case ID: 240100380

the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(i) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(j) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(k) the service upon the Lender of a writ in which the Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(l) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(m) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(n) the termination or revocation of any guaranty of the Obligations; or

(o) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Lender has been or may be impaired.

4.2 Remedies. On the occurrence of any Event of Default the Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Lender upon the Property for any reason shall not cause the Lender to be a mortgagee in possession, except upon the express written declaration of the Lender;

Case ID: 240100380

(c) With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints the Lender as its true and lawful attorney with the power for the Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. The Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Lender shall be liable to account only for such Rents actually received by the Lender. Lessees under the Leases are hereby authorized and directed, following notice from the Lender, to pay all amounts due the Mortgagor under the Leases to the Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as the Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as the Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Lender shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter. In addition, the Lender may in its sole and exclusive discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide the Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Lender "control" over the Property or cause the Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f) Take such other actions or proceedings as the Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

Case ID: 240100380

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

4.3    ACTION IN EJECTMENT.  FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PROPERTY IN THE EVENT OF ANY EVENT OF DEFAULT HEREUNDER, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN EJECTMENT FOR POSSESSION OF THE PROPERTY, IN FAVOR OF THE LENDER, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION OR APPEAL.  IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, THE LENDER SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. THE LENDER MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE ANY OF THE LOAN DOCUMENTS, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON ANY OF THE LOAN DOCUMENTS, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PROPERTY IN WHICH THE LENDER IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, AND SHALL SURVIVE ANY EXECUTION SALE TO THE LENDER.

MORTGAGOR HEREBY RELEASES AND AGREES TO RELEASE LENDER AND SAID ATTORNEYS FROM ALL PROCEDURAL ERRORS AND DEFECTS WHATSOEVER IN ENTERING SUCH JUDGMENT OR JUDGMENTS OR IN CAUSING SUCH WRITS OR PROCESS TO BE ISSUED OR IN ANY PROCEEDING THEREON OR CONCERNING THE SAME, PROVIDED THAT LENDER SHALL HAVE FILED IN SUCH ACTION OR ACTIONS AN AFFIDAVIT OR AFFIDAVITS MADE BY SOMEONE ON LENDER'S BEHALF SETTING FORTH THE FACTS NECESSARY TO AUTHORIZE THE ENTRY OF SUCH JUDGMENT OR JUDGMENTS ACCORDING TO THE TERMS OF THIS INSTRUMENT, OF WHICH FACTS SUCH AFFIDAVIT OR AFFIDAVITS SHALL BE PRIMA FACIE EVIDENCE.

MORTGAGOR CONFIRMS TO THE LENDER THAT (I)  MORTGAGOR IS A BUSINESS ENTITY AND THAT ITS PRINCIPALS ARE KNOWLEDGEABLE IN BUSINESS MATTERS; (II) THE TERMS OF THIS MORTGAGE, INCLUDING THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT, HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT; AND (III) MORTGAGOR HAS FULLY REVIEWED THE AFORESAID WARRANT OF

Case ID: 240100380

ATTORNEY TO CONFESS JUDGMENT WITH ITS OWN COUNSEL AND IS KNOWINGLY AND VOLUNTARILY WAIVING CERTAIN RIGHTS IT WOULD OTHERWISE POSSESS, INCLUDING BUT NOT LIMITED TO, THE RIGHT TO ANY NOTICE OF A HEARING PRIOR TO THE ENTRY OF JUDGMENT BY THE LENDER PURSUANT TO THE FOREGOING WARRANT.

4.4 Advances. If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.5 Cumulative Rights and Remedies. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that the Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

4.6 Mortgagor's Waiver of Certain Rights. To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5. MISCELLANEOUS

5.1 Costs and Expenses. To the extent permitted by applicable law, the Mortgagor shall pay to the Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with the Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

5.2 Indemnification Regarding Leases. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold the Lender and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

Case ID: 240100380

53329804 Page 13 of 17 02/26/2018 09:38 AM

5.3 Indemnification Regarding Hazardous Substances. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to the Lender including repayment of all Obligations.

5.4 Indemnitee's Expenses. If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

5.5 Waivers. The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of the Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Lender's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under any such other agreement or transaction) but all the Lender's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

5.6 Waiver of Homestead. To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Title 42, Section 8123, of the Pennsylvania Consolidated Statutes Annotated.

5.7 Joint and Several. If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

5.8 Severability. If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

Case ID: 240100380

5.9 Complete Agreement. This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

5.10 Binding Effect of Agreement. This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Lender; and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

5.11 Notices. Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

5.12 Governing Law. This Mortgage shall be governed by the laws of the Commonwealth of Pennsylvania.

5.13 Reproductions. This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.14 Jurisdiction and Venue. The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Pennsylvania, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to the Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

5.15 JURY WAIVER. THE MORTGAGOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE MORTGAGOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Case ID: 240100380

5.16 Purchase Money Mortgage. To the extent all or any part of the Obligations secured by this Mortgage were used in whole or in part to fund the acquisition of all or any part of the Property, this Mortgage shall be a "purchase money mortgage" within the meaning of 42 Pa. C.S.A. Sec. 8141 and shall be accorded the lien priority provided for therein.

EXECUTED under seal as of the date first above written.

Witness: Mortgagor:

____________________ [signature]
Kristy Benson, individually

The address of the within named Lender is:

30699 Russell Ranch Rd., Suite 295
Westlake Village, CA 91362

VELOCITY COMMERCIAL CAPITAL, LLC

By: [signature]
Name: Dimitrios Louis
Title: Manager

Case ID: 240100380

COMMONWEALTH OF PENNSYLVANIA :
SS.
COUNTY OF Philadelphia :

On this, the 26 day of January 2018, 20__, before me, a Notary Public, personally appeared Kristy Benson, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he/she acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DIMITRIOS LOURIS, Notary Public
Bensalem Township, Bucks County
My Commission Expires July 8, 2020

NOTARY PUBLIC
MY COMMISSION EXPIRES:

© 2018 Medici, a division of Wolters Kluwer Financial Services

Case ID: 240100380

**Fidelity National Title Insurance Company**

**SCHEDULE A**
*(continued)*

File No. **17-2742**

LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

BEING part of the same premises which Salvatore Franzini and Phyllis Franzini, his wife by Deed dated 4/12/1978 and recorded 4/17/1978 in Philadelphia County in Deed Book DCC 1632 page 447 conveyed unto Daniel Reganata and Victoria Reganata, his wife, in fee.

AND BEING the same premises which Daniel Reganata and Victoria Reganata, his wife by Deed dated 9/9/1998 and recorded 9/22/1998 in Philadelphia County in Deed Book JTD 800 page 506 conveyed unto Daniel Reganata and Victoria Reganata, his wife, in fee. (Subdivided) ($1 deed consideration)

And the Daniel Reganata departed this life on __/__/___, whereby the said title is now solely vested in Victoria Reganata, his wife.

Parcel #02-1-3551-00

Case ID: 240100380

# Exhibit D

Case ID: 240100380

**From:** **Paul Benson** pnb100@me.com
**Subject:** Need a refinance
**Date:** January 2, 2019 at 7:41 AM
**To:** Jack Meyers amcfunding@yahoo.com

---

Hey Jack,

Hope you had great holidays. I want to start the refinance on my most recent property at 1233 Wharton Street. The prepay penalty expires on 2/1/19 and I want to pull as much out of the property as possible. The whole building is residential now. I am hoping to use the cash out to pay off the soft money loan I got with Eric. I preferably would like to handle everything through a conforming 30 year fixed residential. And I prefer to work with you!

Get in touch with me. My commercial note says I need to give the current lender, “30 days written notice” before refinancing. I am sending certified letters out on Thursday. Can you make the refinance 30 days from Thursday?

My credit looks amazing, last years taxes look great and I can probably get a great tax year in for 2018 so I have back to back good years.

Graciously,
Paul Benson

# Exhibit E

Case ID: 240100380

Kristy Benson
1221 Titan Street
Philadelphia, PA 19147
Kristy Benson: 917-721-1421
Paul Benson: 267-228-4723
pnb100@me.com

January 1, 2019

Correspondence Department
Velocity Mortgage Capital
550 Pinetown Rd, Ste. 170
Fort Washington, PA 19034
818.338.9306 Direct Fax
pguensch@velocitymortgage.com

To Whom it May Concern:

This letter serves as your official written notification stating my plans to refinance my mortgage you currently hold on my property at 1233 Wharton Street, Philadelphia, PA 19147. This notice is being issued to conform to the requirements set forth in the original note which state, "This note may be prepaid in whole or in part upon thirty (30) days prior written notice to the Lender". There is a one year prepayment penalty in effect that will expire on February 1st, 2019, the ("Prepayment Charge Expiration Date"). I plan on my mortgage refinance to occur on the day following the PPP expiration day.

My loan is being serviced by Nationstar (dba Mr. Cooper) loan servicing and my loan number with them is:[REDACTED] I do not possess a loan number for Velocity mortgage.

Should you find that this written request does not suit your requirements for written notification, I will be faxing this letter to both you (Velocity) and Nationstar (Mr. Cooper), I will be emailing both institutions and I will be sending this letter via certified mail to both institutions also. I will be do so to guarantee that there is no confusion as to receipt of the notification or possibly disappearance altogether. You have understand.

Should you have any questions concerning this matter please contact myself or my husband, Paul Benson. His direct contact number is 267-228-4723. He is authorized to handle any and all communication concerning this matter and any other matter associated with the property: 1233 Wharton Street.

Graciously yours

Kristy Benson

# Exhibit F

Case ID: 240100380

Allied Mortgage Group

225 E. City Ave. Suite 102 · Bala Cynwyd, PA 19004

*Save this Loan Estimate to compare with your Closing Disclosure.*

# Loan Estimate

**DATE ISSUED** 1/14/2019
**APPLICANTS** PAUL N BENSON
1221 TITAN STREET
Philadelphia, PA 19147
**PROPERTY** 1233 WHARTON STREET
Philadelphia, PA 19147
**PROP. VALUE** $575,000

**LOAN TERM** 30 years
**PURPOSE** Refinance
**PRODUCT** Fixed Rate
**LOAN TYPE** [X] Conventional [ ] FHA [ ] VA [ ] ____________
**LOAN ID #** 200219015145
**RATE LOCK** [X] NO [ ] YES, until
*Before closing, your interest rate, points, and lender credits can change unless you lock the interest rate. All other estimated closing costs expire on* **1/29/2019** *at 5:00 PM EST*

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $395,000 | **NO** |
| **Interest Rate** | 5.25 % | **NO** |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $2,181.20 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| **Payment Calculation** | | **Years 1-30** |
|---|---|---|
| Principal & Interest | | $2,181.20 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow<br>*Amount can increase over time* | + | 533 |
| **Estimated Total Monthly Payment** | | $2,714 |

| | | This estimate includes | In escrow? |
|---|---|---|---|
| **Estimated Taxes, Insurance & Assessments**<br>*Amount can increase over time* | $533 Monthly | [X] Property Taxes | YES |
| | | [X] Homeowner's Insurance | YES |
| | | [ ] Other: | |

*See Section G on page 2 for escrowed property costs. You must pay for other property costs separately.*

## Costs at Closing

| | | |
|---|---|---|
| **Estimated Closing Costs** | $14,037 | Includes $14,162 in Loan Costs + $3,825 in Other Costs - $3,950 in Lender Credits. *See page 2 for details.* |
| **Estimated Cash to Close** | $80,963 | Includes Closing Costs. *See Calculating Cash to Close on page 2 for details.*<br>[ ] From [X] To Borrower |

Visit **www.consumerfinance.gov/mortgage-estimate** for general information and tools.

Case ID: 240100380

## Closing Cost Details

### Loan Costs

| A. Origination Charges | $10,863 |
|---|---|
| % of Loan Amount (Points) | |
| Origination Fee | $10,863 |

| B. Services You Cannot Shop For | $850 |
|---|---|
| Appraisal Fee | $750 |
| Credit Report | $100 |

| C. Services You Can Shop For | $2,449 |
|---|---|
| Title - Abstract Or Title Search Fee | $10 |
| Title - Courier Fee | $62 |
| Title - Lender's Title Insurance | $2,327 |
| Title - Notary Fee | $35 |
| Title - Wire Transfer Fee | $15 |

| D. TOTAL LOAN COSTS (A + B + C) | $14,162 |
|---|---|

### Other Costs

| E. Taxes and Other Government Fees | $227 |
|---|---|
| Recording Fees and Other Taxes | $227 |
| Transfer Taxes | |

| F. Prepaids | $398 |
|---|---|
| Homeowner's Insurance Premium ( months) | |
| Mortgage Insurance Premium ( months) | |
| Prepaid Interest ($56.82 per day for 7 days @5.25 %) | $398 |
| Property Taxes ( months) | |

| G. Initial Escrow Payment at Closing | | $3,200 |
|---|---|---|
| Homeowner's Insurance | $82.00 per month for 6 mo. | $492 |
| Mortgage Insurance | per month for mo. | |
| Property Taxes | $451.31 per month for 6 mo. | $2,708 |

| H. Other | $0 |
|---|---|

| I. TOTAL OTHER COSTS (E + F + G + H) | $3,825 |
|---|---|

| J. TOTAL CLOSING COSTS | $14,037 |
|---|---|
| D + I | $17,987 |
| Lender Credits | -$3,950 |

### Calculating Cash to Close

| | |
|---|---|
| Loan Amount | $395,000 |
| Total Closing Costs (J) | -$14,037 |
| Estimated Total Payoffs and Payments | -$300,000 |
| **Estimated Cash to Close** ☐ From ☒ To Borrower | $80,963 |
| Estimated Closing Costs Financed (Paid from your Loan Amount) | $0 |

Case ID: 240100380



## Additional Information About This Loan

| | |
|---|---|
| **LENDER** | Allied Mortgage Group |
| **NMLS/___ LICENSE ID** | 1067 |
| **LOAN OFFICER** | |
| **NMLS/___ LICENSE ID** | |
| **EMAIL** | |
| **PHONE** | 610-668-2745 |

| | |
|---|---|
| **MORTGAGE BROKER** | AMC Funding Corporation |
| **NMLS/___ LICENSE ID** | 17843 |
| **LOAN OFFICER** | Jack Meyers |
| **NMLS/___ LICENSE ID** | 137726 |
| **EMAIL** | amcfunding@yahoo.com |
| **PHONE** | 215-633-9836 |

| Comparisons | Use these measures to compare this loan with other loans. |
|---|---|
| **In 5 Years** | $145,431 Total you will have paid in principal, interest, mortgage insurance, and loan costs.<br>$31,009 Principal you will have paid off. |
| **Annual Percentage Rate (APR)** | 5.513 % Your costs over the loan term expressed as a rate. This is not your interest rate. |
| **Total Interest Percentage (TIP)** | 98.895 % The total amount of interest that you will pay over the loan term as a percentage of your loan amount. |

### Other Considerations

| | |
|---|---|
| **Appraisal** | We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if your loan does not close. You can pay for an additional appraisal for your own use at your own cost. |
| **Assumption** | If you sell or transfer this property to another person, we<br>☐ will allow, under certain conditions, this person to assume this loan on the original terms.<br>☒ will not allow assumption of this loan on the original terms. |
| **Homeowner's Insurance** | This loan requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. |
| **Late Payment** | If your payment is more than *15* days late, we will charge a late fee of *5% of the principal and interest overdue.* |
| **Liability after Foreclosure** | Taking this loan could end any state law protection you may currently have against liability for unpaid debt if your lender forecloses on your home. If you lose this protection, you may have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information. |
| **Refinance** | Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan. |
| **Servicing** | We intend<br>☐ to service your loan. If so, you will make your payments to us.<br>☒ to transfer servicing of your loan. |

### Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

PAUL N BENSON      Date

Case ID: 240100380

AMC FUNDING CORPORATION, LIC#23805, NMLS# 178431 Originator: JACK MEYERS, LIC# 29370, NMLS# 137726 Case 2:24-cv-03467-JDW Document 38-1 Filed 10/18/24 Page 160 of 232

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☑ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property .e, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

.is is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

rower ____________ Co-Borrower ____________

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| rtgage plied for: ☐ VA ☐ FHA ☑ Conventional ☐ USDA/Rural Housing Service ☐ Other (explain): | Agency Case Number | Lender Case Number: Unassigned |
|---|---|---|

| nount | Interest Rate | No. of Months | Amortization Type: |
|---|---|---|---|
| 336,000 | 5.375 % | 360/360 | ☑ Fixed Rate ☐ GPM ☐ Other (explain): ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

ıbject Property Address (street, city, state, & ZIP): :33 WHARTON STREET, Philadelphia, PA 19147 County: Philadelphia

No. of Units: 3

gal Description of Subject Property (attach description if necessary): ·RIPLEX

Year Built:

ırpose of Loan ☐ Purchase ☐ Construction ☐ Other (explain): ☑ Refinance ☐ Construction-Permanent

Property will be: ☐ Primary Residence ☐ Secondary Residence ☑ Investment

*ımplete this line if construction or construction-permanent loan.*

| ar Lot quired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

*ımplete this line if this is a refinance loan.*

| ar quired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 18 | $ 425,000 | $ 300,000 | Cash-Out/Other | Cost: $ |

le will be held in what Name(s): ıUL N BENSON, RISTY BENSON

Manner in which Title will be held: TWROS

Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date)

urce of Down Payment, Settlement Charges and/or Subordinate Financing (explain):

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| rrower's Name (include Jr. or Sr. if applicable): ıUL N BENSON | Co-Borrower's Name (include Jr. or Sr. if applicable): KRISTY L BENSON |
| cial Security Number: [redacted] | Social Security Number: [redacted] |
| Home Phone (incl. area code): 267-228-4723 | Home Phone (incl. area code): 267-228-4723 |
| DOB (mm/dd/yyyy): [redacted] | DOB (mm/dd/yyyy): [redacted] |
| Yrs. School: 16 | Yrs. School: 16 |
| Married (includes registered domestic partners) / Unmarried (includes single, divorced, widowed) / Separated | ☑ Married (includes registered domestic partners) ☐ Unmarried (includes single, divorced, widowed) ☐ Separated |
| Dependents (not listed by Co-Borrower) No. 2 Ages | Dependents (not listed by Borrower) No. 2 Ages |
| ∍sent Address (street, city, state, ZIP/ country) ☑ Own ☐ Rent 5 No. Yrs.: 21 TITAN STREET, ıiladelphia, PA 19147 / United States | Present Address (street, city, state, ZIP/ country) ☑ Own ☐ Rent 5 No. Yrs.: 1221 TITAN STREET, PHILADELPHIA, PA 19147 / United States |
| ıiling Address, if different from Present Address | Mailing Address, if different from Present Address |

*esiding at present address for less than two years, complete the following:*

| rmer Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| rmer Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |

orm Residential Loan Application
die Mac Form 65 7/05 (rev. 6/09)

Borrower ______
Co-Borrower ______

Page 1 of 6

Fannie Mae Form 1003 7/05 (rev. 6/09)
Calyx Form - Loanapp1_jointCredit.frm (01/2017

Case ID: 240100380

704102 000010851 09SP25 00064047

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer<br>BENSON PROPERTY MANAGMENT<br>1221 TITAN ST<br>Philadelphia, PA 19147 | ☑ Self Employed | Yrs. on this job<br>20 yr(s)<br>Yrs. employed in this line of work/profession | Name & Address of Employer<br>AIR BNB | ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |
| Position/Title/Type of Business<br>NNER | | Business Phone (incl. area code)<br>267-228-4723 | Position/Title/Type of Business | | Business Phone (incl. area code) |

*employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| se Empl. Income* | $ | $ 125.00 | $ 125.00 | Rent | $ | |
| ertime | | | | First Mortgage (P&I) | 2,949.40 | $ 1,881.50 |
| nuses | | | | Other Financing (P&I) | | |
| mmissions | | | | Hazard Insurance | | 113.47 |
| idends/Interest | | | | Real Estate Taxes | | 451.31 |
| t Rental Income | 7,294.00 | | 7,294.00 | Mortgage Insurance | | |
| ner (before completing, the notice in "describe er income," below) | 3,324.00 | | 3,324.00 | Homeowner Assn. Dues | | |
| | 1,668.71 | | 1,668.71 | Other: | | |
| tal | $ 12,286.71 | $ 125.00 | $ 12,411.71 | Total | $ 2,949.40 | $ 2,446.28 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

scribe Other Income *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| C | VA Benefits (Non-education) | $ 1,668.71 |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [✓] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: | $ |
| *...t checking and savings accounts below* | |
| ...me and address of Bank, S&L, or Credit Union: ...ELLS FARGO | |
| ...ct. no. 7817 | $ 15,736.24 |
| ...me and address of Bank, S&L, or Credit Union: ...UMARK | |
| ...ct. no. 8070-S0001 | $ 2,673.79 |
| ...me and address of Bank, S&L, or Credit Union: ...UMARK | |
| ...ct. no. 8070-S0004 | $ 4,083.06 |
| ...cks & Bonds (Company ...ne/number description) | $ |
| ...e insurance net cash value | $ |
| ...ce amount: $ | |
| **...btotal Liquid Assets** | $ 34,137.29 |
| ...al estate owned (enter market value ...n schedule of real estate owned) | $ 2,306,000.00 |
| ...sted interest in retirement fund | $ |
| ...t worth of business(es) owned ...ach financial statement) | $ |
| ...omobiles owned (make and year) | $ |
| ...er Assets (itemize) | $ |
| **Total Assets a.** | $ 2,340,137.29 |

**Liabilities and Pledged Assets.** List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company: SELENE FINANCE LP; Acct. no. 30249742 | $ Payment/Months (1,763.00) /348 | $ 323,951 |
| Name and address of Company: FREEDOM MORTGAGE CORP, 10500 KINCAID DR, FISHERS, IN 46037; Acct. no. 52987294 | $ Payment/Months (1,908.00) /280 | $ 264,939 |
| Name and address of Company: WELLS FARGO HM MORTGAG, 7495 NEW HORIZON WAY, FREDERICK, MD 21703; Acct. no. 9360361408669 | $ Payment/Months (629.00) /294 | $ 86,587 |
| Name and address of Company: OCWEN, 12650 INGENUITY DR, ORLANDO, FL 32826; Acct. no. 7131438405 | $ Payment/Months (524.00) /199 | $ 55,743 |
| Name and address of Company: DISCOVER FIN SVCS LLC, PO BOX 15316, WILMINGTON, DE 19850; Acct. no. 601100****** | $ Payment/Months 280.00 | $ 13,955 |
| Name and address of Company: USAA SAVINGS BANK, PO BOX 47504, SAN ANTONIO, TX 78265; Acct. no. 427082******5551 | $ Payment/Months 305.00 | $ 10,489 |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job-Related Expense (child care, union dues, etc.) | $ | |
| **Total Monthly Payments** | $ 1,163.00 | |
| Net Worth (a minus b) => $ 1,546,023.29 | **Total Liabilities b.** | $ 794,114.00 |

...edule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| ...perty Address (enter S if sold, PS if pending ...e or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| ...33 WHARTON STREET ...iladelphia, PA 19147 | R | SFR | $ 550,000 | $ 390,000 | $ 3,200 | $ 1,245 | $ | $ 1,155 |
| ...33-3335 FRANKFOR AVENUE ...ILADELPHIA, PA 19134 | R | MULTI | 175,000 | 55,924 | 2,295 | 524 | 267 | 931 |
| ...06 EAST ONTARIO STREET ...ILADELPHIA, PA 19134 | R | SFR | 55,000 | | 1,200 | | | 900 |
| ...ee page 5 for the additional properties | | Totals | $2,306,000.00 | $ 1,122,651.00 | $ 17,945.00 | $ 6,069.30 | $ 704.07 | $ 8,449.00 |

...t any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| ...lternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

**VII. DETAILS OF TRANSACTION**

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 298,000.00 |
| e. Estimated prepaid items | 778.91 |
| f. Estimated closing costs | 12,987.55 |
| g. PMI, MIP, Funding Fee | |
| Discount (if Borrower will pay) | |
| Total costs (add items a through h) | 311,766.46 |
| Subordinate financing | |
| Borrower's closing costs paid by Seller | |
| Other Credits (explain) ender Credit | 5,460.00 |
| Loan amount (exclude PMI, MIP, Funding Fee financed) | 336,000.00 |
| PMI, MIP, Funding Fee financed | |
| Loan amount (add m & n) | 336,000.00 |
| Cash from/to Borrower (subtract j, k, l & o from i) | -29,693.54 |

**VIII. DECLARATIONS**

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☑ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☑ |
| l. **Do you intend to occupy the property as your primary residence?** If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☑ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

**IX. ACKNOWLEDGEMENT AND AGREEMENT**

1 of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and es and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent mis- esentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any epresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States e, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the erty will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the erty will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether ot the loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the 1; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors, or assigns may, in addition to any other rights and remedies that it may relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan unt may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representa- or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application aining a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

iowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information ained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application consumer reporting agency.

**it to Receive Copy of Appraisal** I/We have the right to a copy of the appraisal report used in connection with this application for credit. To obtain a copy, I/we must send litor a written request at the mailing address Creditor has provided.Creditor must hear from us no later than 90 days after Creditor notifies me/us about the action taken is application, or I/we withdraw this application.
u would like a copy of the appraisal report, contact: AMC FUNDING CORPORATION 3070 BRISTOL PIKE SUITE 228 Bensalem, PA 19020

| rrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| | | X | |

**X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit rtunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may liscriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual rvation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above rial to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

RROWER ☐ I do not wish to furnish this information
nicity: ☐ Hispanic or Latino ☑ Not Hispanic or Latino
ce: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☑ White
c: ☐ Female ☑ Male

CO-BORROWER ☐ I do not wish to furnish this information
Ethnicity: ☐ Hispanic or Latino ☑ Not Hispanic or Latino
Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White
Sex: ☑ Female ☐ Male

**be Completed by Loan Originator:**
information was provided:
In a face-to-face interview
In a telephone interview
☐ By the applicant and submitted by fax or mail
☐ By the applicant and submitted via e-mail or the internet

| | | |
|---|---|---|
| 1 Originator's Signature | | Date 02/08/2019 |
| 1 Originator's Name (print or type) :K MEYERS | Loan Originator Identifier 137726 | Loan Originator's Phone Number (including area code) 215-633-9836/AMCFUNDING@YAHOO.COM |
| 1 Origination Company's Name C FUNDING CORPORATION 215-633-9836 (F) 215-633-9775 | Loan Origination Company Identifier 17843 | Loan Origination Company's Address 3070 BRISTOL PIKE SUITE 228 Bensalem, PA 19020 |

# Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: PAUL N BENSON | Agency Case Number: |
|---|---|---|
| | Co-Borrower: KRISTY L BENSON | Lender Case Number: Unassigned |

## VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| ne and address of Bank, S&L, or Credit Union<br>TIZENS BANK | | Name and address of Company<br>AMEX<br>TAPE - P O BOX 7871<br>FORT LAUDERDALE, FL 33329 | $ Payt./Mos. | $ |
| t. no. 2970 | $ 1,573.06 | Acct. No. -34999******06353 | (254) | (10,193) |
| ne and address of Bank, S&L, or Credit Union<br>AY PAL | | Name and address of Company<br>SEARS/CBNA<br>13200 SMITH RD<br>CLEVELAND, OH 44130 | $ Payt./Mos. | $ |
| t. no. | $ 5,977.74 | Acct. No. 512107****** | 153 | 10,149 |
| ne and address of Bank, S&L, or Credit Union<br>TIZENS BANK BUSINESS CKG | | Name and address of Company<br>BARCLAYS BANK DELAWARE<br>1007 N ORANGE ST<br>WILMINGTON, DE 19801 | $ Payt./Mos. | $ |
| t. no. 2682 | $ 4,093.40 | Acct. No. 000321***** | 90 | 9,078 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>DISCOVER FIN SVCS LLC<br>PO BOX 15316<br>WILMINGTON, DE 19850 | $ Payt./Mos. | $ |
| t. no. | $ | Acct. No. 601129****** | 122 | 6,074 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>NAVY FEDERAL CR UNION<br>PO BOX 3700<br>MERRIFIELD, VA 22119 | $ Payt./Mos. | $ |
| t. no. | $ | Acct. No. 403216******2141 | 60 | 3,000 |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CAPITAL ONE BANK USA N<br>PO BOX 85520<br>RICHMOND, VA 23285 | $ Payt./Mos. | $ |
| . no. | $ | Acct. No. 480213****** | (72) | (2,541) |
| ne and address of Bank, S&L, or Credit Union | | Name and address of Company<br>SEARS/CBNA | $ Payt./Mos. | $ |
| . no. | $ | Acct. No. 512107****** | 153/67 | 10,149 |

: fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the /e facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| ower's Signature: | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|

# Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: PAUL N BENSON | Agency Case Number: |
|---|---|---|
| | Co-Borrower: KRISTY L BENSON | Lender Case Number: Unassigned |

## VI. ASSETS AND LIABILITIES

chedule of Real Estate Owned

| operty Address (enter S if sold, PS if pending sale R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 30 ELLSWORTH STREET HILADELPHIA, PA 19147 | R | SFR | 625,000 | 265,458 | 3,500 | 1,908 | | 717 |
| DOUGHERTY BLVD. UNIT N4 LEN MILLS, PA 19342 | R | SFR | 105,000 | 86,760 | 2,000 | 629 | | 871 |
| 27 FRANKFORD AVENUE HILADELPHIA, PA 19134 | R | MULTI | 90,000 | 0 | 1,850 | | 222 | 1,166 |
| 29 FRANKFORD AVENUE HILADELPHIA, PA 19134 | R | SFR | 95,000 | 0 | 1,850 | | 117 | 1,270 |
| 23 FRANKFOR AVENUE HILADELPHIA, PA 19134 | R | SFR | 81,000 | 0 | 750 | | 20 | 542 |
| 25 FRANKFORD AVE HILADELPHIA, PA 19134 | R | MULTI | 80,000 | 0 | 1,300 | | 78 | 897 |
| 21 TITAN STREET HILADELPHIA, PA 19147 | | SFR | 450,000 | 324,509 | | 1,763 | | |

e fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the ve facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| rower's Signature: | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|



When recorded, return to:
Allied Mortgage Group, Inc.
ATTN: Recorded Documents
225 E. City Ave. Suite 102
Bala Cynwyd, PA 19004
877-448-2745

This document was prepared by:
Allied Mortgage Group, Inc.
225 E. City Ave. Suite 102
Bala Cynwyd, PA 19004
610-668-2745

Certified Copy
True and Correct

APN #: 02-1-3551-00

Title Order No.: 18-2961

LOAN #: 200219015145

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 1000907-1409521184-8
MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **February 22, 2019,** together with all Riders to this document.

(B) "Borrower" is **PAUL N. BENSON AND KRISTY BENSON.**

Borrower is the mortgagor under this Security Instrument.

Case ID: 240100380

LOAN #: 200219015145

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
(D) "Lender" is **Allied Mortgage Group, Inc..**

Lender is **a Pennsylvania Corporation,** organized and existing under the laws of **Pennsylvania.** Lender's address is **225 E. City Ave. Suite 102, Bala Cynwyd, PA 19004.**

(E) "Note" means the promissory note signed by Borrower and dated **February 22, 2019.** The Note states that Borrower owes Lender **THREE HUNDRED THIRTY SIX THOUSAND AND NO/100************************************************************* Dollars (U.S. **$336,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2049.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☒ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 2 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 3 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

assigns of MERS the following described property located in the County [Type of Recording Jurisdiction]
of **Philadelphia**
[Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 02-1-3551-00**

which currently has the address of **1233 WHARTON STREET, PHILADELPHIA,**
[Street] [City]
Pennsylvania **19147** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 5 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 6 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 7 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage

Case ID: 240100380

LOAN #: 200219015145

clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 9 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 10 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer

LOAN #: 200219015145

selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

LOAN #: 200219015145

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this

LOAN #: 200219015145

Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 14 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case ID: 240100380

LOAN #: 200219015145

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 16 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that

Case ID: 240100380

time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

LOAN #: 200219015145

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc. Page 19 of 23 PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

Case ID: 240100380

LOAN #: 200219015145

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

PAUL N BENSON 2/22/19 DATE (Seal)

KRISTY BENSON 2/22/19 DATE (Seal)

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 21 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

State of Pennsylvania
County of Philadelphia

This record was acknowledged before me on this, the 22 day of February 2019, by PAUL N BENSON AND KRISTY BENSON.

Signature of Notarial Officer
(STAMP)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DIMITRIOS LOURIS, Notary Public
Bensalem Township, Bucks County
My Commission Expires July 8, 2020

Title of Officer notary

My commission expires ____________

Lender: Allied Mortgage Group, Inc.
NMLS ID: 1067
Broker: AMC Funding Corporation
NMLS ID: 17843
Loan Originator: Jack Meyers
NMLS ID: 137726

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 22 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



LOAN #: 200219015145

Certificate of Residence

I, Dimitrios Louris, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this 22 day of February 2019

Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.
Page 23 of 23
PAEDEDL 0416
PAEDEDL (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

Certified Copy
True and Correct

LOAN #: 200219015145
MIN: 1000907-1409521184-8

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 22nd day of February, 2019 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Allied Mortgage Group, Inc., a Pennsylvania Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1233 WHARTON STREET
PHILADELPHIA, PA 19147

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

LOAN #: 200219015145

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170 1/01
Ellie Mae, Inc.                                          Page 2 of 3                                          F3170RLU  0307
                                                                                                              F3170RLU (CLS)
                                                                                                02/22/2019 12:21 PM PST



Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

PAUL N BENSON 2/22/19 DATE (Seal)

KRISTY BENSON 2/22/19 DATE (Seal)

Case ID: 240100380



LOAN #: 200219015145
MIN: 1000907-1409521184-8

# NOTE

February 22, 2019
[Date]

Bala Cynwyd,
[City]

Pennsylvania
[State]

1233 WHARTON STREET, PHILADELPHIA, PA 19147
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$336,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Allied Mortgage Group, Inc., a Pennsylvania Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2049,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **225 E. City Ave. Suite 102
Bala Cynwyd, PA 19004**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$1,881.50.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 1 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



LOAN #: 200219015145

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 2 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047

LOAN #: 200219015145

(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAUL N BENSON (Seal)

KRISTY BENSON (Seal)

**Lender: Allied Mortgage Group, Inc.**
**NMLS ID: 1067**
**Broker: AMC Funding Corporation**
**NMLS ID: 17843**
**Loan Originator: Jack Meyers**
**NMLS ID: 137726**

*[Sign Original Only]*

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16
Ellie Mae, Inc.
Page 3 of 3
F3200PAN 0416
F3200NOT (CLS)
02/22/2019 12:21 PM PST

Case ID: 240100380

704102 000010851 09SP25 00064047



ALLIED
MORTGAGE
GROUP

225 E. City Avenue
Suite 102
Bala Cynwyd, PA 19004
Phone: 610-668-2745
Fax: 610-668-8142

**LOAN # 200219015145**

**ALLONGE**

**ALLONGE TO THAT CERTAIN NOTE DATED:** 02/22/2019

**IN THE AMOUNT OF:** 336,000.00

**FROM:** PAUL N BENSON , KRISTY BENSON

**TO:** Allied Mortgage Group Inc. A Pennsylvania Corporation

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:** Allied Mortgage Group Inc. A Pennsylvania Corporation

**BY:**

*Jennifer McClain, Closing/Post-Closing Manager*

**PROPERTY ADDRESS:** 1233 WHARTON STREET, PHILADELPHIA, PA 19147

Case ID: 240100380

704102 000010851 09SP25 00064047

# Exhibit G

Case ID: 240100380



CUSTOMER KRISTY BENSON
LOAN NUMBER [redacted]
PROPERTY ADDRESS 1233 WHARTON STREET, PHILADELPHIA, PA 19147
PAYMENT ACTIVITY 03/04/2018 to 03/04/2020

## POSTED PAYMENTS

| | DATE | AMOUNT | PRINCIPAL | INTEREST | ESCROW | OTHER | REMAINING BALANCE |
|---|---|---|---|---|---|---|---|
| **Principal Payoff** | 03/05/2019 | $298,286.61 | $298,286.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Escrow Deposit** | 03/05/2019 | $2,269.95 | $0.00 | $0.00 | $2,269.95 | $0.00 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $964.80 | $0.00 | $0.00 | $0.00 | $964.80 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $964.80 | $0.00 | $0.00 | $0.00 | $964.80 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Unapplied Funds** | 02/27/2019 | $99,999.99 | $0.00 | $0.00 | $0.00 | $99,999.99 | $298,286.61 |
| **Monthly Payment** | 02/01/2019 | $2,936.09 | $149.30 | $2,454.64 | $332.15 | $0.00 | $298,286.61 |
| **Monthly Payment** | 01/02/2019 | $2,936.09 | $148.09 | $2,455.85 | $332.15 | $0.00 | $298,435.91 |
| **Monthly Payment** | 12/03/2018 | $2,936.09 | $146.88 | $2,457.06 | $332.15 | $0.00 | $298,584.00 |
| **Monthly Payment** | 11/01/2018 | $2,936.09 | $145.68 | $2,458.26 | $332.15 | $0.00 | $298,730.88 |
| **Monthly Payment** | 10/02/2018 | $2,936.09 | $144.49 | $2,459.45 | $332.15 | $0.00 | $298,876.56 |
| **Monthly Payment** | 09/04/2018 | $2,936.09 | $143.31 | $2,460.63 | $332.15 | $0.00 | $299,021.05 |
| **Monthly Payment** | 08/09/2018 | $2,936.09 | $142.14 | $2,461.80 | $332.15 | $0.00 | $299,164.36 |
| **Monthly Payment** | 06/29/2018 | $2,936.09 | $140.98 | $2,462.96 | $332.15 | $0.00 | $299,306.50 |
| **Monthly Payment** | 06/01/2018 | $2,936.09 | $139.83 | $2,464.11 | $332.15 | $0.00 | $299,447.48 |
| **Escrow Adjustment** | 05/21/2018 | ($368.19) | $0.00 | $0.00 | ($368.19) | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 05/21/2018 | ($368.19) | $0.00 | $0.00 | ($368.19) | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 05/16/2018 | $368.19 | $0.00 | $0.00 | $368.19 | $0.00 | $299,587.31 |
| **Monthly Payment** | 05/01/2018 | $2,936.09 | $138.69 | $2,465.25 | $332.15 | $0.00 | $299,587.31 |
| **Escrow Adjustment** | 04/13/2018 | $1,554.06 | $0.00 | $0.00 | $1,554.06 | $0.00 | $299,726.00 |
| **Escrow Adjustment** | 04/13/2018 | ($1,554.06) | $0.00 | $0.00 | ($1,554.06) | $0.00 | $299,726.00 |
| **Monthly Payment** | 03/30/2018 | $2,936.09 | $137.56 | $2,466.38 | $332.15 | $0.00 | $299,726.00 |
| **Monthly Payment** | 03/20/2018 | $2,936.09 | $136.44 | $2,467.50 | $332.15 | $0.00 | $299,863.56 |
| **Escrow Adjustment** | 03/09/2018 | $889.76 | $0.00 | $0.00 | $889.76 | $0.00 | $300,000.00 |
| **Escrow Adjustment** | 03/09/2018 | ($889.76) | $0.00 | $0.00 | ($889.76) | $0.00 | $300,000.00 |

© 2020. Nationstar Mortgage LLC d/b/a Mr. Cooper.

# Exhibit H

Case ID: 240100380



MERS System

ENVIRONMENT www.mersonline.org

ORG ID 1000383

## MIN Summary

### Summary

| | | | |
|---|---|---|---|
| MIN | 1000907-1409521184-8 | MIN Status | **Deactivation-Assigned from MERS for Default or Bankruptcy** |
| Address | 1233 WHARTON STREET<br>PHILADELPHIA, PA 19147 | | |
| MOM Indicator | MOM | Lien Type | First Lien |
| Reg Date | 02/26/2019 | | |
| County/Place | Philadelphia County | Owner Occupied | No |
| Primary Borrower | BENSON, PAUL | SSN | XXX-XX-XXXX |
| Co-Borrower | BENSON, KRISTY | SSN | XXX-XX-XXXX |
| Note Amount | $336,000.00 | Note Date | 02/22/2019 |
| Pool Number | 34083510 | Investor Loan Number | 713615303 |
| Securitization | N/A | | |
| Servicer | 1009836 - AmeriHome Mortgage Company, LLC | Subservicer | 1000383 - Cenlar FSB |



MERS® System

ENVIRONMENT www.mersonline.org ORG ID 1000383

## Milestones For 1000907-1409521184-8

| Description | Date | Initiating Organization / User | | Milestone Information |
|---|---|---|---|---|
| Deactivate-Assigned from MERS for Default or Bankruptcy | 02/16/2023 | 1000383<br>Batch | Cenlar FSB | MIN Status: Deactivation-Assigned from MERS for Default or Bankruptcy |
| Transfer Beneficial Rights - Option 1 | 05/07/2019 | 1000106<br>Batch User ID | Federal Home Loan Mortgage Corporation | MIN Status: Active (Registered)<br>New Investor: 1000106 Federal Home Loan Mortgage Corporation<br>OldInvestor: 1009836 AmeriHome Mortgage Company, LLC<br>Batch Number: 19311248<br>Transfer Date: 05/06/2019 |
| Release Interim Funder Interests | 05/02/2019 | 1006404<br>Batch | Wells Fargo Bank NA-Mortgage Banker Finance Group | MIN Status: Active (Registered)<br>OldInterim Funder: 1006404 Wells Fargo Bank NA-Mortgage Banker Finance Group |
| MIN Information Update | 03/12/2019 | 1009836<br>Batch | AmeriHome Mortgage Company, LLC | MIN Status: Active (Registered)<br>New Subservicer: 1000383 Cenlar FSB<br>Old Subservicer: None |
| MIN Information Update | 03/11/2019 | 1009836<br>Batch | AmeriHome Mortgage Company, LLC | MIN Status: Active (Registered)<br>New Interim Funder: 1006404 Wells Fargo Bank NA-Mortgage Banker Finance Group |
| Transfer of Flow TOS/TOB Servicing Rights | 03/09/2019 | 1000907<br>Kathy Amato | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>New Investor: 1009836 AmeriHome Mortgage Company, LLC<br>OldInvestor: 1000907 Allied Mortgage Group, Inc. |

Case ID: 240100380



7-836-BXB48-0000001-001-1-22-0-000-000-000-CP001

| | | | | Batch Number: 19053728<br>Transfer Date: 03/08/2019 |
|---|---|---|---|---|
| Transfer of Flow TOS/TOB Servicing Rights | 03/09/2019 | 1000907<br>Kathy Amato | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>New Servicer: 1009836 AmeriHome Mortgage Company, LLC<br>OldServicer: 1000907 Allied Mortgage Group, Inc.<br>Batch Number: 19053728<br>Sale Date: 03/08/2019<br>Transfer Date: 03/08/2019 |
| Registration | 02/26/2019 | 1000907<br>XML | Allied Mortgage Group, Inc. | MIN Status: Active (Registered)<br>Servicer: 1000907 Allied Mortgage Group, Inc. |

© 2023 MERSCORP Holdings, Inc. All rights reserved.

# Exhibit I

Case ID: 240100380

AmeriHome mortgage

March 27, 2019

PAUL N BENSON
KRISTY BENSON
1221 TITAN STREET
PHILADELPHIA PA 19147

Loan Number: 0116852146

## Notification of Assignment, Sale or Transfer of Your Mortgage Loan

The ownership of your first lien mortgage loan on 1233 WHARTON STREET, PHILADELPHIA, PA 19147 with an original principal balance $336,000.00 was transferred to AmeriHome Mortgage Co. LLC effective 03/07/2019.

The assignment, sale or transfer of the mortgage loan noted above does not affect any term or condition of your Mortgage, Deed of Trust or Note.

Additionally, the transfer(s) of ownership of your mortgage loan has not publicly recorded in the office of public land records or the recorder of deeds office for the county or local jurisdiction where the property is located. Please retain a copy of this notice for your records.

You should also know that if you send payments to ALLIED MORTGAGE GROUP, INC. after 04/01/2019 they may be returned to you. All correspondence and inquiries concerning your mortgage loan should continue to be addressed to AmeriHome Mortgage Company, LLC.

**AmeriHome Mortgage Company, LLC**
Customer Service (Loan Administration): Phone 1.855.501.3035 Hours: 8:30 am - 10:00 pm, Monday through Friday and 8:30 am - 5:00 pm Saturdays, ET.

| Correspondence Address: | Payment Address: |
|---|---|
| AmeriHome Mortgage Company, LLC<br>P. O. Box 77404 Ewing, NJ 08628 | AmeriHome Mortgage Company, LLC<br>P. O. Box 11733 Newark, NJ 07101-4733 |

We are required by law to provide you this notice, however should you have any questions regarding this notice, please contact AmeriHome at: **1.855.501.3035.**

**Disclosure Regarding Partial Payments**
If you make a payment that is less than the full amount due for your regularly scheduled monthly payment ("partial payment"), you may be in default under your loan documents. Do not send partial payments as they may be held in a separate account until you pay the rest of the payment, and then apply the full payment to your loan. If your loan is sold again, the new lender may have a different policy. If you have specific questions regarding partial payments, please contact AmeriHome at the contact information above.

CB404

Case ID: 240100380

975055 000002603 09SP02 00064001

# Exhibit J

Case ID: 240100380

**From:** amerihome@loanadministration.com
**Subject:** Welcome to AmeriHome
**Date:** March 27, 2019 at 10:01 AM
**To:** pnb100@me.com

# We'd like to welcome you to AmeriHome Mortgage Company.

AmeriHome is the new servicer of your mortgage loan. That means that AmeriHome is now collecting your monthly mortgage loan payments. Nothing else about your mortgage loan has changed. You'll also find this information in the welcome letter we have mailed to you.

WHAT THIS MEANS FOR YOU:

If you have set up electronic payments with your original lender, you will need to change it. Please call us at the toll-free number below to find out more.

We would also appreciate the opportunity to introduce ourselves and take a brief moment to share our various offerings available to you, including online account management, automatic bill pay, and customer service.

The convenience of receiving your monthly statements electronically is also available to you with our e-Docs feature. Simply contact us and let us know that you would prefer this option instead of paper bills, and we will be glad to implement this service for you. You can also visit our website at www.amerihome.loanadministration.com to sign up.

If you have any questions or thoughts about how we can better assist you, please give us a call at your convenience toll free at 855-501-3035.

We appreciate your business and are grateful for the opportunity to serve all of your mortgage needs.

AmeriHome
Customer Care
Phone: 855-501-3035
Hours: Monday- Friday 8:30 am - 10:00 pm (ET)
Saturday 8:30 am - 5:00 pm (ET)

**Please do not respond to this email. This mailbox is used for outgoing communications only.**
**Questions? Comments? Please email us at**
**amerihome@loanadministration.com**
**All inquiries will be responded to within 5 business days**

Or by mail to:

PO Box 77404 Ewing, NJ 08628

If you do not wish to receive further email notifications from us please click here to opt out

# Exhibit K

Case ID: 240100380

FILED

2019 APR -4 AM 10: 54

PA DEPARTMENT OF BANKING AND SECURITIES

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF BANKING AND SECURITIES**

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE**

**v.**

**AMERIHOME MORTGAGE COMPANY, LLC**

**DOCKET NO. 19 0044 (BNK-CAO)**

**CONSENT AGREEMENT AND ORDER**

The Commonwealth of Pennsylvania, acting through the Department of Banking and Securities ("Department"), Compliance Office ("Office"), has reviewed the business practices of AmeriHome Mortgage Company, LLC ("AmeriHome Mortgage"). Based on the results of its review, together with certain disclosures AmeriHome Mortgage has made to the Department, the Office believes that AmeriHome Mortgage operated in violation of the Mortgage Licensing Act (the "MLA"), 7 Pa.C.S. § 6101 *et seq*. The parties to the above captioned matter, in lieu of litigation, hereby stipulate that the following statements are true and correct in the settlement of the above-captioned matter, and intending to be legally bound, hereby agree to the terms of this Consent Agreement and Order ("Order").

**BACKGROUND**

1. The Department is the Commonwealth of Pennsylvania's administrative agency authorized and empowered to administer and enforce the MLA.

2. The Office is primarily responsible for administering and enforcing the MLA for the Department.

3. AmeriHome Mortgage's principal place of business is located at 1 Baxter Way, Suite 300, Thousand Oaks, CA 91362.

4. AmeriHome Mortgage is licensed as a mortgage lender, license #59125, under the MLA but is not licensed as a Mortgage Servicer.

5. AmeriHome Mortgage has applied for licensure as a Mortgage Servicer.

Unlicensed Period

6. Section 6111(a) of the MLA requires a person engaged in the mortgage loan business as a mortgage servicer to be licensed as a mortgage servicer. 7 Pa C S § 6111(a)

7. Act 81 of 2018, which included the requirement that a mortgage servicer be licensed, was signed into law on December 22, 2017

8. The Department began accepting applications for licensure for existing mortgage servicers beginning on April 1, 2018 and continued to accept applications through June 30, 2018

9. The mortgage servicer licensing requirement found in Section 6111(a) of the MLA became effective April 27, 2018.

10. The Department provided an administrative grace period allowing unlicensed persons until June 30, 2018 to apply for a license without penalty for unlicensed activity.

11. AmeriHome Mortgage filed its application for licensure as a mortgage servicer on February 5, 2019

12. The MLA defines a "Mortgage Servicer" as "A person who engages in the mortgage loan business by directly or indirectly servicing a mortgage loan." 7 Pa C.S § 6102.

13. AmeriHome Mortgage contracted servicing rights to third party servicers

14. By using third party servicers, AmeriHome Mortgage is indirectly conducting mortgage servicing.

15. AmeriHome Mortgage has been providing mortgage servicing to Pennsylvania consumers while not licensed to do so

16. AmeriHome Mortgage cooperated with the Department regarding the matters addressed in this Order.

Authority of the Department

17. The Department has the authority to issue orders as may be necessary for the proper conduct of the mortgage loan business by licensees and the enforcement of the MLA. 7 Pa. C.S. § 6138(a)(4).

18. The Department may fine a person that commits any action which would subject the licensee to suspension, revocation or nonrenewal under Section 6139 up to $10,000 per offense 7 Pa C S. § 6140(b).

**VIOLATION**

19. AmeriHome Mortgage violated the MLA when it engaged in the business of a mortgage servicer while not licensed as a mortgage servicer. 7 Pa. C.S. § 6111(a).

**RELIEF**

20. Fine. AmeriHome Mortgage agrees to pay a fine of eighty thousand dollars ($80,000) with the payment due within thirty (30) days of the Effective Date of the Order. The fine payment shall be made by ACH or wire transfer, or if ACH or wire transfer is unavailable by certified check, cashier's check, teller's check or money order made payable to the "Department of Banking and Securities" and shall be mailed, or delivered in person to the attention of: Department of Banking and Securities, Compliance Office, 17 N. Second Street, Suite 1300, Harrisburg, PA 17101-2290

21. Licensure. Within five (5) days of the Effective Date of this order, the Department will issue a Mortgage Servicer license to AmeriHome Mortgage

**FURTHER PROVISIONS**

22. Consent AmeriHome Mortgage hereby knowingly, willingly, voluntarily and irrevocably consents to the entry of this Order pursuant to the Department's order authority under the MLA and agrees that it understands all of the terms and conditions contained herein AmeriHome Mortgage, by voluntarily entering into this Order, waives any right to a hearing or appeal concerning the terms, conditions and/or penalties set forth in this Order.

23. Consumer's Rights. The Order shall not limit or impair a consumer's rights under the MLA.

24. Publication. The Department will publish this Order pursuant to its authority in Section 302.A.(5) of the Department of Banking and Securities Code. 71 P.S § 733-302.A.(5).

25 Entire Agreement. This Order contains the whole agreement between the parties. There are no

other terms, obligations, covenants, representations, statements, conditions, or otherwise, of any kinds whatsoever concerning this Order. This Order may be amended in writing by mutual agreement by the Office and AmeriHome Mortgage.

26. Binding Nature. The Department, AmeriHome Mortgage, and all officers, owners, directors, employees, heirs and assigns of AmeriHome Mortgage intend to be and are legally bound by the terms of this Order.

27. Counsel. This Order is subject to review by the Department's Legal Division This Order is entered into by the parties upon full opportunity for legal advice from legal counsel

28 Effectiveness AmeriHome Mortgage hereby stipulates and agrees that the Order shall become effective on the date that the Department's Legal Division dockets this Order ("Effective Date").

29 Other Enforcement Action.

a. The Department reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against AmeriHome Mortgage in the future regarding all matters not resolved by this Order.

b. AmeriHome Mortgage acknowledges and agrees that this Order is only binding upon the Department and not any other local, state or federal agency, department or office regarding matters within this Order.

30 Authorization. The parties below are authorized to execute this Order and legally bind their respective parties

31 Counterparts This Order may be executed in separate counterparts and by facsimile or electronic mail in portable document format "PDF."

32. Titles. The titles used to identify the paragraphs of this document are for the convenience of reference only and do not control the interpretation of this document.

**WHEREFORE**, in consideration of the foregoing, including the recital paragraphs, the Department

of Banking and Securities, Compliance Office, and AmeriHome Mortgage Company, LLC intending to be legally bound do hereby execute this Consent Agreement and Order.

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE**

Redacted

John Talalai, Administrator
Compliance Office
Department of Banking and Securities

Date: 4-1-2019

**FOR AMERIHOME MORTGAGE COMPANY, LLC**

Redacted

(Officer Signature)

Jerry Horan

(Print Officer Name)

EVP - Legal

(Title)

Date: 1 April 2019



# Exhibit L

Case ID: 240100380

# Required Documentation Checklist

In support of the MERS® System Membershp Application of your organization, you are required to submit supplemental documents, which vary primarily based upon your organization type.

Use this checklist to ensure you have the appropriate documentation available prior to completing your application. Examples of acceptable documents for each requirement are indicated by a green check. Only one document per category is required.

To ensure documents are able to be uploaded to the MERS® eApplication website, save each document individually as a PDF, DOC, or DOCX file.

## PRIVATE COMPANY

☐ **Verification of organization's legal name**

- ✓ Articles of Incorporation/Organization Name
- ✓ Certificate of Formation
- ✓ Certificate of Good standing from the state
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

☐ **Evidence of Insurance**

- ✓ Declaration Page from your organization's Errors and Omissions (E&O) Policy
- ✓ Fully bound Errors & Omissions Insurance Policy
- ✓ Copy of the Surety Bond
- ✗ An Insurance Binder is not acceptable

☐ **Verification of Good Standing for organization's Lending License**

- ✓ Screenshot from Nationwide Mortgage Licensing System & Registry (NMLS)

☐ **Primary Lending License for the Principal**

*The principal is an individual who has an ownership stake in the company (e.g., Managing Partner, President, CEO, Owner, etc.)*

- ✓ Copy of lending license for the principal of your organization.

## PUBLICLY TRADED ORGANIZATION (INCLUDES GOVERNMENT ENTITIES)

☐ **Verification of organization's legal name**

- ✓ Articles of Incorporation / Organization Name
- ✓ Company Charter / Bylaws / Operating Agreement
- ✓ Lender's license
- ✓ Certificate of Formation
- ✓ 10-K

## BANK OR CREDIT UNION

☐ **Verification of organization's legal name**

- ✓ Articles of Incorporation / Organization Name
- ✓ Certificate of Formation
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

☐ **Certification from**

- ✓ Federal Deposit Insurance Corporation (FDIC)
- ✓ State Banking Authority
- ✓ National Credit Union Administration (NCUA)

## VENDOR

*For purposes of MERS® System membership, a Vendor is any organization that intends to perform MERS® System transactions on MERS-related services on behalf of another Member.*

☐ **Verification of organization's legal name**

- ✓ Articles of Incorporation / Organization Name
- ✓ Certificate of Formation
- ✓ Lender's license
- ✓ Company Charter / Bylaws / Operating Agreement

## ADDITIONAL DOCUMENTS, IF APPLICABLE

☐ **Warehouse Lender Approval - Required for organizations using a warehouse line to fund the MERS Loans they originate**

- ✓ Warehouse line approval
- ✓ Conditional approval

☐ **Official Documentation of Trade, Assumed, or Fictitious Name or DBA**

- ✓ Certificate of Assumed Name
- ✓ Fictitious Business Name Statement

## Are You Ready to Apply?

Once you've gathered the documents required for your organization go to https://www.mersinc.org/products-services/mers-system and click *Apply for Membership*!

Case ID: 240100380

# Exhibit M

Case ID: 240100380

A living soul

# Kristy Lee Benson

November 23, 2022

AmeriHome Mortgage Company, LLC
P. O. Box 77423
Ewing, NJ 08628

Dear AmeriHome Mortgage Company, LLC and/or Affiliates,

I am under the impression that you posses a debt obligation attributed to the PERSON with the title KRISTY LEE BENSON in the amount of $318,190.14.

I, Kristy Lee Benson (sui juris), agree to pay any financial obligation that I might lawfully owe, ON THE CONDITION that you provide me with:

1. Validation of the debt (the actual accounting of the debt including the origination of the currency/funds)

2. Verification of your claim against me in the form of a signed Invoice (not a statement)

3. A copy of the Contract binding both parties (you and I) with both of our wet ink signatures. (A loan application does not constitute a contract)

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

I await your timely response.

Sincerely yours,

Kristy Lee Benson, sui juris
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

January 12, 2023

AmeriHome Mortgage Company, LLC
ATTN: Rafael Cruz, Executive Resolution Specialist
P. O. Box 77423
Ewing, NJ 08628

Dear Mr. Cruz, AmeriHome Mortgage Company, LLC and/or Affiliates,

Thank you so much for sending me the packet dated December 8, 2022. Although it was not anything I requested as far as loan verification documents, it was extremely informative.

Your cover letter points out that a copy of the note and deed of trust (mortgage/lien?) are included. Neither of which is considered a binding contract because only my signatures are on those documents. Those items are the security instruments that result from the execution of a binding contract. One that is signed by both me and an authorized signer from Amerihome and one that describes that both sides have put up something of equal worth. I can't remember that ever happening but I also want to make it clear that I am not disputing the amount or existence of this debt. Please forward the contract so that I may have it for my records.

The other item you included, the MERS ledger, was an eye opener I must say. I'm doing my due diligence and rereading all the docs you sent; and over and over they state "the Lender is Allied Mortgage Group". That's who I remember being named on those documents and authorizing me to take possession of property in question. But then the MERS !!! On the MERS summary, to my surprise, next to the word "investor" it shows someone other than Allied Mortgage. Its states that Federal Home Loan Mortgage Corporation is the "investor" or in other words they are the source of the funds. That really confuses me and raises some suspicions/ questions on my end.

1. If Allied didn't supply the funds, then wouldn't all these documents they forced me to sign be considered no-interest or unconscionable contracts? Some (not me though) may even consider what Allied did as fraudulent and a misrepresentation (and now Amerihome has delivered those documents again and made themselves a party to whatever this is). But I'm not disputing it.
2. If the Federal Home Loan Mortgage Corporation did deliver the funds, then shouldn't they be on the note and mortgage? And shouldn't they be the one's sending demand letters and requesting payment? But then I didn't contract at all with Federal Home Loan Mortgage Corporation. Some (not me though) may even construe their "investment" as a gift since there is no contract between myself and Federal Home Loan Mortgage Corporation. Those

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

people may also request that this debt be discharged with prejudice, the note satisfied and the mortgage removed. Or legal action could follow. But I'm not disputing it remember.

I find that very interesting don't you?

But back to my documents request. I feel as though I have given you ample time to produce the documents I have requested. You have not provided them. If you cannot produce the documents in the next 14 days, I will consider the debt to be fully discharged with the removal of all liens and encumbrances upon my property or me.

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

I await your timely response.

Sincerely yours,

Paul Nathan Benson
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

A living soul

# Paul Nathan Benson

November 17, 2023

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
Mt. Laurel, NJ 08054

**Reference: 23-156424-AnH**

Dear Robertson, Anschutz, Schneid, Crane & Partners and/or Affiliates,

Thank you so much for sending your letter to inform me that you are attempting to collect a debt. The information you have provided is puzzling, however. In your letter you say that your are contacting me on behalf of Federal Home Loan Mortgage Corporation. Thus implying that I must have entered into a mortgage agreement/contract with Federal Home Loan Mortgage Corporation at some point in the past. Upon hearing that you believe I owe Federal Home Loan Mortgage Corporation $375,395.77, I immediately did a deep dive into my vast trove of financial documents to see if I could find one shred of evidence confirming that I have some sort of contract or agreement with Federal Home Loan Mortgage Corporation. After quite a few diligent minutes looking, guess what I found? Nothing. There doesn't exist any such document. Nothing with my signature, obligating me to pay Federal Home Loan Mortgage Corporation anything.

Now, Federal Home Loan Mortgage Corporation must have demonstrated with some sort of document, that I have contracted with them. It must be a rock solid piece of documentation in order for you as an attorney to claim and bring suit in a court of law where strict proof is required. If you wouldn't mind, could you send me a copy of this supposed document that has placed me in debt to Federal Home Loan Mortgage Corporation?

I am officially requesting verification of this debt. It seems you have included a statement from the mortgage servicer, AmeriHome. Now, AmeriHome has sent their own supposed verification documents showing a company named Allied Mortgage Group as the supposed Lender. How has Federal Home Loan Mortgage Corporation obtained this debt? Did they pay Allied Mortgage Group with good and valuable consideration? These are all important questions that I will absolutely need answers to.

Can you see why I am so puzzled by your letter? Looking forward to your answers and hopefully some clarity on this matter.

Please provide these items in a letter sent via CERTIFIED MAIL so that there is an independent witness (The United States Post Office) to it having been delivered.

Graciously His,

Paul Nathan Benson
ALL RIGHTS RESERVED

1388 Madison Avenue, Pocono Summit, Pennsylvania

Case ID: 240100380

# Exhibit N

Case ID: 240100380

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
Mt. Laurel, NJ 08054
1-800- 933-0479 from 8:30am to 5:30pm EST, Monday to Friday
www.raslegalgroup.com

To: PAUL BENSON
1388 MADISON AVENUE
POCONO SUMMIT, PA 18346

**Reference: 23-156424 - AnH**
This form was prepared on October 26, 2023

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC is a debt collector.** We are trying to collect a debt that you owe to Federal Home Loan Mortgage Corporation. We will use any information you give us to help collect the debt.

## Our information shows:

**You have a Mortgage Loan account serviced by Cenlar FSB on behalf of Federal Home Loan Mortgage Corporation with loan number 0116852146 secured by the premises located at 1233 WHARTON STREET, PHILADELPHIA, PA 19147.**

*See the enclosed periodic statement for an itemization of the debt.*

| **Total amount of the debt now:** | **$ 375,395.77** |
|---|---|

## How can you dispute the debt?

- **Call or write to us by December 02, 2023, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by December 02, 2023**, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

## What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by December 02, 2023, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

Notice: **See reverse side for important information.**

---

**Mail this form to:**
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
133 Gaither Drive, Suite F
**Mt. Laurel, NJ 08054**

PAUL BENSON
1388 MADISON AVENUE
POCONO SUMMIT, PA 18346

## How do you want to respond?

*Check all that apply:*

- ☐ **I want to dispute the debt because I think:**
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on the reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor:**

# Exhibit O

Case ID: 240100380

**eRecorded in Philadelphia PA Doc Id: [illegible]**
**02/15/2023 11:20 AM Page 1 of 3 Rec Fee: $242.75**
**Receipt#: 23-12705**
**Records Department Doc Code: A**

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Cenlar FSB C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 02/22/2019, in the amount of $336,000.00 made by **PAUL N. BENSON AND KRISTY BENSON.** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS** recorded on 08/31/2020, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, in the State of **Pennsylvania**, in **Doc ID 53710398**.

SEE ATTACHED EXHIBIT A

Property is more commonly known as: 1233 WHARTON STREET, PHILADELPHIA, PA 19147.

**Dated this 15th day of February in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS**

By: ______________________________

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

CENAV 435698797 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT N1 MIN 100090714095211848 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 DOCR T152302-12:15:13 [C-3] EFRMPA1

*D0099542485*

STATE OF FLORIDA COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 15th day of February in the year 2023, by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

VICKY MCCOY
COMM EXPIRES: 12/18/2026

VICKY MCCOY
Notary Public - State of Florida
Commission # HH 328470
My Comm. Expires Dec 18, 2026
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ALLIED MORTGAGE GROUP, INC.., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **PAUL N. BENSON AND KRISTY BENSON.**

All that certain lot or piece of ground situated in
Mortgage Premises: 1233 WHARTON STREET
PHILADELPHIA, PA 19147
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Susan Hicks**, do certify that the precise address of the within named Assignee is:
**AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*435698797* CENAV 435698797 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT N1 MIN 100090714095211848 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 DOCR T152302-12:15:13 [C-3] EFRMPA1

*D0099542485*

# Exhibit A

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the 2nd Ward of the City of Philadelphia and described in accordance with a Survey and Plan of Property made December 28, 1998 by Evans Sparks, Surveyor and Regulator of the 2nd Survey District and updated August 11, 1998 by James P. Vesey, Surveyor and Regulator of the 2nd Survey District, as follows:

BEGINNING at a point of intersection formed by the Northerly side of Wharton Street (50 feet wide) and the Westerly side of Iseminger Street (25 feet wide); THENCE extending Westwardly along the Northerly side of said Wharton Street, the distance of 43 feet 0-3/4 inches to a point; THENCE extending Northwardly, on a line parallel with Thirteenth Street, the distance of 17 feet -0 inches to a point within a wall; THENCE extending Eastwardly on a line parallel with said Wharton Street, and passing through a wall, the distance of 43 feet -05/8 inches to a point on the Westerly side of said Iseminger Street; THENCE extending Southwardly along the Westerly side of said Iseminger Street the distance of 17 feet -0 inches to the first mentioned point and place of beginning.

BEING known as No. 1233 Wharton Street.

# Exhibit P

Case ID: 240100380

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

Filed and Attested by the Office of Judicial Records 03 JAN 2024 12:49 pm S. RICE

PROTHONOTARY JUDICIAL DISTRICT OF PENNSYLVANIA

**THIS IS NOT AN ARBITRATION CASE**

Paul Benson
Plaintiff

vs.

Amerihome Mortgage Company, LLC;
Federal Home Loan Mortgage Corporation;
Mortgage Electronic Registration Systems, Inc;
Allied Mortgage Group Inc.

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION - CIVIL

__________ TERM, _____

No.__________

**ACTION TO QUIET TITLE**
**(FRAUDULENT CONVEYANCE)**

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6333

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

**THIS IS NOT AN ARBITRATION CASE**

---

| | | |
|---|---|---|
| Paul Benson | : | PHILADELPHIA COUNTY |
| Plaintiff | : | COURT OF COMMON PLEAS |
| | : | TRIAL DIVISION - CIVIL |
| vs. | : | ____________ TERM, _____ |
| Amerihome Mortgage Company, LLC; Federal Home Loan Mortgage Corporation; Mortgage Electronic Registration Systems, Inc; Allied Mortgage Group Inc. | : | No.____________ |

**ACTION TO QUIET TITLE**
**(FRAUDULENT CONVEYANCE)**

Plaintiff, hereby files this Complaint against the Defendant to Quiet Title with respect to a certain parcel of real estate and in support thereof avers as follows:

**1.** Plaintiff(s) is/are:

Paul Benson

**2.** Defendant(s) is/are:

Amerihome Mortgage Company, LLC

Federal Home Loan Mortgage Corporation

Mortgage Electronic Registration Systems, Inc

Allied Mortgage Group Inc.

**3.** The real estate, which is the subject of this litigation is:

**1233 Wharton Street, Philadelphia, PA 19147**

**A copy of the legal description is contained within the deed conveying the property to the Plaintiff, which is attached hereto. Exhibit D**

**4.** State the cause of action in detail:

It has recently been brought to the Plaintiffs attention, that there exists several causes of action that call into question veracity of the current status of the title for subject property of this action. Plaintiff avers that a breach of contract occurred during the loan origination, a fraudulent conveyance of mortgage and note was then created, and subsequently an imperfect lien had been filed when the Plaintiff was attempting to refinance his wife's mortgage in 2019. The Plaintiff had his suspicions of fraudulent activity in 2019 when the servicer of his wife's mortgage, Mr. Cooper, stole $3,671.49 of the Plaintiff's escrow account funds. The title company, J&T Abstract Inc. assisted, turned a blind eye, and finally ignored the Plaintiff till he felt he had no other recourse. See Exhibits A, B, C and D for the details.

That brings us to the recent discovery of other fraudulent activity that occurred in 2019. The Plaintiff asked for a verification of ownership for his mortgage and received a copy of the MIN summary from the MERS System.(Exibit E) Upon reviewing the document, the Plaintiff noticed several glaring inconsistencies of which I will walk you through now.

1. Violation of Consumer Protection Laws: Full disclosure under the law was not given to the Plaintiff. Allied Mortgage Group Inc. repeatedly calls itself the lender on both the mortgage documents and the note. However, when registering the mortgage in the MERS system, Allied Mortgage Group assigns itself the designation of "Servicer". The mortgage and the note are both fraudulent documents because Allied lied about its role in the origination of the loan. See Exhibit E.

2. Breach of Contract: Equal consideration was not received by the Plaintiff. After reviewing the dates on the MERS it also appears that Allied never funded the loan or gave any type of consideration to justify the mortgage or note. The note and mortgage were executed on 2/22/2019, but as you can see from my Mr. Cooper payment activity sheet, The Plaintiff's previous mortgage was not payed off until 3/5/2019. (Exhibit A) So it is clear Allied did not pay off the Mr. Cooper mortgage. In fact, when comparing the payoff date with the MERS system summary, it appears that there was no funding source from within the MERS system. The first alleged funding source doesn't appear until 3/11/2019, well after some other source apparently gifted to the Plaintiff a mortgage payoff. These MERS users are fraudulent claiming to have provided consideration when the documented facts state otherwise.

3. Fraudulent Lien Filling: If Allied never provided consideration at the execution of the mortgage and note, then Allied fraudulently placed a lien on the Plaintiff's property. It is plainly evident that consideration was not given, and therefore a lien could not be perfected. Any lien currently encumbering the Plaintiff's property is fraudulent.

There are many other inconsistencies but the three I have mentioned void any claim to property title that the Defendants may make.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court find in his/her favor and against the Defendant(s), and enter a judgment ordering the Recorder of Deeds for Philadelphia County to convey the property located at:

**1233 Wharton Street, Philadelphia, PA 19147**

to the Plaintiff(s), upon presentment of an order stating the same; and granting such other relief as is necessary and appropriate.

Respectfully submitted:

______________________________
Plaintiff

______________________________
Plaintiff

Date: **1/3/2024**

**NAME OF FILING PARTY:**

Name: Paul Benson

Address: 1388 Madison Avenue

City, State, Zip: Pocono Summit, PA 18346

Telephone: 267-228-4723

**THIS IS NOT AN ARBITRATION CASE**

---

| | | |
|---|---|---|
| Paul Benson Plaintiff | : | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>TRIAL DIVISION - CIVIL |
| vs. | : | __________ TERM, _____ |
| Amerihome Mortgage Company, LLC<br>Federal Home Loan Mortgage Corporation<br>Mortgage Electronic Registration Systems, Inc<br>Allied Mortgage Group Inc. | : | No.__________ |

**AFFIDAVIT OF PLAINTIFF**

**COMMONWEALTH OF PENNSYLVANIA :**
**: ss.**
**COUNTY OF PHILADELPHIA :**

I, Paul Benson (Plaintiff), being duly sworn according to law, depose and say that the facts stated herein are true and correct.

____________________
Plaintiff

____________________
Plaintiff

Case ID: 240100380

**VERIFICATION**

Plaintiff(s) Paul Benson

hereby verify that the statements set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief; I understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

_______________________
Signature of Plaintiff

_______________________
Signature of Plaintiff

Dated: **1/3/2024**