IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL BENSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**AMERIHOME MORTGAGE CO., LLC** **et al.**,<br><br>*Defendants.* | Case No. 2:24-cv-03467-JDW |

### MEMORANDUM

Mr. Benson's Amended Complaint communicates deep discomfort with how his mortgage loan's ownership and servicing rights passed fluidly between the Defendants, without his knowledge. But mortgage securitization, while troubling to many in the wake of the 2008 financial crisis, is not unlawful. And neither is the conduct that Mr. Benson takes issue with here. If in fact the Defendants did break the law, he will have to be far more meticulous about establishing the elements of his claims. I will dismiss his Amended Complaint as to all Defendants.

### I.     BACKGROUND

In January 2018, Mr. Benson and his wife obtained a commercial loan to purchase an investment property located at 1233 Wharton Street in Philadelphia. In February 2019, they refinanced that loan with Allied Mortgage Group, incurring $9,658.80 in origination

fees. Allied did not pay the original servicer until early March 2019, so his original servicer took a portion of his $3,145.77 escrow account surplus to satisfy a mortgage interest payment for March 2019. The rest of the surplus is "unaccounted for." (ECF No. 38-1 ¶ 22.)

In February 2019, without Mr. Benson's knowledge, Allied registered the mortgage with the MERS System, a national mortgage database that tracks transfers and modifications of loan servicing rights and ownership. In March 2019, Allied sold the loan and servicing rights to AmeriHome Mortgage Company, LLC. According to Mr. Benson, AmeriHome did not have state approval to service his mortgage, but Kathy Amato, an employee of MERS, Inc.,[1] facilitated the change and "allowed AmeriHome the access it needed to circumvent" Pennsylvania law. (*Id.* ¶ 30.) AmeriHome then attempted to securitize the loan through Wells Fargo Bank. In May 2019, ownership of the loan passed to Federal Home Loan Mortgage Corporation ("Freddie Mac").

In April 2020, Mr. Benson entered forbearance. When he exited forbearance, he discovered that Freddie Mac owned his loan and that there had been "a number of transfers of ownership and servicing rights that [he] had not been notified of." (*Id.* ¶ 36.) He therefore "paused … mortgage payments in order to figure out what happened." (*Id.*) Mr. Benson later learned that Cenlar FSB was the servicer foreclosing on the property.

---

[1] Contrary to Mr. Benson's allegations, Ms. Amato appears to be an AmeriHome employee. (*See* ECF No. 40-2 at 14.)

On January 3, 2024, Mr. Benson initiated this case *pro se* by filing an action to quiet title in the Court of Common Pleas of Philadelphia County. On June 17, 2024, Mr. and Mrs. Benson filed an Amended Complaint naming additional defendants. Cenlar removed the case to this Court on July 30, 2024. Since removal, I have dismissed the claims against MERS, Inc. and Wells Fargo Bank, N.A., as well as Mrs. Benson's claims. (*See* ECF Nos. 47, 49, 57.) Mr. Benson is therefore the sole remaining plaintiff. He brings fraud by concealment, breach of fiduciary duty, negligence, unjust enrichment, civil conspiracy, and statutory violation claims against all Defendants. Additionally, Mr. Benson brings a breach of contract and a Truth In Lending Act (TILA) violation claim against AmeriHome, a breach of contract claim against Allied, and a TILA violation claim against Freddie Mac. Mr. Benson seeks a declaratory judgment granting him unencumbered ownership of the Wharton Street property, injunctive relief preventing foreclosure on that property, compensatory damages, and punitive damages. Each Defendant has filed a Motion to Dismiss. Their Motions are ripe for review.

## II.  LEGAL STANDARD

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the

complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Judges interpret complaints from *pro se* litigants liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.   ANALYSIS

### A.   Claims Against All Defendants

#### 1.   Fraud by concealment

Fraud requires proof of: (a) a material representation; (b) "made falsely, with knowledge of its falsity or recklessness as to whether it is true or false"; (c) "with the intent of misleading another into relying on it"; (d) "justifiable reliance on the misrepresentation"; and (e) a resulting injury that the reliance proximately caused. *Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (quotation omitted). Federal Rule of Civil Procedure 9(b) "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct

with which they are charged … ." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Mr. Benson includes fraud by concealment in his General Allegations against the Defendants but fails in his Amended Complaint to plead the elements at all—much less with particularity—as to AmeriHome, Cenlar, Freddie Mac, or Kathy Amato. I will therefore dismiss the fraud claim as to those Defendants.

As to Allied, Mr. Benson alleges that the company (i) "represent[ed] itself as a lender … capable of table funding the refinance" because "the loan documents clearly state Allied as the 'Lender'"; (ii) knew this representation was false "because they registered the Negotiable on MERS as a Servicer"; (iii) "[t]his representation was made to [Mr. Benson] inducing [him] to rely upon it … through verbal communication and loan documents"; (iv) that Mr. Benson justifiably relied on the misrepresentation because he was "aware of the old services poor reputation and absolutely needed the funds to show up on time"; and (v) that Mr. Benson was "ignorant of this falsity … as [he] pursued their old servicer for the injury … sustained in actual damages of the vanishing surplus of escrow funds in the amount of $3,145.77 and $9,658.80 in origination costs that may have been avoided with an all-in-one lender." (ECF No. 38-1 ¶ 43.)

Mr. Benson appears to allege that the misrepresentation was of Allied's role, namely, that it represented itself as the lender when it was the servicer. But even if Allied was the servicer, that doesn't preclude it from being the lender. Thus, when Allied

described itself as a "Servicer," it did not say (either explicitly or implicitly) that it was not also the lender. Mr. Benson does not allege any other facts suggesting that Allied was not the lender. He therefore fails to identify a misrepresentation on which to base his fraud claim.

Even if he could, Mr. Benson fails to allege how that supposed misrepresentation proximately caused his injuries, *i.e.*, "was a substantial factor in bringing about [his] harm." *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 428 (Pa. Super. Ct. 2010) (quotations omitted). Mr. Benson alleges two harms: the missing $3,145.77 in escrow funds; and $9,658.80 in origination costs when he refinanced with Allied. But his reliance on Allied's alleged misrepresentation did not bring about either of these harms. Mr. Benson asserts that the escrow fund issue arose because Allied was late paying the original servicer, not because Allied wasn't the lender. And origination fees are a standard cost of refinancing a loan. To the extent that Mr. Benson argues that he would not have refinanced his loan absent Allied's misrepresentation, that only renders the misrepresentation a but-for cause of his injuries. It does not establish that the misrepresentation itself substantially brought about the lost escrow funds and the origination fee. Because Mr. Benson cannot make out the elements of his fraud claim against Allied, I will dismiss it as well. For this claim, I will give Mr. Benson one last opportunity to file a second amended complaint that addresses these failures, if he can do so in good faith.

### 2. Breach of fiduciary duty

To prove breach of fiduciary duty under Pennsylvania law, a plaintiff must establish: (a) the existence of a fiduciary relationship; (b) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (c) that he suffered an injury caused by that breach of fiduciary duty. *See Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020). Mr. Benson does not assert facts establishing a fiduciary relationship between himself and any of the Defendants. Under Pennsylvania law, borrowers and lenders do not ordinarily enter a fiduciary relationship. *See Fed. Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. Ct. 1979). Therefore, I will dismiss his breach of fiduciary duty claim as to all Defendants. Because nothing that Mr. Benson could plead would change this outcome, I will dismiss this claim with prejudice, meaning Mr. Benson cannot assert the claim in any proposed second amended complaint.

### 3. Violation of the MLA

Mr. Benson alleges that the Defendants violated Pennsylvania's Mortgage Licensing Act ("MLA") by "breach of fiduciary duty" and that AmeriHome violated the MLA when it began servicing his mortgage in March 2019. (ECF No. 38-1 ¶ 42.) However, he does not identify the statutory provisions at issue or how the Defendants violated them. Furthermore, there is no private right of action under the MLA; only the Pennsylvania Department of Banking can enforce it. *See* 7 P.S. §§ 6610, 6116. I will dismiss the MLA

violation claim against the Defendants with prejudice, meaning Mr. Benson may not assert the claim in any proposed second amended complaint.

  **4. Violation of RESPA**

Mr. Benson states in his General Allegations that the Defendants violated the Real Estate Settlement Procedures Act ("RESPA") and that Cenlar FSB violated RESPA when it "was quietly … added to the roster of controlling interest in the Instrument [his mortgage loan]," *i.e.*, when it began subservicing the loan without notice. (ECF No. 38-1 ¶¶ 42, 49.) However, Mr. Benson once again fails to identify which provision of RESPA Cenlar FSB or any other Defendant allegedly violated, the substance of that violation, or what "actual damages" he suffered as a result. 12 U.S.C. § 2605(f). I will dismiss the RESPA violation claim without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

  **5. Negligence**

To establish negligence, a plaintiff must show that: (a) the defendant owed the plaintiff a duty or obligation recognized by law; (b) the defendant breached that duty; (c) a causal connection existed between the defendant's conduct and the resulting injury; and (d) actual damages occurred. *Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019). Mr. Benson alleges that AmeriHome "was willfully negligent in obtaining proper licensing under the MLA." (ECF No. 38-1 ¶ 42.) But he does not identify a duty that AmeriHome or any other Defendant allegedly had, he doesn't state how any Defendant

8

breached such a duty, and he doesn't allege how that breach proximately caused his damages. To the extent that he claims that the statutory violation constitutes negligence *per se*, he must first show a violation. And, even if he does, proof of a statutory violation "establishes only the first two elements of negligence—duty and breach." *Grove*, 218 A.3d at 889. Mr. Benson does not identify what damages he suffered from this breach or how they resulted from AmeriHome's conduct. Nor does he allege any facts about any other Defendant. I will therefore dismiss his negligence claim against all Defendants without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

### 6. Unjust enrichment

To establish unjust enrichment, a plaintiff must show: (a) benefits conferred on the defendant by the plaintiff; (b) appreciation of such benefits by the defendant; and (c) acceptance and retention of such benefits "under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). Mr. Benson alleges that the Defendants unjustly enriched themselves using the MERS System and thereby received "unjust compensation." (ECF No. 38-1 ¶ 42.) However, he fails to identify any benefit that **he** conferred on the Defendants, or why it would be inequitable for the Defendants to retain those benefits without compensation. Therefore, I will dismiss his unjust enrichment claim

9

without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

### 7. Civil conspiracy

To state a civil action for conspiracy, the plaintiff must allege: (a) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose"; (b) "an overt act done in pursuance of the common purpose"; and (c) "actual legal damage." *Goldstein v. Philip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (citation omitted). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* (quotation omitted). Additionally, "[p]roof of malice is an essential part of a cause of action for conspiracy." *Id.* (citation omitted).

Mr. Benson has not alleged facts to establish any underlying wrongful act, so his civil conspiracy claim cannot proceed either. He accuses the Defendants of using the MERS System to conceal changes in loan servicing and ownership rights, but Pennsylvania recording law does not impose a mandatory duty to record mortgages and mortgage assignments. *See MERSCORP, Inc. v. Delaware County*, 207 A.3d 855, 870 (Pa. 2019). And Mr. Benson does not identify any other provision of Pennsylvania law that the Defendants violated and that creates a cause of action. Further, Mr. Benson has not alleged any facts suggesting that the Defendants acted with malice, *i.e.*, with "intent to injure" him. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

I will dismiss Mr. Benson's civil conspiracy claim without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith. However, I note that one cannot conspire to engage in negligence, unjust enrichment, or a violation of RESPA, so those claims cannot be the basis for a civil conspiracy claim.[2] In addition, Mr. Benson cannot base his civil conspiracy claim on claims that I am dismissing with prejudice, meaning breach of fiduciary duty and violation of the MLA.

### B. Remaining Claims Against AmeriHome Mortgage

Mr. Benson alleges that AmeriHome violated the Truth In Lending Act ("TILA") by breaching its fiduciary duty of care. However, he does not point to specific provisions in the statute, allege how they were violated, or identify his resulting "actual damage." 15 U.S.C. § 1640. I will dismiss his TILA claim against AmeriHome without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

Mr. Benson also alleges that AmeriHome committed a breach of contract by "fail[ing] to provide[] timely consideration through the affiliate responsibility under RESPA." (ECF No. 38-1 ¶ 47.) To establish a breach of contract, Mr. Benson must show (a)

---

[2] *See Reese v. Pook & Pook, LLC*, No. 14-5715, 2019 WL 13178512, at * 1 n.2 (E.D. Pa. Jan. 23, 2019) (no civil conspiracy for negligence or unjust enrichment); *Minter v. Wells Fargo Bank, N.A.*, 924 F. Supp. 2d 627, 643 (D. Md. 2013) (no civil conspiracy for RESPA violation). None of these cases are binding on me, but I agree with and adopt their logic.

the existence of a contract, including its essential terms; (b) a breach of the contract; and (c) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Mr. Benson offers only a conclusory statement and does not plead facts alleging any of the elements of a breach of contract. Therefore, I will also dismiss his breach of contract claim against AmeriHome without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

### C. Remaining Claim Against Allied Mortgage

Mr. Benson's breach of contract claim against Allied Mortgage also fails. He alleges that Allied "caused a material breach of contract for failing to provide consideration at settlement." (ECF No. 38-1 ¶ 43.) He appears to contend that Allied breached the mortgage agreement by not "pay[ing the old servicer on the day of settlement February 22, 2019 or even several days after." (*Id.* ¶ 20.) But the mortgage doesn't require Allied to pay the previous servicer on the settlement date. (*See id.* at 53–84 of 232.) And Mr. Benson doesn't identify any provision of the mortgage that suggests otherwise. Mr. Benson also appears to argue that Allied breached the mortgage agreement by registering the mortgage with MERS before paying the previous servicer. (*See id.* ¶ 44.) But the mortgage doesn't condition registration with MERS on payment to the old servicer. (*See id.* at 63–65 of 232.)

Finally, to the extent that Mr. Benson alleges that Allied breached the mortgage by securitizing his refinanced loan, Mr. Benson does not identify a clause prohibiting securitization. In fact, the mortgage states that the loan "can be sold one or more times without prior notice to Borrower" and that such a sale "might result in a change" in loan servicer. (*Id.* at 78 of 232.) I will therefore dismiss Mr. Benson's breach of contract claim against Allied without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

### D.    Remaining Claim Against Federal Home Loan Mortgage Corp.

Mr. Benson alleges that Freddie Mac violated the TILA when it "obtained beneficial rights to the Instrument [his mortgage loan] without notification." (*Id.* ¶ 50.) However, he does not point to specific provisions in the statute, allege how they were violated, or identify his resulting "actual damage." 15 U.S.C. § 1640. I will dismiss his TILA claim against Freddie Mac without prejudice, meaning Mr. Benson can address these failures in a proposed second amended complaint, if he can do so in good faith.

## IV.   CONCLUSION

I will grant the Defendants' Motions To Dismiss (ECF Nos. 19, 38, 39, 40) and dismiss Mr. Benson's Amended Complaint. I will, however, permit Mr. Benson to file a second amended complaint if he believes that he can address the issues that I have identified. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

January 10, 2025