## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **PAUL BENSON,**<br><br>                    *Plaintiff,*<br><br>        v.<br><br>**AMERIHOME MORTGAGE CO., LLC et al.,**<br><br>                    *Defendants.* | **Case No. 2:24-cv-03467-JDW** |

## <u>MEMORANDUM</u>

To state a claim, a plaintiff must provide some factual details to make his claims plausible. Paul Benson has complaints about the handling of mortgage transactions in connection with an investment property that he purchased in Philadelphia, and he asserts claims against Wells Fargo Bank, N.A. under federal and state law. He also wants to file a Second Amended Complaint to assert federal and state claims against other defendants who played a role in the transactions. Mr. Benson has not stated a plausible claim against Wells Fargo under either of the federal statutes that he invokes, and his proposed Second Amended Complaint does not state a plausible federal claim against any defendant. I will therefore dismiss the federal claims against Wells Fargo, deny Mr. Benson's motion to amend (and a litany of other motions that he has filed), and direct the Parties to file briefs if they have a basis to argue why I shouldn't remand this case to state court.

## I.    BACKGROUND

### A.    Facts Alleged In The First Amended Complaint

In January 2018, Mr. Benson obtained a commercial loan to purchase an investment property at 1233 Wharton Street in Philadelphia. In February 2019, he refinanced that loan with Allied Mortgage Group, incurring $9,658.80 in origination fees. Allied did not pay the original servicer of the mortgage until early March 2019, so Mr. Benson's original servicer took a portion of his escrow account surplus to satisfy a mortgage interest payment for March 2019. The rest of the surplus is allegedly missing.

In February 2019, Allied registered the mortgage with the MERS system, a national mortgage database that tracks transfers and modifications of loan servicing rights and ownership. In March 2019, Allied sold the loan and servicing rights to AmeriHome Mortgage Company, LLC. AmeriHome allegedly did not have state approval to service the mortgage, but Mr. Benson claims that an employee at Mortgage Electronic Registration Systems, Inc. ("MERS") facilitated the change and allowed AmeriHome the access it needed to circumvent Pennsylvania law. AmeriHome then attempted to securitize the loan through Wells Fargo, and Wells Fargo became an interim funder. In May 2019, ownership of the loan passed to Federal Home Loan Mortgage Corporation ("Freddie Mac").

In April 2020, Mr. Benson entered forbearance. When he exited, he discovered that Freddie Mac owned his loan and that ownership of his loan and its servicing rights had transferred without notice to him. He therefore paused mortgage payments to figure out

what was happening and later learned that Cenlar FSB was the servicer who was foreclosing on the property.

### B.    Procedural History

Mr. Benson filed this case *pro se* as a quiet title action in the Philadelphia Court Of Common Pleas. On March 21, 2024, the state court dismissed the claims against MERS with prejudice. On June 17, 2024, Mr. Benson filed an Amended Complaint that named additional defendants, including Wells Fargo, and that asserted a number of new claims, including claims under federal law. Cenlar removed the case on July 30, 2024. I dismissed the claims against Wells Fargo without prejudice because it did not appear that Mr. Benson had served it.

The remaining defendants moved to dismiss the claims against them. On January 10, 2025, I dismissed Mr. Benson's claims for breach of fiduciary duty and violation of Pennsylvania's Mortgage Licensing Act with prejudice and the remaining claims without prejudice. On March 6, 2025, I vacated my Order dismissing the claims against Wells Fargo. On April 2, 2025, Wells Fargo moved to dismiss the claims against it in the first Amended Complaint. That motion is ripe.

On April 5, 2025, Mr. Benson filed a motion for leave to file a second amended complaint ("SAC"). His proposed SAC asserts claims against AmeriHome and Allied for fraud by concealment (Count I); a claim against AmeriHome for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count II); a claim against Allied for

violation of the Truth In Lending Act ("TILA")[1] (Count III); a claim against AmeriHome for violation of the Pennsylvania Unfair Trade Practices Act, 73 P.S. § 201-1 (Count IV); a claim against "Defendants" for civil conspiracy (Count V); and a claim against AmeriHome for negligence *per se* (Count VI). Several defendants opposed the motion for leave to amend, and Mr. Benson moved to strike their responses. Both motions are now ripe.

Mr. Benson has also filed a motion to rejoin MERS in the case, a motion to consolidate this case with a state foreclosure action, and a motion for class certification.

## II. ANALYSIS

Under 28 U.S.C. § 1331, this Court has jurisdiction over any civil action that arises under the laws of the United States. In addition, 28 U.S.C. § 1367 gives this Court supplemental jurisdiction over any claim that is so related to a claim over which there is original jurisdiction that the claims constitute part of the same case or controversy. However, Section 1367 also states that a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. *See id.* § 1367(c)(3). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for

---

[1] Although Mr. Benson references TILA, his complaint references "§ 1026.19(f)(2-3)" (ECF No. 80 at 4), which I understand to be the part of TILA's implementing regulations found at 12 C.F.R. § 1026.19(f)(2) and (3).

doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quotation omitted). As I consider each motion, I will therefore address the possibility of federal claims moving forward in this case.

### A.    Motion To Dismiss

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Judges interpret complaints from *pro se* litigants liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

Mr. Benson's two federal claims against Wells Fargo (the only Defendant against which there are live claims) fail because he does not identify which statutory provisions Wells Fargo allegedly violated, the substance of those violations, or the damages that he

suffered as a result. *See* 12 U.S.C. § 2605(f) (RESPA); 15 U.S.C. § 1640 (TILA). I will dismiss these claims with prejudice because I further conclude that Wells Fargo is not subject to either statute. RESPA's purpose is to improve disclosures of settlement costs and prohibit kickbacks, reduce escrow amounts, and improve land title recordkeeping. *See* 12 U.S.C. § 2601. But Mr. Benson alleges only that Wells Fargo participated in the securitization of his loan, not that it was involved in settlement or loan servicing. In fact, Regulation X, which implements RESPA, exempts secondary market transactions such as securitization. *See* 12 C.F.R. § 1024.5(b)(7). Likewise, TILA protects consumers from unethical lending and servicing practices, but Mr. Benson doesn't allege that Wells Fargo acted as a lender or servicer, nor could it have fulfilled those functions if it served only to securitize a loan. *See* 15 U.S.C. § 1601; 12 C.F.R. § 1026.1(c) (implementing TILA). Therefore, neither statute applies or could apply to Wells Fargo's conduct in this case, and nothing Mr. Benson could plead would change that. That conclusion is consistent with the fact that Mr. Benson does not propose to assert those claims against Wells Fargo in his proposed SAC.

Mr. Benson also raises state law claims against Wells Fargo, but my dismissal of his federal claims weighs heavily against the exercise of supplemental jurisdiction over those claims. *See Hedges v. Musco*, 204 F.3d at 123. However, I will give the parties an opportunity to address whether I should remand the case to state court.

### B.   Motion For Leave To Amend

Federal Rule of Civil Procedure 15 embraces the liberal amendment of pleadings and instructs courts to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Despite this liberal amendment regime, a court may deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in prior amendments, prejudice to the opposing party, and futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). In determining whether amendment would be futile, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citation omitted).

Mr. Benson's SAC invokes federal question jurisdiction based on the Defendants' alleged violation of two federal statutes.[2] Neither claim would survive a Rule 12(b)(6) motion to dismiss.

*First*, Mr. Benson claims that AmeriHome Mortgage Co. "violated RESPA § 2605(g) by failing to conduct a timely escrow analysis after servicing transfer, resulting in improper charges." (ECF No. 80 at 3.) However, he doesn't explain what those improper charges were or how they came about. Nor does he explain how those charges violated Section

---

[2] Mr. Benson also appears to contend that diversity jurisdiction is appropriate. (*See* ECF No. 80 at 1.) However, he and Allied Mortgage are Pennsylvania citizens.

2605(g), which generally lays out how loan servicers may use escrow accounts and mandates the return of any unused balance to the borrower after the loan is paid off. *See* 12 U.S.C. § 2605(g). At most—while addressing a different claim—Mr. Benson states that $3,145.77 of his escrow funds were "misused to cover AmeriHome's incompetence." (ECF No. 80 at 2.) But this still doesn't establish how any loss resulted from a RESPA violation. *See* 12 U.S.C. § 2605(f)(1)(A); *see also Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 409 n.9 (E.D. Pa. 2008).

Alternatively, Mr. Benson alleges that a RESPA violation occurred when "AmeriHome failed to respond adequately" to his qualified written requests regarding the escrow errors.[3] (ECF No. 80 at 4.) Section 2605(e) outlines loan servicers' duties in responding to borrower inquiries, including the substance and timing of those responses. *See* 12 U.S.C. § 2605(e). However, Mr. Benson doesn't allege how AmeriHome's response was inadequate; he merely states that it was. This kind of conclusory allegation is insufficient to satisfy Rule 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Therefore, neither of Mr. Benson's factual allegations about AmeriHome are sufficient to allege a RESPA violation, and his proposed complaint doesn't plead any specific information about a RESPA violation by any other defendant.

---

[3] In support of this allegation, Mr. Benson's proposed SAC cites to "Exhibit E – Qualified Written Requests." However, he failed to submit this exhibit. Even if he had, it wouldn't change my analysis because I credit his factual allegation that he submitted qualified written requests. What's lacking is allegation showing how AmeriHome's response (or lack thereof) failed to comply with RESPA.

*Second*, Mr. Benson claims that Allied Mortgage Group's "initial escrow analysis contains egregious misstatements" and that "subsequent corrections to those disclosure [sic] never took place upon discovery of discrepancies by the Plaintiff," violating Section 1026.19(f)(2) and (f)(3) of Regulation Z, which implements the TILA. (ECF No. 80 at 4.) According to Mr. Benson, loan originator and servicers are perpetuating a "scheme ... where inflated escrow accounts are stuffed in the consumers [sic] Real Estate Tax Account where it just sits untouched as a credit balance while the refinance is completed," "to shield those inflated amounts from accounting." (*Id.*) At no point, however, does Mr. Benson explain Allied's participation in this scheme or how the scheme violates the regulatory provisions that he identifies. Nor does the mortgage foreclosure action against Mr. Benson in the Philadelphia Court Of Common Pleas,[4] which he mentions in his complaint, appear to shed any light on his claim against Allied. That action was initiated by a different entity, and Allied is not a party. Mr. Benson therefore fails to plausibly allege a TILA violation by Allied, and he doesn't plead specific information about a TILA violation by any other defendant.

Because I would dismiss Mr. Benson's federal claims, I would decline to decide his pendent state law claims alleging fraud by concealment, fraudulent misrepresentation, civil conspiracy, negligence per se, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *See Hedges*, 204 F.3d at 123. He does not allege, nor do I

---

[4] *See Freedom Mortg. Corp. v. Benson et al.*, Case ID 230402912.

see, any reason to exercise supplemental jurisdiction. *See id.* Amendment is therefore futile because Mr. Benson doesn't plead sufficient facts to make either of his federal claims plausible, and I would decline to decide his remaining state law claims. I will deny his motion for leave to amend.

### C.    Motion To Strike

Mr. Benson asks that I strike the Defendants' responses to his motion for leave to amend, but they are entitled to respond. *See* Local Rule of Civil Procedure 7.1(c). I will deny his motion.

### D.    Motion To Rejoin Defendant

Mr. Benson moves to rejoin MERS as a defendant. I terminated MERS as a party because the Philadelphia Court Of Common Pleas dismissed it from the case with prejudice before the case was removed to federal court. Mr. Benson hasn't demonstrated a reason for me to reconsider that decision based on a change in controlling law, new evidence that was previously unavailable, or the need to correct a clear error of law or fact. *See U.S. ex rel. Schumann v. Astrazeneca Pharm., L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014). I will therefore deny his motion.

### E.    Motion To Consolidate

Mr. Benson moves to consolidate this case with his state court foreclosure action. But I can only consolidate actions before me, and Mr. Benson's state court case is not, so I will deny his motion. *See* Fed. R. Civ. P. 42(a).

### F.    Motion For Class Certification

Finally, Mr. Benson moves to certify a class action under Federal Rule of Civil Procedure 23(b)(3). However, Mr. Benson did not plead his first or second Amended Complaints as class actions, and his motion is premature in any event because I have not yet entered a scheduling order or permitted the parties to take discovery. I will deny his motion.

## III.    CONCLUSION

I will grant Wells Fargo's motion to dismiss Mr. Benson's claims under federal law and deny all of Mr. Benson's motions.[5] No federal claims remain in this case, and Mr. Benson has now had multiple opportunities to amend his complaint and substantiate any viable federal claims. I have the power to raise subject matter jurisdiction *sua sponte* and, in light of *Hedges*, I am inclined to remand this case back to the Philadelphia Court Of Common Pleas. *See Hedges*, 204 F.3d at 123. However, I will give the parties an opportunity to address whether there are any reasons for the continued exercise of federal jurisdiction. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

June 24, 2025

---

[5] Mr. Benson also filed a request for judicial notice (*see* ECF No. 98), which is premature because I intend to remand this case back to state court.