IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL BENSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**AMERIHOME MORTGAGE CO., LLC** **et al.**,<br><br>*Defendants*. | **Case No. 2:24-cv-03467-JDW** |

## **MEMORANDUM**

Normally, when a federal court dismisses the federal claims in a case, it remands (or dismisses without prejudice) state law claims over which it would only have supplemental jurisdiction. That was my plan in this case, but the Defendants taught me something: federal courts have original jurisdiction over any claim against Federal Home Loan Mortgage Corporation ("Freddie Mac"). *See* 12 U.S.C. § 1452(f). There aren't claims against Freddie Mac in this case right now, but that's only because I declined to rule on Paul Benson's Motion for leave to file a second amended complaint, in which he would assert such claims. Defendants' submission has persuaded me to reconsider my decision not to address the state law claims in this case. Instead, I have evaluated all of them, and I conclude that none of them can survive a motion to dismiss. I will therefore dismiss the pending state law claims against Wells Fargo Bank, N.A., and I will deny Mr. Benson' leave

to file a second amended complaint. I will dismiss this case with prejudice because Mr. Benson has had multiple tries at pleading viable claims, and he has failed to do so.

I. **BACKGROUND**

    A. **Facts Alleged In The First Amended Complaint**

In January 2018, Mr. Benson obtained a commercial loan to purchase an investment property at 1233 Wharton Street in Philadelphia. In February 2019, he refinanced that loan with Allied Mortgage Group, incurring $9,658.80 in origination fees. Allied did not pay the original servicer of the mortgage until early March 2019, so Mr. Benson's original servicer took a portion of his escrow account surplus to satisfy a mortgage interest payment for March 2019. The rest of the surplus is allegedly missing.

Allied registered the mortgage with the MERS database, a national mortgage database that tracks transfers and modifications of loan servicing rights and ownership. In March 2019, Allied sold the loan and servicing rights to AmeriHome Mortgage Company, LLC. AmeriHome allegedly did not have state approval to service the mortgage, but Mr. Benson claims that an employee at Mortgage Electronic Registration Systems, Inc. ("MERS") facilitated the change and allowed AmeriHome the access it needed to circumvent Pennsylvania law. AmeriHome then attempted to securitize the loan through Wells Fargo, and Wells Fargo became an interim funder. In May 2019, ownership of the loan passed to Freddie Mac.

In April 2020, Mr. Benson entered forbearance. When he exited, he discovered that Freddie Mac owned his loan and that ownership of his loan and its servicing rights had transferred without notice to him. He therefore paused mortgage payments to figure out what was happening and later learned that Cenlar FSB was the servicer and that it was foreclosing on the property.

**B.    Facts Alleged In The Proposed Second Amended Complaint**

Mr. Benson's proposed Second Amended Complaint does not include a complete factual narrative, but I glean the following narrative from the facts that he pled for each claim, along with the facts in the Amended Complaint.[1]

When AmeriHome began servicing Mr. Benson's mortgage in March 2019, it sent him paperwork that listed its Nationwide Mortgage Licensing System ("NMLS") number. Mr. Benson contends that AmeriHome intentionally included its NMLS number to mislead him into believing that it was a licensed servicer under Pennsylvania law and that he relied on this information in assuming that AmeriHome was properly licensed. He further contends that because AmeriHome wasn't licensed under state law, it wasn't properly

---

[1] In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). In this case, though, Mr. Benson's Amended Complaint is the operative pleading. In addition, the SAC is mostly legal recitations. Because Mr. Benson is proceeding pro se, I therefore consider the allegations contained in the Amended Complaint in addition to those in his proposed Second Amended Complaint in order to animate and understand the claims in the proposed SAC. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (pro se filings are construed liberally).

3

trained and failed to conduct a timely escrow analysis after servicing his transfer, resulting in a loss of $3,145.77 in escrow funds. AmeriHome, Allied, Cenlar, Freddie Mac, and Wells Fargo[2] then colluded to conceal AmeriHome's unlicensed status and falsify assignments of Mr. Benson's loan using the MERS database.

In February 2023, Mr. Benson's mortgage was transferred from Allied back to AmeriHome. (ECF No. 83.)

C.   **Procedural History**

Mr. Benson filed this case *pro se* as a quiet title action in the Philadelphia Court Of Common Pleas. On March 21, 2024, the state court dismissed the claims against MERS with prejudice. On June 17, 2024, Mr. Benson filed an Amended Complaint that named additional defendants, including Wells Fargo, and that asserted a number of new claims, including claims under federal law. Cenlar removed the case on July 30, 2024. I dismissed the claims against Wells Fargo without prejudice because it did not appear that Mr. Benson had effected service.

The remaining defendants, including Freddie Mac, moved to dismiss the claims against them. On January 10, 2025, I dismissed Mr. Benson's claims for breach of fiduciary duty and violation of Pennsylvania's Mortgage Licensing Act ("MLA") with prejudice and the remaining claims without prejudice. On March 6, 2025, I vacated my Order dismissing

---

[2] Mr. Benson includes Defendant MERS in his allegations, but the state court dismissed MERS with prejudice, so Mr. Benson cannot assert claims against it. (*See* ECF No. 49.)

the claims against Wells Fargo. On April 2, 2025, Wells Fargo moved to dismiss the claims against it in the first Amended Complaint.

On April 5, 2025, Mr. Benson filed a motion for leave to file a second amended complaint ("SAC"). His proposed SAC asserts claims against AmeriHome and Allied for fraud by concealment or, alternatively, against AmeriHome for fraudulent misrepresentation (Count I); a claim against AmeriHome for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count II); a claim against Allied for violation of the Truth In Lending Act ("TILA")[3] (Count III); a claim against AmeriHome for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 (Count IV); a claim against AmeriHome, Allied, Cenlar, Freddie Mac, and Wells Fargo for civil conspiracy (Count V); and a claim against AmeriHome for negligence *per se* (Count VI).

On June 24, 2025, I dismissed Mr. Benson's federal claims against Wells Fargo with prejudice and declined to decide his state law claims against Wells Fargo. (*See* ECF No. 105.) I also denied Mr. Benson's motion for leave to file his SAC, finding that his federal claims would be futile and that I would decline to exercise supplemental jurisdiction over his pendent state law claims. In my Memorandum denying leave to amend, I indicated that I intended to remand this case back to the Philadelphia Court Of Common Pleas.

---

[3] Although Mr. Benson references TILA, his complaint references "§ 1026.19(f)(2-3)" (ECF No. 80 at 4), which I understand to be the part of TILA's implementing regulations found at 12 C.F.R. § 1026.19(f)(2) and (3).

5

However, I permitted the parties to file memoranda addressing why I should not remand the case. The Defendants filed a joint memorandum, arguing that I should continue to exercise jurisdiction because Freddie Mac is a party, which gives me original jurisdiction under 12 U.S.C. § 1452(f).[4] Mr. Benson also filed a Motion For Clarification (ECF No. 110). These issues are now ready for resolution.

## II.    LEGAL STANDARD

### A.    Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted). Accordingly, a court may reconsider a prior ruling if the moving party shows: "(1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021) (same). "[A] motion for reconsideration may address 'only factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" *Jarzyna v. Home*

---

[4] Section (f) states that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value[.]" 12 U.S.C. § 1452(f). It also states that before trial, Freddie Mac may remove "any civil or other action, case or controversy in a court of a State ... to which [Freddie Mac] is a party" to federal court. *Id.*

*Properties, L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019) (quotation omitted). Given "the court's interest in the finality of judgments, motions for reconsideration 'should be granted sparingly[.]'" *Id.* (same).

### B.    Motion To Dismiss

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Judges interpret complaints from pro se litigants liberally. *See Vogt*, 8 F.4th at 185.

### C.    Motion To Amend

When a plaintiff moves for leave to amend, a district court must "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Despite this liberal amendment regime, a

court may deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in prior amendments, prejudice to the opposing party, and futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). In determining whether amendment would be futile, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citation omitted).

### III.    ANALYSIS

#### A.    Reconsideration

When I declined to reach Wells Fargo's arguments about state law claims and the proposed state law claims in the SAC, I committed a clear error of law. I operated on the assumption that the only basis for me to assert jurisdiction over any state law claims in this case was 28 U.S.C. § 1367, which provides for supplemental jurisdiction. That was a clear error of law because I was not aware of Section 1452(f). That is at a minimum, a reason for me to reconsider my decision not to assess all the claims against Freddie Mac in this case.

Three factors counsel me to go further and to reconsider all of the possible state law claims. First, the claims overlap—especially the civil conspiracy claim—so there's no efficiency for me to evaluate some of those claims and not others. Second, the history of

this case demonstrates the possibility that, no matter what I say, if I remand this case, Mr. Benson might attempt to assert claims against Freddie Mac, which would then result in the case coming back to this Court. Third, resolving everything now enhances judicial efficiency because my remand of this case, with the current docket, would lead to confusion about what is and is not left for a state court judge to address. That, in turn, raises the possibility of inconsistent rulings between a state court judge and me. Therefore, I will address Wells Fargo's motion to dismiss the remaining state law claims against it and the balance of Mr. Benson's motion to file his proposed SAC.

### B. Remaining State Law Claims

The state-law claims against Wells Fargo in Mr. Benson's first Amended Complaint and the proposed state-law claims in his SAC overlap. In addition, I evaluate both the motion to dismiss and the possible futility of the proposed SAC under the same pleading standard. Therefore, I will consider them concurrently. Because I conclude that none of them is plausible, I will grant Wells Fargo's motion to dismiss and deny Mr. Benson's motion for leave to amend as futile.

#### 1. Fraudulent misrepresentation and concealment

Fraudulent misrepresentation and concealment require proof of: (a) a misrepresentation or a concealment; (b) material to the transaction at hand, (c) made with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or calculated to deceive (for a concealment); (d) with the intent of

misleading another into relying on it; (e) justifiable reliance on the misrepresentation; and (f) a resulting injury that the reliance proximately caused. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022). A misrepresentation is material "if it is of such character that had it not been made, or in the present case [of concealment], had it been made, the transaction would not have been consummated." *GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 902 (Pa. Super. Ct. 2000) (quotation omitted). "Mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." *Id.* (citation omitted). Federal Rule Of Civil Procedure 9(b) "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged[.]" *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Mr. Benson alleges fraud by concealment in his first Amended Complaint but fails to plead the elements at all—much less with particularity—as to Wells Fargo. Nor could he meet those elements, given that he claims that Wells Fargo only securitized his loan. It neither said something false nor concealed something material, even according to Mr. Benson. Nor would it have had the opportunity to do so, given the nature of a securitization. I will therefore dismiss his fraud claim against Wells Fargo with prejudice.

Mr. Benson's SAC alleges fraudulent concealment by AmeriHome and Allied, and alternatively fraudulent misrepresentation by AmeriHome. These claims fail because Mr. Benson hasn't made out their elements. He alleges that AmeriHome misled him by

including an NMLS number on paperwork it sent him, and by recording false assignments in the MERS database. But AmeriHome's use of an NMLS number isn't a representation about its licensing under the MLA, nor was it justifiable for Mr. Benson to conclude otherwise. The NMLS and MLA are separate licensing systems. As for the assignments in MERS, it doesn't appear that Mr. Benson has a basis to believe that the assignment of his loan from Allied to AmeriHome in February 2023 was false. He asserts that the assignment was falsified because AmeriHome became his servicer in 2019, not 2023. However, he also states that the loan eventually passed to Freddie Mac. So, it's plausible that AmeriHome later became his servicer again. And he has not alleged anything to suggest that this assignment was somehow fraudulent.

Finally, Mr. Benson alleges in his SAC that AmeriHome and Allied had a duty under the MLA to disclose AmeriHome's unlicensed status. But he doesn't identify any statutory provision, the duty it creates, or why it applies to these defendants. Even if he could establish that duty, he doesn't allege that any concealment was material or that it was calculated to deceive. His SAC therefore fails to state fraud claims against AmeriHome or Allied that are facially plausible.

**2.    Breach of fiduciary duty**

To prove breach of fiduciary duty under Pennsylvania law, a plaintiff must establish: (a) the existence of a fiduciary relationship; (b) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (c) that he

suffered an injury caused by that breach of fiduciary duty. *See Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020).

Mr. Benson brings a breach of fiduciary duty claim against Wells Fargo in his first Amended Complaint but does not assert facts establishing a fiduciary relationship between himself and Wells Fargo. Wells Fargo's securitization of his loan did not create such a relationship, and there does not appear to be a way that he could establish such a relationship. I will dismiss his breach of fiduciary duty claim against Wells Fargo with prejudice.

### 3. Civil conspiracy

To state a civil action for conspiracy, the plaintiff must allege: (a) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;" (b) "an overt act done in pursuance of the common purpose;" and (c) "actual legal damage." *Goldstein v. Philip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (citation omitted). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* (quotation omitted). Additionally, "[p]roof of malice is an essential part of a cause of action for conspiracy." *Id.* (citation omitted).

Mr. Benson's Amended Complaint doesn't establish any underlying wrongful act, so his civil conspiracy claim cannot proceed. He accuses the defendants, including Wells Fargo, of using the MERS database to conceal changes in loan servicing and ownership

rights, but Pennsylvania recording law does not impose a mandatory duty to record mortgages and mortgage assignments. *See MERSCORP, Inc. v. Delaware County*, 207 A.3d 855, 870 (Pa. 2019). Mr. Benson also does not identify any other provision of Pennsylvania law that Wells Fargo violated and that creates a cause of action. Further, Mr. Benson has not alleged any facts suggesting that Wells Fargo acted with malice, *i.e.*, with "intent to injure" him. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). I will dismiss Mr. Benson's civil conspiracy claim against Wells Fargo with prejudice.

Mr. Benson renews his civil conspiracy claim in his SAC. To the extent that Mr. Benson alleges a civil conspiracy to violate the MLA, his claim fails because the MLA doesn't provide a private right of action. That's why I dismissed Mr. Benson's previous attempt to plead a claim for violation of the MLA with prejudice and instructed him that he could not base any future civil conspiracy claim on it.

To the extent that Mr. Benson's SAC alleges a civil conspiracy exclusively to hide AmeriHome's MLA violation, his claim fails because he identifies no cause of action allowing him to sue these defendants for hiding such a violation.

Finally, I note that Mr. Benson's SAC alleges other actions by Freddie Mac and Wells Fargo as a part of his civil conspiracy claim. To the extent that he intends to assert these as separate claims, they also fail to satisfy Rule 12(b)(6)'s pleading requirements. As to Freddie Mac, Mr. Benson appears to allege a breach of implied warranty and violation of the Administrative Procedure Act ("APA"). Though he does not specify whether he refers

13

to the implied warranty of merchantability or fitness for a particular purpose, neither applies here. Both apply to the sale of goods, and mortgage loan servicing is not a good. *See* 13 Pa. C.S.A. §§ 2314, 2315. Finally, Mr. Benson's APA claim fails because Freddie Mac is not a federal agency, so he has not alleged an injury resulting from agency action. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807 (2024).

As to Wells Fargo, Mr. Benson appears to allege a breach of fiduciary duty and securities fraud. However, he does not allege any facts establishing a fiduciary relationship between himself and Wells Fargo. Nor can Mr. Benson bring a securities fraud claim, because he alleges only that he was a mortgage borrower, not a buyer or seller of a mortgage-backed security. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–32 (1975).

### 4. Negligence

To establish negligence, a plaintiff must show that: (a) the defendant owed the plaintiff a duty or obligation recognized by law; (b) the defendant breached that duty; (c) a causal connection existed between the defendant's conduct and the resulting injury; and (d) actual damages occurred. *See Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019). When alleging negligence *per se*, the plaintiff may use proof of a statutory violation to establish duty and breach but must still show causation and damages. *See id.*

Mr. Benson's first Amended Complaint alleges that Wells Fargo had a duty to tell him that his loan had been sold and that AmeriHome wasn't properly licensed in Pennsylvania. But he doesn't explain why Wells Fargo was required to do that or how his injuries resulted from Wells Fargo's breach. To the extent that Mr. Benson alleges negligence *per se*, he must first show a statutory violation, and he hasn't done so. Even then, proof of a statutory violation "establishes only the first two elements of negligence—duty and breach." *Id.* Given Wells Fargo's role with respect to this mortgage, Mr. Benson can't establish that it owned him a duty to disclose or that he suffered an injury resulting from breach, I will dismiss his negligence claim against Wells Fargo with prejudice.

Mr. Benson's SAC alleges that AmeriHome's violation of the MLA constitutes negligence *per se*. But there is no private right of action under the MLA, which suggests that it does not support a claim for negligence *per se*. *See Wagner v. Anzon, Inc.*, 684 A.2d 570, 575 (Pa. Super. Ct. 1996). Even if Mr. Benson could bring such a claim, he fails to plead how his damages, *i.e.*, his lost escrow funds, resulted from AmeriHome's violation of the MLA. He states that AmeriHome mishandled his escrow transfer because it wasn't properly trained, but he doesn't explain how AmeriHome's MLA violation led to that mistake. Mr. Benson's negligence *per se* allegation therefore fails to satisfy the Rule 12(b)(6) pleading requirements.

### 5. Unjust enrichment

To establish unjust enrichment, a plaintiff must show: (a) benefits conferred on the defendant by the plaintiff; (b) appreciation of such benefits by the defendant; and (c) acceptance and retention of such benefits "under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999).

Mr. Benson alleges in his first Amended Complaint that Wells Fargo unjustly enriched itself using the MERS database and thereby received "unjust compensation." (ECF No. 38-1 ¶ 42.) However, there is no benefit that **he** conferred on Wells Fargo. Therefore, I will dismiss his unjust enrichment claim against Wells Fargo with prejudice.

### 6. Violation of the MLA

Mr. Benson alleges in his first Amended Complaint that Wells Fargo violated the MLA by "breach of fiduciary duty." (ECF No. 38-1 ¶ 42.) However, there is no private right of action under the MLA; only the Pennsylvania Department Of Banking can enforce it. *See* 7 P.S. §§ 6610, 6116. I will therefore dismiss his MLA violation claim against Wells Fargo with prejudice.

### 7. Violation of the UTPCPL

Finally, Mr. Benson's SAC alleges that AmeriHome violated Section 201-2(4)(xxi) of the UTPCPL. Section 201-2(4)(xxi) is a catch-all provision that prohibits businesses from

"[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi).

To bring a cause of action under the UTPCPL, a plaintiff must establish that: (a) he "purchased or leased goods or services primarily for a personal, family, or household purpose;" (b) he "suffered an ascertainable loss of money or property;" (c) "the loss occurred as a result of the use or employment by a vender of a method, act, or practice declared unlawful by the CPL;" and (d) he "justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (quotations omitted).

As a threshold matter, Mr. Benson alleges that he purchased the property at issue as an investment property. If so, then neither the property nor the associated mortgage services were for a personal, family, or household purpose. They were for investment purposes. But I don't have to reach that issue because the claim fails on its own merits.

Mr. Benson asserts that AmeriHome's use of an NMLS number and the assignments recorded in the MERS database constituted deceptive acts because AmeriHome wasn't properly licensed under the MLA. But the NMLS is a separate licensing system from Pennsylvania's MLA system, so AmeriHome's use of an NMLS number isn't a reflection of its MLA status. Nor does it appear that Mr. Benson has a basis to believe that the assignment of his loan from Allied to AmeriHome in February 2023 was false. As I determined for his fraud claims, it's plausible that AmeriHome later became his servicer

17

again. Finally, even if he could establish that this conduct was fraudulent or deceptive, Mr. Benson doesn't explain how it resulted in his lost escrow funds. His SAC therefore fails to state a UTPCPL claim that is facially plausible.

### C.      Motion For Clarification

Mr. Benson also filed a Motion For Clarification (*see* ECF No. 110), but none of the issues he raises are ones that need to be clarified. I will therefore deny his motion.

## IV.    CONCLUSION

Mr. Benson has now had multiple opportunities to make out his claims and has failed to do so. I will therefore dismiss all claims against these defendants with prejudice. *See USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2006); *Burgos v. City of Philadelphia*, 270 F. Supp. 3d 788, 795 (E.D. Pa. 2017). I will also dismiss the final defendant, Kathy Amato, with prejudice because Mr. Benson's SAC does not allege any claims against her (or mention her at all), and he previously indicated that he would like her to be dismissed from the case. (*See* ECF No. 52 at 2.) A dismissal with prejudice means that Mr. Benson may not bring any future claims—including claims that he didn't bring, but could have brought—against these defendants, based on these events, in either state or federal court. *See Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972); *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 12, 2025